**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br>NEAR INTELLIGENCE, INC., et al.,[1] | Chapter 11 |
| Debtors. | Case No. 23-11962 (TMH) |
| DRIVETRAIN, LLC, as Plan Administrator and Litigation Trustee of Near Intelligence, Inc. et al., Litigation Trust, | Adv. Pro. No. 25-52298 (TMH) |
| Plaintiff,<br>v.<br>MOBILEFUSE, LLC, |  |
| Defendant. |  |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

**THE ROSNER LAW GROUP LLC**
Frederick B. Rosner (DE #3995)
824 N. Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
rosner@teamrosner.com

**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
Kevin Schlosser, Esq.
Robert F. Regan, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
(516) 741-6565
kschlosser@msek.com
rregan@msek.com

Dated:   December 16, 2025

*Counsel to Defendant MobileFuse LLC*

---

[1]   The Debtors in these chapter 11 cases are Near Intelligence, Inc., Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................1

NATURE AND STAGE OF THE PROCEEDING...................................................4

SUMMARY OF ARGUMENT .................................................................................5

SUMMARY OF ALLEGATIONS IN THE AMENDED COMPLAINT.................6

ARGUMENT ...........................................................................................................10

    I.     LEGAL STANDARD...................................................................10

    II.    CHOICE OF LAW .......................................................................12

    III.   THE TRUSTEE'S CLAIMS ARE BARRED BY THE IN PARI DELICTO DOCTRINE ....................................................................13

         A.    In Pari Delicto ..................................................................14

         B.    The Trustee's Claims Against MobileFuse Should Now Be Dismissed .............................................................16

    IV.   THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS FOR CONSTRUCTIVE FRAUDULENT CONVEYANCE ...........................................17

    V.    THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS FOR INTENTIONAL FRAUDULENT CONVEYANCE ...........................................22

    VI.   THE PURPORTED FRAUDULENT CONVEYANCE CLAIMS ARE TIME BARRED TO THE EXTENT THAT THEY ARE BASED ON ALLEGED TRANSFERS MADE PRIOR TO DECEMBER 8, 2021 ..................25

    VII.  THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS PURSUANT TO 11 U.S.C. § 544(B)(1) ................................................26

    VIII. THE FAC FAILS TO STATE A CLAIM FOR EQUITABLE SUBORDINATION....................................................................27

RESERVATION OF RIGHTS ...............................................................................28

CONCLUSION........................................................................................................29

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*,
2001 WL 410074 (S.D.N.Y. 2001) ...................................................................................11

*In re Adler*,
372 B.R. 572 (Bankr.E.D.N.Y 2007) ................................................................................23

*In re Amcad Holdings, LLC*,
579 B.R. 33 (Bankr.D.Del. 2017) .....................................................................................19

*In re American Classic Voyages Co.*,
367 B.R. 500 ......................................................................................................................21

*In re Aphton Corp.*,
423 B.R. 76 (Bankr.D.Del. 2010) .....................................................................................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................11, 23

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir. 1997) ............................................................................................21

*In re Augustus Intelligence, Inc.*,
2025 WL 936432 (Bankr.D.Del. 2025)(TMH) .................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................11, 12

*In re Bernard L. Madoff Inv. Secs., LLC*,
721 F.3d 54 (2d Cir. 2013) ...............................................................................................16

*Bethel v. Jendoco Const. Corp.*,
570 F.2d 1168 (3d Cir. 1978) ............................................................................................25

*Burns v. Ferro*,
1991 WL 53834 (Del. Super. Ct. 1991) ...........................................................................14

*Citicorp Venture Capital Corp. v. Committee of Creditors Holding Unsecured
Claims*,
160 F.3d 982 (3d Cir. 1998) ..............................................................................................27

*In re CLK Energy Partners, LLC*,
2010 WL 1930065 (Bankr.W.D.La. 2010) .......................................................................26

*Collins & Aikman Corp. v. Stockman*,
    2010 WL 184074 (D. Del. 2010) ..................................................................................17

*Edwards v. A.H. Cornell & Son, Inc.*,
    610 F.3d 217 (3d Cir. 2010), *cert. denied* 562 U.S. 1280 (2011) ...........................11

*In re Epic Capital Corp.*,
    307 B.R. 767 (D. Del. 2004) ........................................................................................28

*In re F-Squared Inv. Mgmt, LLC*,
    2019 WL 4261168 (Bankr.D.Del. 2019) ...............................................................19, 20

*In re Food Mgmt. Group, LLC*,
    380 B.R. 677 (Bankr.S.D.N.Y. 2008) ..........................................................................3

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ........................................................................................11

*In re HH Liquidation, LLC*,
    590 B.R. 211 (Bankr. D. Del. 2018) ............................................................................27

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995) ........................................................................................16

*IBT Media Inc. v. Pragad*,
    220 A.D.3d 530 (1st Dep't 2023) ................................................................................17

*Kirschner v. KPMG, LLP*,
    626 F.3d 673 (2d Cir. 2010) ........................................................................................16

*Klauder v. Echo/RT Holdings, LLC*,
    152 A.3d 581, 2016 WL 7189917 (Del. 2016) ............................................................21

*Leveto v. Lapina*,
    258 F.3d 156 (3d Cir. 2001) ........................................................................................12

*In re Liberty State Benefits of Delaware, Inc.*,
    541 B.R. 219 (Bankr.D.Del. 2015) ..............................................................................14

*In re Liquid Holdings Grp., Inc.*,
    2018 WL 2759301 (Bankr.D.Del. 2018) .........................................................14, 17, 19

*In re Magnesium Corp. of America*,
    399 B.R. 722 (Bankr.S.D.N.Y. 2009) ..........................................................................15

*In re Mediators, Inc.*,
    105 F3d 822 (2d Cir. 1997) ................................................................................3, 15, 16

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)................................................................................12

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001)........................................................................2, 14, 16

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000)..................................................................................2

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
38 F.3d 1380 (3d Cir. 1994)...............................................................................25

*In re Pack Liquidating, LLC*,
2025 WL 2587577 (Bankr.D.Del. 2025) ................................................22, 23, 25

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008)................................................................................12

*In re Plassein Int'l Corp.*,
366 B.R. 318 (Bankr.D.Del. 2007), *aff'd.* 388 B.R. 46 (D. Del. 2008), *aff'd*
590 F.3d 252 (3d Cir. 2009)................................................................................21

*Shearson Lehman Hutton, Inc. v. Wagoner*,
944 F.2d 114 (2d Cir. 1991).......................................................................... *passim*

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir.1994)................................................................................23

*Simkin v. Blank*,
19 N.Y.3d 46 (2012) .........................................................................................17

*The Limited, Inc. v. McCrory Corp.*,
169 A.D.2d 605 (1st Dep't 1992) .......................................................................17

*Wight v. BankAmerica Corp.*,
219 F.3d 79 (2d Cir. 2000)........................................................................3, 15, 16

*In re Winstar Commc'ns*,
554 F.3d 382 (3d Cir. 2009)...............................................................................27

*Zazzali v. Hirschler Fleischer, P.C.*,
482 B.R. 495 (D.Del. 2012)................................................................................16

*In re Zohar III Corp.*,
620 F.Supp.3d 147 (D. Del. 2022) *appeal dismissed* 2022 WL 19038638 (3rd
Cir. 2022) ................................................................................................27, 28

iv

**Statutes**

11 U.S.C. § 510 ..................................................................................................................27

11 U.S.C. § 544 .............................................................................................................17, 26

11 U.S.C. § 548 ...................................................................................................17, 19, 22, 25

11 U.S.C. §550 ...................................................................................................................18

11 U.S.C. § 1123 .................................................................................................................4

**Other Authorities**

15 Corbin on Contracts 85.1 (2025) ....................................................................................17

Fed. R. Bankr. P. 7012 .......................................................................................................29

Fed. R. Civ. P. 8 .................................................................................................................1

Fed. R. Civ. P. 9 .......................................................................................................... *passim*

Fed. R. Civ. P. 12 ........................................................................................................ *passim*

Local Bankr. R. 7012-1 .......................................................................................................28

## PRELIMINARY STATEMENT[2]

Defendant MobileFuse LLC ("MobileFuse"), by its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1) and 12(b)(6), as incorporated herein by the Federal Rules of Bankruptcy Procedure, to dismiss the claims against MobileFuse in the first Amended Complaint dated November 18, 2025 (the "FAC") [Adv. D.I. 24] filed by plaintiff Drivetrain, LLC, as Plan Administrator and Litigation Trustee ("Plaintiff" or the "Trustee"), appointed in the above-captioned Chapter 11 case of Near Intelligence, Inc., *et al.* (collectively "Near" or the "Debtor").

Under the well-established doctrine of *in pari delicto*, the Debtor and Trustee—standing in the shoes of the Debtor—are barred from seeking to recover any amounts sought in this action because the Debtor itself perpetrated the alleged fraud it complains about. That is, the Trustee essentially alleges that the Debtor itself, by and through its own Chief Executive Officer, Chief Financial Officer and President (the "Near Insiders"), orchestrated and implemented a wrongful "payment scheme" whereby Near made substantial payments to MobileFuse for services allegedly provided by MobileFuse, and MobileFuse made substantial payments to Near for services allegedly provided by Near. According to the FAC, the Near Insiders determined both the amounts Near billed to MobileFuse *and* the amounts that MobileFuse billed to Near. FAC, ¶ 40.

At the time of the alleged "payment scheme" that is the foundation of the FAC, the Near Insiders were seeking to take Near public pursuant to a special purpose acquisition company (SPAC)

---

[2] The facts set forth herein are taken from allegations in the FAC and documents that are referenced in and integral to the FAC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert denied* 132 U.S. 98 (2011) (on a motion to dismiss, court may consider "documents that are *integral to or explicitly relied* upon in the complaint") (emphasis in original; quotation marks and citation omitted). The FAC incorporates and extensively relies on several agreements and other documents, but then fails to attach them as exhibits to the FAC. As those documents are integral to the Trustee's claims against MobileFuse, copies of relevant agreements, along with a copy of the FAC, are attached as Exhibits to the accompanying Attorney Declaration of Robert F. Regan dated December 16, 2025 ("Regan Decl.").

transaction and, therefore, to make Near "a more attractive target" of such a transaction. *See* FAC, ¶¶ 24-27. Thus, based on the allegations in the FAC, the Near Insiders were attempting to benefit Near (not MobileFuse) by boosting Near's revenue in order to make Near a more attractive target and increase the likelihood of the SPAC transaction, thereby accomplishing the obvious and primary goal of the Near Insiders to take Near public. Indeed, the United States Department of Justice obtained an indictment on precisely that basis, specifically alleging that the Near Insiders fraudulently inflated Near's revenue to make Near a more attractive target for a SPAC transaction in order to go public. That indictment is a matter of public record. *See* indictment in *United States v. Mathews, et al.*, SI 24 Cr. 630 (SDNY) ("Indictment"), available here: https://www.justice.gov/usao-sdny/media/1410506/dl?inline.[3] There is, however, no allegation that MobileFuse improperly accounted for its transactions with Near.

The allegations in the FAC also importantly confirm that the alleged "payment scheme" actually resulted in a net benefit to Near. That is, the Trustee concedes that Near received more money from MobileFuse than it purportedly paid to MobileFuse, resulting in a net payment or "net margin" to Near. FAC, ¶ 39. Indeed, according to the FAC, the alleged "payment scheme" orchestrated by the Near Insiders resulted in a net payment to Near of $5.83 Million. FAC, ¶ 58.

As set forth below, under the doctrine of *in pari delicto*, a plaintiff may not assert claims against a defendant if the plaintiff bears fault for the claims. *See Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001) (claims on behalf of debtor properly dismissed based on *in pari delicto* doctrine where debtor participated in alleged ponzi scheme). The Third Circuit in *R.F. Lafferty* recognized with favor the decisions by other Circuits (including the

---

[3] Courts are permitted to take judicial notice of and consider public records on a motion to dismiss. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000).

Second Circuit) that have "applied the in pari delicto doctrine to bar claims of a bankruptcy trustee, standing in the shoes of a debtor, against third-parties, without regard to the trustee's status as an innocent successor." *Id*. at 358 (citing cases, including *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991)(applying New York law); *In re Mediators, Inc.*, 105 F.3d 822, 825-27 (2d Cir. 1997)(summarizing *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir. 1995) and *Wagoner* and applying New York law in holding that a bankruptcy trustee has no standing to assert claims against third-parties for cooperating in the very misconduct that the debtor had initiated)). Thus, the *in pari delicto* doctrine bars trustees from suing third parties based on a debtor corporation's "own wrongful conduct." *In re Food Mgmt. Group, LLC*, 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008).

Under the "*Wagoner* rule" established by the Second Circuit, the *in pari delicto* doctrine bars a bankruptcy trustee from suing third parties for damages "when a bankrupt corporation has joined with [the] third party in defrauding its creditors*." Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).  The rule denies a trustee's "prudential standing" when the debtor corporation has participated in the alleged fraud.  "Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the *Wagoner* rule bars a trustee from suing to recover for a wrong that he himself essentially took part in." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86-87 (2d Cir. 2000).

According to the FAC, Near orchestrated the alleged wrongful payment scheme that is now the entire foundation for the FAC.  Because the Trustee, as the successor to Near, seeks to recover damages from MobileFuse based on the alleged "payment scheme" orchestrated by the Near Insiders, the Trustee's claims are barred by the doctrine of *in pari delicto* and the *Wagoner* rule.  Furthermore, even accepting the Trustee's factual allegations as true for purposes of this motion, the

3

Trustee has still failed to state a valid claim for relief against MobileFuse.  Accordingly, the FAC should be dismissed in its entirety.

### **NATURE AND STAGE OF THE PROCEEDING**

On December 8, 2023, Near filed a voluntary petition for relief in this Court under Chapter 11 of the United States Bankruptcy Code. (FAC, ¶ 10.)

On March 13, 2024, Near filed the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 336] (the "Plan").  (FAC, ¶ 10.)

On March 15, 2024, the Court confirmed the Plan in its Findings of Fact, Conclusions of Law, and Order Approving Adequacy of Disclosures on a Final Basis and Confirming the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 346] (the "Confirmation Order").  (FAC, ¶ 10.)

The Confirmation Order appointed the Trustee as the representative of the Debtors' estates pursuant to 11 U.S.C.§ 1123(b)(3)(B) and vested in the Trustee the authority to "investigate[] and, if appropriate, pursu[e]" certain causes of action, including causes of action that previously belonged to Near." (FAC, ¶ 10.).

Thus, pursuant to the Confirmation Order, the Trustee "shall be the representative of the estate" and "shall be the Debtors' successor in interest with respect to the Litigation Trust Assets and all actions, claims, defenses, rights, or interests constituting Litigation Trust Assets." Confirmation Order, ¶ 13.

On September 4, 2025, the Trustee filed the original Complaint. [D.I. 570].   On November 18, 2025, in response to MobileFuse's original motion to dismiss, the Trustee filed the FAC.  [Adv. D.I. 24].

## SUMMARY OF ARGUMENT

Each of the claims asserted against MobileFuse in the FAC should be dismissed because:

1.      The FAC fails to allege facts sufficient to state plausible claims against MobileFuse.  Indeed, other than setting forth conclusory allegations of the elements of the legal claims, the FAC does not allege facts sufficient to establish a plausible claim.  Furthermore, because the Trustee stands in the shoes of the Debtor and the allegations in the FAC establish that the Debtor orchestrated and implemented the alleged wrongful conduct that is the basis of the Trustee's claims, the Trustee is now barred by the doctrine of *in pari delicto* and the *Wagoner* rule from asserting its purported claims against MobileFuse, including, but not limited to, the Trustee's purported claims for breach contract (Count IX, X) and unjust enrichment (Count XI).

2.      The purported avoidance claims based on alleged constructive fraudulent transfers (Counts I,  II, VII and VIII) also fail because the FAC does not plausibly allege constructive fraud, including insolvency or receipt of less than reasonably equivalent value by the Debtor. Instead, the Trustee simply alleges in conclusory fashion that the Debtor received less than "reasonably equivalent value" and was insolvent at the time of the alleged transfers.  Mere recitations of the elements of a claim, however, are insufficient to survive a motion to dismiss.

3.      The purported avoidance claims based on alleged intentional fraudulent transfers (Counts III, IV and VI and VIII) also fail because the FAC does not plausibly allege intentional fraud with the particularity required under Fed. R. Civ. P. 9(b).  To plausibly assert intentional

fraudulent conveyance claims, the Trustee must allege particularized facts establishing the requisite fraudulent intent as required by Fed. R. Civ. P. 9(b).

4.      The claims to recover allegedly avoidable transfers (Counts V, VI and VII and VIII) also fail because the underlying claims are not supported by plausible factual allegations.

5.      The claims for equitable subordination and to disallow MobileFuse's unsecured claim (Count XII and XIII) also fail because the FAC does not allege plausible facts sufficient to support those claims.  Other than conclusory allegations of the elements of the legal claims, the FAC does not allege facts sufficient to establish a plausible claim for equitable subordination.

Thus, as detailed below, the FAC should be dismissed in its entirety.

## SUMMARY OF ALLEGATIONS IN THE AMENDED COMPLAINT

The Trustee commenced this adversary proceeding on September 4, 2025. Pursuant to the FAC, the Trustee alleges as follows:

According to the FAC, in or about 2020, Near and MobileFuse entered into a "strategic partnership" consisting of a series of agreements (the "Service and Usage Agreements") whereby (a) MobileFuse, as the customer, would pay a fee to use Near's data products; (b) Near, as the customer, would pay MobileFuse a fee for certain services; and (c) Near insiders would invest $2 million in MobileFuse in exchange for a 10% ownership interest in MobileFuse.  FAC, ¶¶ 26-27. The Trustee then disregards the terms of the parties' agreements and asserts in conclusory fashion that any payments by MobileFuse to Near for Near's services were legitimate, but that any payments by Near for services provided by MobileFuse were not legitimate.  FAC, ¶¶ 30-31, 44.

The gravamen of the FAC is that Near entered into an alleged fraudulent "round-tripping" payment scheme with MobileFuse that was "orchestrated by insiders of Near." FAC, ¶ 1.  According to the FAC, pursuant to the alleged "payment scheme," Near made substantial payments to

MobileFuse – in an amount determined by the Near Insiders – for services allegedly provided by MobileFuse to Near, so MobileFuse could then turn around and immediately make even greater payments to Near – again, in amounts *determined by the Near Insiders* – for services allegedly provided by Near to MobileFuse, resulting in a net payment to Near.  FAC, ¶¶ 39-40.

Based on the FAC, the implied purpose of the alleged "round-tripping" payment scheme was to establish reciprocal sales between the two companies in an effort to inflate Near's revenue.  As set forth in the FAC, at the time of the alleged "payment scheme," the Near Insiders were seeking to take Near public pursuant to a special purpose acquisition company (SPAC) transaction and, therefore, to make Near "a more attractive target" for such a transaction.  *See* FAC, ¶¶ 24-27.  The clear implication of the Trustee's allegations is that the Near Insiders attempted to artificially boost Near's revenue in order to increase the likelihood of the SPAC transaction.  As noted above, the Department of Justice obtained an indictment of the Near Insiders on precisely that basis and specifically alleges that the Near Insiders' fraudulently inflated Near's revenue to make Near more attractive for a SPAC transaction in order to go public.  Thus, while the ultimate effect of the Near Insiders' alleged conduct may have led to the bankruptcy, the immediate intended effect was clearly to benefit Near's financial standing and public image.

The allegations in the FAC also confirm that the alleged "payment scheme" resulted in a net benefit to Near.  Thus, although the FAC alleges that Near made substantial payments to MobileFuse pursuant to the alleged "payment scheme," according to the FAC, MobileFuse made even greater payments to Near, resulting in a net payment or "net margin" to Near.  FAC, ¶ 39.  Nevertheless, the Trustee seeks to recover all payments by Near *to* MobileFuse, which were allegedly determined by the Near Insiders pursuant to their alleged "payment scheme," while at the same time seeking to

7

collect additional payments *from* MobileFuse that are allegedly owed to Near pursuant to the same alleged fraudulent "payment scheme."

Although the Trustee claims that Near was being "drained and deprived of cash flow" (FAC, ¶ 8), the Trustee's own allegations confirm that the alleged "payment scheme" resulted in a net payment to Near in the amount of $5.83 Million. FAC, ¶ 58. Specifically, the dollar amount of the payments from MobileFuse to Near exceeded the dollar amount of the payments from Near to MobileFuse, and the end result of the alleged "payment scheme" was a net benefit or "net margin" to Near. *See* FAC, at ¶ 39. According to the Department of Justice's Indictment, those net payments by MobileFuse to Near represented the amounts MobileFuse legitimately owed to Near for services actually rendered by Near to MobileFuse. *See, e.g.,* Indictment, at ¶ 23.

According to the FAC, the Near Insiders' scheme "began to unravel in 2023" due in part to "the Near Insiders' growing fear that, with Near becoming a publicly traded company in early 2023, there was a larger audience to discover their personal investment in MobileFuse and the Payment Scheme." FAC, ¶ 59. On August 15, 2023, MobileFuse allegedly gave Near written notice that it was terminating its agreement with Near. FAC, ¶ 60. Thereafter, in or about September 2023, the FAC claims that the parties wound down their relationship and negotiated a settlement of the outstanding debts between Near and MobileFuse. FAC, ¶¶ 64-65. On or about December 8, 2023, Near filed petitions for relief under chapter 11 of the Bankruptcy Code, listing MobileFuse's Scheduled Claim as a nonpriority claim in its Schedule of Assets and Liabilities for Near North America, Inc. [D.I. 120] in the amount of $724,730.42. FAC, ¶ 69.

The Trustee now seeks to hold MobileFuse liable for the alleged "payment scheme" that was orchestrated and implemented by Near and the Near Insiders. Specifically, the Trustee makes the

following notable concessions in the FAC concerning the Near Insiders' conduct in furtherance of the alleged wrongful "payment scheme":

(a)  The Near Insiders "concocted a multifaceted scheme."  FAC, ¶ 4.

(b)  The Near Insiders "transferred millions of dollars from Near to MobileFuse under false pretenses."  FAC, ¶5.

(c)  The Near Insiders "funneled cash to MobileFuse to bankroll its payments to Near."  FAC, ¶ 6.

(d)  At the time of the alleged "payment scheme," the Near Insiders were seeking to take Near public pursuant to a special purpose acquisition company (SPAC) transaction and to make Near "a more attractive target" for such a transaction.  *See* FAC, ¶¶ 23-24.

(e)  The Near Insiders "agreed on the contours of the Payment Scheme."  FAC, ¶ 29.

(f)  The Near Insiders "were funneling payments to MobileFuse for nonexistent services."  FAC, ¶ 36.

(g)  The Near Insiders "warned the MobileFuse Insiders that third parties were sniffing around and asked that they play along."  FAC, ¶ 52.

(h)  The Near Insiders caused Near to make payments to MobileFuse through a currency exchange, "which allowed Near's payments to MobileFuse to avoid scrutiny."  FAC, ¶ 53.

(j)  The Near Insiders "concealed the Payment Scheme by creating false documentation supporting the Sham Payments."  FAC, ¶ 54.

(k)  The Near Insiders created "post-dated agreements."  FAC, ¶ 55.

(1)  The Near Insiders were "funneling" sham payments to MobileFuse.  FAC, ¶ 64.

Thus, while the Trustee alleges that MobileFuse participated or "assisted" in the alleged "payment scheme," it was the Near Insiders, on behalf of the Debtor, that actually orchestrated and implemented the alleged "payment scheme."  Indeed, but for the alleged wrongful conduct of the Near Insiders acting on behalf of Near, the alleged "payment scheme" would never have happened.

Under the *in pari delicto* doctrine and the *Wagoner* rule, the Trustee cannot hold MobileFuse liable for allegedly participating in the alleged "payment scheme" because Near itself, as the Debtor, concocted and actively participated in the alleged wrongful conduct.

All of the Trustee's claims in the FAC are based upon the alleged "payment scheme" orchestrated by Near. Thus, the Trustee seeks to hold MobileFuse liable for its alleged participation in the alleged "payment scheme" that Near, the Debtor, devised and orchestrated. For example, pursuant to Counts I, II, III, IV and V for the avoidance and recovery of alleged intentional and constructively fraudulent transfers, the Trustee seeks to avoid and recover the payments allegedly made by Near to MobileFuse pursuant to the alleged "payment scheme" orchestrated by Near. Similarly, pursuant to Counts VI, VII, VIII, IX, X and XI for breach of contract, unjust enrichment and avoidance of the settlement agreements between Near and MobileFuse, the Trustee seeks to recover from MobileFuse additional payments allegedly owed to Near pursuant to the alleged "payment scheme" orchestrated by Near. Finally, pursuant to Counts XII and XIII, the Trustee seeks to object to and equitably subordinate MobileFuse's nonpriority scheduled claim in the Near bankruptcy based on MobileFuse's alleged participation in the alleged "payment scheme" orchestrated by Near.

As set forth below, because the allegations in the FAC establish that the Debtor (Near) not only participated in the alleged fraudulent "payment scheme," but orchestrated and implemented it, and the Trustee now stands in the shoes of the Debtor, each of the Trustee's purported claims against MobileFuse are barred by the *in pari delicto* doctrine and the *Wagoner* rule. Furthermore, because the Trustee's claims are based on conclusory allegations and bare legal conclusions, they fail to state a plausible claim against MobileFuse. Accordingly, the Trustee's FAC should be dismissed in its entirety.

## ARGUMENT

### I. LEGAL STANDARD

In deciding such a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court reviews the complaint to determine whether a plaintiff has adequately pled facts sufficient to show "a

plausible claim for relief." *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010), *cert. denied* 562 U.S. 1280 (2011). To survive a motion to dismiss, a plaintiff must allege well-pled facts with sufficient detail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Third Circuit has adopted a two-part analysis. *Fowler*, 578 F.3d at 210. "First, the factual and legal elements of a claim should be separated" with the reviewing court accepting "all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." *Id*. at 210-11. Next, the court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). In addition, pursuant to Fed. R. Civ. P. 9(b), allegations of fraud must be plead with particularity.

Although a court may be required to accept the well-pled factual allegations as true for purposes of a motion to dismiss, general, conclusory allegations "couched as [] factual allegation[s]" need not be credited. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts not bound to accept as true legal conclusions couched as factual allegation and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Similarly, where the allegations in the complaint are contradicted by the relevant documents, they are insufficient to defeat a motion to dismiss. *See 2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*, 2001 WL 410074, *9 (S.D.N.Y. 2001)*, citing Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp.2d 179, 182 (S.D.N.Y. 2000) (where "documents contradict plaintiff's allegations . . . this Court must grant Defendants' motion to dismiss").

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

11

will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555 (citations omitted); *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citations and quotations omitted). Thus, stating a claim requires a complaint to "mak[e] a sufficient showing of enough factual matter (taken as true) to suggest the required elements …." *Phillips,* 515 F.3d at 235. "[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted). Furthermore, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001).

As set forth below, because the Trustee's FAC is based on conclusory assertions and legal conclusions, rather than well-pled factual allegations, and the Trustee's purported claims against MobileFuse (even if true) are barred by the *in pari delicto* doctrine, the Trustee has failed to allege facts sufficient to state a plausible claim against MobileFuse, and the FAC should be dismissed in its entirety.

## II. CHOICE OF LAW

As set forth above, the agreements between the parties are integral to the FAC. The relevant agreements governing the payment for services provided by MobileFuse to Near both contain express choice of law provisions. The choice of law provision in the March 24, 2020 Services Agreement between MobileFuse and Near provides in relevant part as follows:

> **10.3 Governing Law and Dispute Resolution.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the principles of conflict of laws that would defer to the substantial laws of any other jurisdiction. The Parties hereby irrevocably consent and submit to the exclusive jurisdiction of any state court located in New York County in the State of New York or the United States District Court for the Southern District of New

York located in New York County in the State of New York in connection with any dispute arising out of or relating to this Agreement.

Regan Decl., Ex. B.

The choice of law provision in the Real Time Bidding Buyer Agreement between MobileFuse and Near provides in relevant part as follows:

> **16. <u>Governing Law and Venue</u>.**  All disputes arising from or relating to this Agreement will be governed by the laws of the State of New York, without giving effect to its conflict of laws principles.  The parties hereby: (a) agree that any action arising out of this Agreement will be brought in the state or federal courts located in New York City, New York; and (b) irrevocably submit to the exclusive jurisdiction of such courts.

Regan Decl., Ex. C.

Thus, Near and MobileFuse expressly agreed that New York law applies to any disputes arising out of the provision of services by MobileFuse to Near, including any disputes concerning the payment for those services, and that the exclusive jurisdiction for the resolution of all such disputes would be in the state or federal courts located within New York County or the Southern District of New York. As such, New York substantive law and the Second Circuit's analysis of the substantive and procedural law should play a direct, guiding role on this motion.

## III.    THE TRUSTEE'S CLAIMS ARE BARRED BY THE *IN PARI DELICTO* DOCTRINE

In the present case, the Plaintiff, as the Litigation Trustee authorized to pursue claims on behalf of the Debtor's estate (Near), purports to assert claims against MobileFuse for constructive and intentional fraudulent transfers, breach of contract, unjust enrichment and equitable subordination based on the alleged fraudulent "payment scheme" orchestrated and implemented by the Near Insiders.  As set forth below, because the Trustee now stands in the shoes of the Debtor, and the Debtor, through the Near Insiders, orchestrated the alleged wrongful conduct, the Trustee's purported claims are barred by the *in pari delicto* doctrine and the *Wagoner* rule.

### A. *In Pari Delicto*

"The doctrine of *in pari delicto* provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." *R.F. Lafferty*, 267 F.3d at 354 (claims on behalf of debtor property dismissed based on *in pari delicto* doctrine where debtor participated in a ponzi scheme). The defense is often applied to claims by a bankruptcy trustee in adversary proceedings, particularly where the debtor's own insiders orchestrated the alleged wrongful conduct. Even where the wrongdoers' interests may be adverse to the debtor, the doctrine of *in pari delicto* applies where the debtor "receives any sort of benefit from the fraud, no matter how small that benefit might be." *In re Liberty State Benefits of Delaware, Inc.*, 541 B.R. 219, 235 (Bankr.D.Del. 2015). *See also In re Liquid Holdings Grp., Inc.*, 2018 WL 2759301, *16 (Bankr.D.Del. 2018) (dismissing trustee's claims based on *in pari delicto* doctrine and rejecting adverse interest exception where debtor corporation received benefit of initial public offering (IPO) as a result of insiders' alleged fraudulent conduct and debtor's inflated revenue).

The *in pari delicto* doctrine applies to a bankruptcy trustee standing in the shoes of the debtor and applies equally to federal and state law claims. *R.F. Lafferty*, 267 F.3d at 354. Thus, the doctrine applies whether the claims sound in contract, tort, or otherwise. *Id*. ("[T]he broad idea captured by the doctrine may involve a number of different defenses, depending on whether a contract, tort, or other claim is asserted."); *Burns v. Ferro*, 1991 WL 53834, *2 (Del. Super. Ct. 1991) ("Where parties to a contract are *in pari delicto*, a court will 'leave them where it finds them,' and will refuse to enforce the contract. A plaintiff who participates in a fraudulent scheme may not sue and recover for injuries that arise out of the same transaction.").

As set forth above, pursuant to the choice of law provisions in the relevant agreements, Near and MobileFuse agreed that any disputes arising out of the provision of services by MobileFuse to Near, which would include payment disputes, would be governed by the laws of the State of New

14

York and submitted to the exclusive jurisdiction of the state or local courts located in New York County or the federal courts in the Southern District of New York.  As such, reference to New York law and Second Circuit authority is also essential on this motion.

Under the *Wagoner* rule established by the Second Circuit, the *in pari delicto* doctrine bars a bankruptcy trustee from suing third parties for damages "when a bankrupt corporation has joined with [the] third party in defrauding its creditors*."*  *Wagoner*, 944 F.2d at 118.  In such circumstances, the trustee lacks "prudential standing" to assert claims against a third party when the debtor corporation has participated in the alleged wrongful conduct.  *See Mediators,* 105 F3d at 825-27 (bankruptcy trustee has no standing to assert claims against third parties for cooperating in the very misconduct that the debtor initiated).  The *Wagoner* rule and *in pari delicto* doctrine apply equally to successors to wrongdoers, including bankruptcy trustees who stand "in the shoes of the bankrupt corporation." *Mediators*, 105 F.3d at 825-26. "Because management's misconduct is imputed to the corporation, and because a trustee stands in the shoes of the corporation, the *Wagoner* rule bars a trustee from suing to recover for a wrong that he himself essentially took part in." *Wight*, 219 F.3d at 87.  Thus, "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage." *Wagoner*, 944 F.2d at 118.  *See In re Magnesium Corp. of America*, 399 B.R. 722, 761-62 (Bankr.S.D.N.Y. 2009)("[I]mputed misconduct gives rise to an *in pari delicto* defense").

As set forth below, under either the Third Circuit's analysis of the *in pari delicto* doctrine or the corresponding *Wagoner* rule established by the Second Circuit (which has been cited favorably by the Third Circuit), the Trustee is barred from recovering from MobileFuse based on the alleged fraudulent "payment scheme" that the Debtor itself devised, orchestrated and implemented.

**B.   The Trustee's Claims Against MobileFuse Should Now Be Dismissed**

In this case, the Trustee, as the assignee of the Debtor's claims, stands in the shoes of the Debtor (Near).  *See, e.g.*, *Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 512 (D.Del. 2012) (Litigation trust formed as part of Chapter 11 plan "stands in the shoes of the debtors and is subject to the same defenses that could have been asserted against the debtors."); *R.F. Lafferty*, 267 F.3d at 356, 358 (trustee "stands in the shoes of the debtor" and is subject to the same defenses that defendant could have asserted against debtor), *citing Wagoner*, 944 F.2d at 120 (*in pari delicto* doctrine bars claims against third parties by bankruptcy trustee standing in shoes of debtor).

Furthermore, the conduct of the Near Insiders is imputed to the Debtor (Near).  *See, e.g., R.F. Lafferty*, 267 F.3d at 360 (fraudulent conduct of debtor's insiders imputed to debtor, even where insiders may have acted adverse to debtor's interests); *Zazzali*, 482 B.R. at 513 (imputing alleged fraudulent conduct of corporate officers to corporation under Delaware Law); *Wagoner*, 944 F.2d at 120 (misconduct of managers imputed to the corporation); *Wight*, 219 F.3d at 86 (same).

Courts regularly apply the *Wagoner* rule and the *in pari delicto* doctrine at the pleading stage to bar trustees' claims pursuant to Rules 12(b)(1) and 12(b)(6). *See, e.g., Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1085 (2d Cir. 1995) (affirming dismissal under Fed. R. Civ. P. 12(b)(1)); *In re Bernard L. Madoff Inv. Secs., LLC*, 721 F.3d 54, 65 (2d Cir. 2013) ("Early resolution is appropriate where (as here) the outcome is plain on the face of the pleadings"); *Kirschner v. KPMG, LLP*, 626 F.3d 673, 674 (2d Cir. 2010); *Mediators*, 105 F.3d at 825-27.

As set forth above, based on the allegations in the FAC, Near – through the Near Insiders – orchestrated and implemented the alleged "payment scheme" that serves as the basis for the Trustee's claims.  As the Trustee now steps into the shoes of Near, it cannot sue MobileFuse for injuries allegedly arising out of that same alleged "payment scheme" or the contracts and agreements that served as the basis for that alleged "payment scheme." *See, e.g., In re Augustus Intelligence, Inc.*,

16

2025 WL 936432, *5 (Bankr.D.Del. 2025)(TMH), *quoting* 15 Corbin on Contracts 85.1 (2025) (it is an "accepted tenet of contract law" that bargains made for the purpose of defrauding third persons "contradict[] public policy and cannot be enforced").  Under these circumstances, the Trustee's purported claims against MobileFuse are barred by the *in pari delicto* doctrine and the *Wagoner* rule. *See Liquid Holdings Grp., Inc.*, 2018 WL 2759301 at *16 (dismissing trustee's claims based on *in pari delicto* doctrine and rejecting adverse interest exception where debtor corporation received benefit of initial public offering (IPO) as a result of insiders' alleged fraudulent conduct).  The fact that any recovery from MobileFuse could *potentially* flow to Near's creditors does not save the Trustee's claims under the *in pari delicto* doctrine.[4]

Accordingly, each of the claims asserted in the FAC against MobileFuse should be dismissed, including, but not limited to the claims for breach contract (Counts IX and X) and unjust enrichment (Count XI),[5] which are all based on the alleged fraudulent "payment scheme" orchestrated and implemented by the Debtor.

## IV.   THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS FOR CONSTRUCTIVE FRAUDULENT CONVEYANCE

In addition to the *in pari delicto* doctrine, the FAC also fails to plausibly allege facts sufficient to establish the required elements of claims under 11 U.S.C. §§ 548(a)(1)(B) or 544(b)(1)

---

[4] "Just as the establishment of the Litigation Trust does not reduce [the Debtor's] rights . . . neither does it enhance [the Debtor's] rights by eliminating a defense that the [defendant]  would otherwise be permitted to assert against [the Debtor]." *Collins & Aikman Corp. v. Stockman*, 2010 WL 184074, *8 (D. Del. 2010)( rejecting argument that *in pari delicto* did not apply even though "all benefit will redound to the Litigation Trust and, ultimately, [the] creditors.").

[5] The Trustee's claim for unjust enrichment should also be dismissed because the parties' relationship is governed by written agreements.  It is well settled that, where parties' relationship is governed by a written contract, recovery on a theory of unjust enrichment for events arising out of that contract are ordinarily precluded. *See Simkin v. Blank*, 19 N.Y.3d 46, 55 (2012); *IBT Media Inc. v. Pragad*, 220 A.D.3d 530, 532 (1st Dep't 2023) (claims for unjust enrichment are properly dismissed where relationship between parties is governed by written agreement). *See also The Limited, Inc. v. McCrory Corp.*, 169 A.D.2d 605, 607 (1st Dep't 1992)(unjust enrichment claim cannot stand where subject matter of claim is governed by contract).

for constructive fraudulent conveyance. In Counts I, II, VII and VIII of the FAC, the Trustee attempts to assert claims for constructive fraudulent conveyance. The Trustee then seeks to recover those alleged fraudulent transfers pursuant to 11 U.S.C. § 550 in Counts V, VII and VIII. As set forth below, because the Trustee has failed to adequately allege that Near received less than reasonably equivalent value and that the transfers were made at a time when the Debtor was insolvent or rendered insolvent thereby, the Trustee's purported constructive fraudulent conveyance claims must fail.

First, the FAC fails to plausibly allege that the Debtor did not receive reasonably equivalent value. Instead, the Trustee ignores the terms of the parties' agreements and merely alleges in conclusory fashion that Near failed to receive reasonably equivalent value in exchange for the alleged payments to MobileFuse. According to the FAC, however, under the alleged "payment scheme," Near would make a substantial payment to MobileFuse, and MobileFuse would immediately turn around and make an even greater payment to Near, resulting in a net payment or "net margin" to Near. *See* FAC, ¶ 39. According to the FAC, these transactions resulted in a net payment from MobileFuse to Near in the amount of $5.83 Million. FAC, ¶ 58. Thus, the purported "payment scheme" alleged by the Trustee resulted in a net benefit to Near (the Debtor), substantiating the conclusion that Near received fair consideration. As a result, the FAC fails to plausibly allege that Near received less than reasonably equivalent value.

The FAC also fails to allege facts sufficient to establish that each of the specific transferors of the challenged payments to MobileFuse was insolvent on the date the alleged transfer was made or was rendered insolvent thereby. For purposes of a constructive fraudulent conveyance claim, insolvency essentially means that the debtor (i) was balance sheet insolvent at the time of the transfer (or became so as a result thereof); (ii) had unreasonably small capital; or (iii) was unable

18

to pay its debts as those debts matured. *See* 11 U.S.C. § 548(a)(1)(B)(ii).  To plead insolvency, the Trustee must allege "facts from which [the] court can infer that the debtor was insolvent on the date of" the alleged transfers or because of them. *In re F-Squared Inv. Mgmt, LLC*, 2019 WL 4261168, *11 (Bankr.D.Del. 2019).  "Mere recitations by a trustee that a debtor is insolvent are conclusory," and are, therefore, insufficient to survive a motion to dismiss.  *In re Amcad Holdings, LLC*, 579 B.R. 33, 38–39 (Bankr.D.Del. 2017).  "'[T]here must be some sort of financial data or analysis provided so that the court can infer the company's liabilities exceeded its assets at the time the transfers in question took place.'" *Liquid Holdings Group, Inc.,* 2018 WL 2759301 at *19, *quoting O'Toole v. Karnani (In re Trinsium Grp.)*, 460 B.R. 379, 392 (Bankr.S.D.N.Y. 2011).

In the present case, the FAC fails to include sufficient financial data "surrounding the [alleged] Transfers that the Court can use to infer [each specific transferor's] insolvency. . . . Aside from explaining the value given and received for the Transfers, the Trustee posits no other financial information indicating that [each specific transferor] could not meet any financial obligations." *See Liquid Holdings Group, Inc.,* 2018 WL 2759301 at *19.  Instead, the FAC consists merely of a conclusory recitation of the elements of a claim for constructive fraud.  *See* FAC, ¶¶ 71, 76 ("Near was insolvent at all times relevant to this adversary proceeding.").  It does not contain allegations sufficient to establish that each specific transferor—*i.e.*, the entity that allegedly made the challenged transfers to MobileFuse—was insolvent on the dates of the alleged payments to MobileFuse or that that entity became insolvent as a result thereof.

Thus, for example, the FAC "do[es] not contain any specific allegations regarding [each specific transferor's] assets or liabilities at the time of" the alleged payments. *F-Squared Inv. Mgmt*, 2019 WL 4261168 at *11 (dismissing complaint for failure to allege insolvency).  Nor does it allege facts from which insolvency with respect to each specific transferor could reasonably be

19

inferred. *See id.* at *12 ("[U]ses of words such as 'massive' and 'enormous' to describe a company's liabilities are conclusory in nature and say nothing regarding the actual magnitude of the liabilities much less the magnitude relative to the company's assets."). Instead, the FAC contains allegations demonstrating that the alleged transactions between Near and MobileFuse resulted in a net payment or benefit to Near that did not render Near insolvent.

Thus, rather than setting forth the detailed financial data or analysis necessary for a court to infer insolvency on the date of the challenged transfer with respect to each of the alleged transferors, the Trustee relies on generalized assertions and conclusory allegations that lump all of the debtors and alleged transferors together and thus fail to satisfy the federal pleading requirements. Specifically, the Trustee initially alleges, in conclusory fashion, that "[b]y no later than April 1, 2021, Near was insolvent. By that date, Near Pte. [a non-debtor] did not have the ability to pay its debts as they became due and was inadequately capitalized." FAC, ¶ 71. Likewise, again in conclusory fashion, the Trustee alleges that the liabilities "of Near Pte. [a non-debtor], Near Holdco [a non-debtor], Near Singapore [a non-debtor], and Near, Inc. – exceeded the fair value of its assets from April 2021 through Petition Date." FAC, ¶ 71. The Trustee then goes on to make a number of allegations concerning the alleged financial condition of "Near"—a defined term in the FAC—without specifying which particular entity within the definition of "Near" the Trustee is actually referring to. *See* FAC, ¶¶ 72-76. "Near" is defined in the FAC as the following four entities: Near Intelligence, Inc. ("Near, Inc."), Near Intelligence LLC ("Near LLC"), Near North America, Inc. ("Near NA"), and Near Intelligence Pte. Ltd. ("Near Singapore"). *See* FAC, n.1. Only one of those entities, however, allegedly made any of the challenged transfers to MobileFuse.

As explained below, MobileFuse allegedly received the challenged transfers from three specific legal entities—Near Pte. Ltd. [a non-debtor], Near Intelligence Holdings Inc. [a non-debtor]

20

and Near Intelligence Pte. Ltd. *See* FAC, ¶ 42. Again, only one of those entities is named as a debtor in this case and falls within the definition of "Near" in the FAC. In order to plausibly assert a claim for a constructive fraudulent transfer, however, the Trustee must identify the specific transferor/debtor that was insolvent on the date of the alleged transfer or became insolvent as a result of such transfer. *See In re American Classic Voyages Co.*, 367 B.R. 500, 503 n.5 (Bankr.D.Del. 207)(in determining an avoidance claim, it is the insolvency of the specific debtor that made the transfer that is relevant to the solvency analysis); *Askanase v. Fatjo*, 130 F.3d 657, 670 (5th Cir. 1997)(rejecting trustee's argument that solvency of parent corporation determined solvency of subsidiaries). Moreover, the alleged fraudulent transfer must be made by a debtor, not a non-debtor affiliate or subsidiary of the debtor parent company. *See Klauder v. Echo/RT Holdings, LLC*, 152 A.3d 581, 2016 WL 7189917 (Del. 2016) (rejecting fraudulent conveyance claim against non-debtor subsidiary of debtor parent company); *In re Plassein Int'l Corp.*, 366 B.R. 318, 326 (Bankr.D.Del. 2007), *aff'd.* 388 B.R. 46 (D. Del. 2008), *aff'd* 590 F.3d 252 (3d Cir. 2009) (dismissing state and federal fraudulent transfer claims where allegedly fraudulent transfer was made by non-debtor).

In light of the conclusory and generalized nature of the allegations and the FAC's failure to identify the specific transferor/debtor that was allegedly insolvent on the date of the challenged transfers, the FAC fails to meet the requisite federal pleading requirements. The Trustee fails to provide the required insolvency information with respect to each of the specific alleged transferors/debtors that allegedly made the challenged transfers. Instead, the Trustee simply alleges in a conclusory and generalized fashion that "Near" was insolvent from April 1, 2021 through the December 8, 2023 petition date – a period of over two years and eight months. FAC, ¶¶ 71, 76. This is despite the fact that Near continued to operate and conduct business through the December 8, 2023 petition date, went public in 2023 pursuant to a SPAC transaction that, as a matter of public record,

21

generated hundreds of millions of dollars in financing and equity contributions to Near, and allegedly made $25.6 Million in payments to MobileFuse.  Indeed, the alleged transfers between Near and MobileFuse resulted in a net payment, and therefore a benefit, to Near in the amount of $5.83 Million.  Thus, the alleged time period of continuous insolvency claimed by the Trustee is not plausible within the meaning of federal pleading requirements.

Based on the above, the Trustee has failed to allege specific facts sufficient to establish plausible claims for constructive fraudulent transfers with respect to the challenged payments allegedly made to MobileFuse. As a result, Counts I, II, V, VII and VIII should be dismissed.

**V.     THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS
FOR INTENTIONAL FRAUDULENT CONVEYANCE**

In response to MobileFuse's motion to dismiss the original Complaint, the Trustee now tries to assert claims for intentional fraudulent transfers.  *See* FAC, Counts III, IV, VI and VIII. As set forth below, the intentional fraudulent transfer claims should be dismissed because the Trustee fail to allege facts with sufficient particularity to plausibly establish the requisite fraudulent intent on the part of the debtor.

Pursuant to § 548(a)(1)(A), a bankruptcy trustee may avoid transfers made "on or within 2 years before the date of the filing of the petition" only where such transfers were made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted."  "To survive dismissal, the [Trustee] must plead facts sufficient to support a plausible inference of fraudulent intent.  Section 548(a)(1)(A) requires a showing that (i) the transfers occurred within two years of the petition date, and (ii) the *debtors* made the transfers with the requisite fraudulent intent." *In re Pack Liquidating, LLC*, 2025 WL 2587577, *6 (Bankr.D.Del. 2025).  Furthermore, pursuant to Fed. R. Civ. P. 9(b), intentional fraudulent transfer claims "must" be pled "with particularity." The

purpose of this heightened pleading requirement is to protect defendants from meritless accusations and provide detailed notice of the alleged fraud. *See, e.g., Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).

In determining the sufficiency of intentional fraudulent transfer claims, courts require specific factual allegations showing the debtor's actual intent to defraud creditors, not merely conclusory statements. *See In re Adler*, 372 B.R. 572, 581 (Bankr.E.D.N.Y 2007). Thus, courts have routinely dismissed complaints containing only "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. For example, in *Adler*, the court dismissed intentional fraudulent transfer claims where the trustee made "conclusory statements that the Debtor and [his wife] acted with the actual intent to hinder, delay, or defraud creditors without anything more" and failed to set forth facts with particularity to support those claims. *Adler*, 372 B.R. at 581 (dismissing fraudulent transfer claims where the trustee made only conclusory statements about fraudulent intent without supporting facts). *See also Pack Liquidating*, *LLC*, 2025 WL 2587577 at *7 (dismissing intentional fraudulent transfer claims where complaint made "no allegation about any specific communication, board deliberations, or factual circumstances that would support an inference of fraudulent intent" and consisted of "generalized assertions" and conclusory allegations that "do not meet the heightened pleading requirement that fraud be pled with particularity").

In the present case, the Trustee merely alleges in conclusory fashion that the challenged transfers were made "with the actual intent to hinder, delay, or defraud their present and future creditors." *See, e.g.,* FAC, ¶ 92, 97, 103. The Trustee then essentially alleges that the Near Insiders paid $2 Million of their own funds in order to acquire a 10% ownership interest in MobileFuse (through an entity that they owned) and then allegedly transferred over $25 Million in alleged

23

payments from Near to MobileFuse in order to get the benefit of a single $303,927.70 member distribution from MobileFuse, before then relinquishing their ownership interest in MobileFuse. These allegations make no logical sense and simply fail to state a "plausible" claim for fraud with the particularity required under Fed. R. Civ. P. 9(b).

Why would the Near Insiders pay $2 Million of their own money and transfer $25 Million from their company (Near) to MobileFuse in order to obtain a one-time member distribution of $303,927.70 from MobileFuse, only to then relinquish their ownership interest in MobileFuse altogether?  Further, because the Near Insiders relinquished their ownership interest in MobileFuse by at least July 2023 (FAC, ¶ 59), many of the challenged transactions, including the alleged "Dues Settlement Agreement," occurred at a time when the Near Insiders had no ownership interest in MobileFuse.  Thus, the Trustee's allegations do not satisfy the heightened pleading requirements under Fed. R. Civ. P. 9(b) and simply fail to set forth a plausible basis for establishing fraudulent intent.

Additionally, based on the allegations in the FAC, the alleged transfers between Near and MobileFuse resulted in a net payment *from* MobileFuse *to* Near in the amount of $5.83 Million (FAC, ¶ 58) and, thus, a net benefit to Near.  As a result, the Trustee has not plausibly alleged that any creditor of Near was defrauded by this alleged conduct.  Accordingly, the Trustee has failed to allege actual fraud with the particularity required under Fed. R. Civ. P. 9(b) and has not alleged a plausible claim of fraud.

Finally, the issue with respect to an intentional fraudulent transfer claim is whether the *debtor* had the requisite fraudulent intent.  The Trustee, however, does not allege with particularly that any of the relevant transferors–*i.e.*, the specific entity that allegedly made each of the challenged transfers set forth in Table 1 at ¶ 42 of the FAC–had the requisite fraudulent intent.

24

*See, e.g., Pack Liquidating*, *LLC*, 2025 WL 2587577 at *7 ("[T]he complaint makes no allegation about any specific communication, board deliberations, or factual circumstances that would support an inference of fraudulent intent.  Such conclusory allegations do not meet the heightened pleading requirement that fraud be pled with particularity.").

Because the Trustee has not plausibly alleged—with particularity—that each of the specific transferors of the challenged transfers acted with the requisite fraudulent intent to hinder, delay or defraud any creditors—and, therefore, failed meet the heightened pleading requirements under Fed. R. Civ. P. 9(b)—each  of the Trustee's purported claims for intentional fraudulent transfers must be dismissed.

**VI.     THE PURPORTED FRAUDULENT CONVEYANCE CLAIMS
ARE TIME BARRED TO THE EXTENT THAT THEY ARE BASED
ON ALLEGED TRANSFERS MADE PRIOR TO DECEMBER 8, 2021**

The Trustee's claims for intentional and constructive fraudulent transfer claims are time barred to the extent that they are based on alleged transfers prior to December 8, 2021.

A defendant may raise the statute of limitations on a motion to dismiss where "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994); *see also Bethel v. Jendoco Const. Corp.*,  570 F.2d 1168, 1174 (3d Cir. 1978) (noting that statute of limitations defense may be raised in a Fed R. Civ. P. 12(b)(6) motion where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations").

Pursuant to § 548(a)(1), fraudulent transfer claims must be based on transfer made "on or within 2 years before the date of the filing of the petition."  In this case, the Petition was filed on December 8, 2023.  FAC, ¶ 10.  The FAC further confirms that the Trustee's fraudulent transfer

25

claims are based on multiple alleged transfers that were made prior to December 8, 2021 and that are now time barred.  *See* FAC, ¶ 42, Table 1 (indicating that $7,644,409 in alleged transfers occurred prior to December 8, 2021).  Accordingly, the Trustee's purported fraudulent transfer claims should be dismissed to the extent they are based on alleged transfers that were made prior to December 8, 2021.

**VII.   THE FAC FAILS TO ADEQUATELY ALLEGE CLAIMS PURSUANT TO 11 U.S.C. § 544(B)(1)**

As set forth above, because the Trustee has failed to adequately allege intentional or constructive fraudulent transfer claims, the Trustee's purported fraudulent transfer claims pursuant to § 544(b)(1) should be dismissed.  Those claims should be dismissed for the additional reason that they are not based on the appropriate and the applicable state law.

The elements of a fraudulent transfer claim under § 544(b)(1) include: (1) a transfer made by the debtor, (2) without receiving reasonably equivalent value, (3) causing insolvency or financial harm to the debtor, and (4) applicable state law providing the basis for avoidance.  Such claims are subject to dismissal where the Trustee fails to identify the applicable state law that serves as the basis for the claim.  *See In re CLK Energy Partners, LLC,* 2010 WL 1930065, *4 (Bankr. W.D.La. 2010) (dismissing fraudulent transfer claim for failure to identify non-bankruptcy law upon which § 544(b) claim was based); *In re Aphton Corp.,* 423 B.R. 76, 87-88 (Bankr.D.Del. 2010) (dismissing fraudulent transfer claim referring only generally to the UFTA).

As indicated above, any disputes arising out of the contracts for services provided by MobileFuse to Near are governed by New York law.  Nevertheless, the Trustee cites to provisions of the Delaware Chancery Law, rather than the applicable New York law, in support of its purported § 544(b)(1) claims.  Accordingly, the Trustee has failed to identify the appropriate and applicable state law, and its § 544(b)(1) claims should therefore be dismissed.

## VIII.   THE FAC FAILS TO STATE A CLAIM
## FOR EQUITABLE SUBORDINATION

The FAC also fails to plausibly allege claims for equitable subordination.  Pursuant to Counts XII and XIII of the FAC, the Trustee seeks to object to and equitably subordinate MobileFuse's nonpriority scheduled claim in the Near bankruptcy based on MobileFuse's alleged conduct in the remainder of its claims.  As set forth below, because the FAC fails to allege facts sufficient to support a reasonable inference that MobileFuse engaged in inequitable conduct with respect to Near, the Trustee's equitable subordination claims must be dismissed. *See In re Zohar III Corp.*, 620 F.Supp.3d 147, 152 (D. Del. 2022) *appeal dismissed* 2022 WL 19038638 (3rd Cir. 2022) (there must be plausible allegations of "unfair conduct").

Section 510(c) authorizes the Court to subordinate all or part of an allowed claim due to inequitable conduct committed by a creditor that may have harmed the bankruptcy estate.  To equitably subordinate a claim, three requirements must be established: (1) the claimant engaged in some type of inequitable conduct; (2) the misconduct resulted in injury to other creditors and conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim is not inconsistent with the provisions of the Bankruptcy Code. *Citicorp Venture Capital Corp. v. Committee of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-87 (3d Cir. 1998) (citation omitted).

Equitable subordination is "an extraordinary remedy which is applied sparingly." *In re Epic Capital Corp.,* 307 B.R. 767, 773 (D. Del. 2004); *In re HH Liquidation, LLC*, 590 B.R. 211, 298 (Bankr. D. Del. 2018) (same).  A necessary element of equitable subordination is inequitable conduct by the claimant. *In re Winstar Commc'ns*, 554 F.3d 382, 411-12 (3d Cir. 2009).  Where the claimant is a non-insider like MobileFuse, the plaintiff "must generally allege gross

27

misconduct." *Zohar*, 620 F.Supp.3d at 152.  Because the FAC fails to allege gross misconduct with respect to MobileFuse, the claim for equitable subordination should be dismissed.

In support of its claims for equitable subordination, the Trustee incorporates its allegations from the prior claims in the FAC and then simply alleges in conclusory fashion that MobileFuse engaged in "inequitable conduct" that purportedly injured Near and its creditors.  As set forth above, however, the allegations in the FAC establish that it was Near and the Near Insiders that orchestrated and implemented the alleged inequitable conduct.  Additionally, the Trustee has failed to state a valid cause of action in each of the others claims in the FAC that serve as the purported basis for the equitable subordination claims.  Instead, the FAC indicates that the amount of MobileFuse's payments to Near exceeded the amount of Near's payments to MobileFuse, resulting in a net payment or benefit to Near.  Under these circumstances, the Trustee's prior, insufficient claims cannot serve as the basis for the Trustee's equitable subordination claims.  Accordingly, the Trustee has failed to allege facts sufficient to establish a plausible claim for equitable subordination against MobileFuse.

## <u>RESERVATION OF RIGHTS</u>

Pursuant to Local Bankr. R. 7012-1, MobileFuse does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  MobileFuse reserves all rights and defenses to the FAC and makes no waiver, implicit or otherwise, by its assertions herein.  In particular, MobileFuse reserves all rights to assert defenses pursuant to Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12 and all affirmative defenses.

## CONCLUSION

As set forth above, because the FAC expressly alleges that the Debtor perpetrated the alleged wrongful conduct, the Trustee is barred under the *in pari delicto* doctrine and the *Wagoner* rule from asserting its purported claims against MobileFuse.  Furthermore, because the Trustee has failed to allege facts sufficient to establish any plausible claim against MobileFuse, each of the claims asserted against MobileFuse is independently subject to dismissal.  Accordingly, the FAC should be dismissed in its entirety.

Dated:  December 16, 2025                       **THE ROSNER LAW GROUP LLC**

*/s/ Frederick B. Rosner*
Frederick B. Rosner (DE #3995)
824 Market Street, Suite 810
Wilmington, Delaware 19801
Telephone:  (302) 777-1111
rosner@teamrosner.com

**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
Kevin Schlosser, Esq.
Robert F. Regan, Esq.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
(516) 741-6565
kschlosser@msek.com
rregan@msek.com

*Counsel to the Defendant MobileFuse, LLC*

29