# Exhibit B

**SERVICES AGREEMENT**

This Services Agreement (the "**Agreement**") has been entered into on this 1st day of January, 2020 (the "**Effective Date**") by and between:

**MobileFuse, LLC,** including itself and all its affiliates, having its office address at 25 East, 21st Street, 10th Floor, New York, NY 10010 (hereinafter referred to as the "**Company**", which expression shall, unless contrary to the context or meaning thereof, be deemed to mean and include its successors in interest and permitted assigns) of the **One Part**;

**AND**

**Near Pte. Ltd.**, a company incorporated under the laws of Singapore, having its office at 3 Temasek Avenue, Level 18-01, Centennial Tower, Singapore 039190 (hereinafter referred to as the "**Customer**", which expression shall, unless repugnant to the context and meaning thereof, be deemed to mean and include its successors in interest and permitted assigns) of the **Other Part**.

The Company and the Customer shall be referred to herein as a "**Party**" and jointly referred to as the "**Parties**".

**WHEREAS:**

A.      The Company carries on the business of providing its customers with media exchange, publisher and inventory management, marketing and creative services.

B.      The Customer has demonstrated its interest and the Company has agreed to provide the Services (*defined below*) in accordance with the terms and conditions set out in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual agreements, covenants, representations and warranties set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Parties, the Parties hereby agree as follows:

## 1      DEFINITIONS

1.1.    The following definitions apply to this Agreement:

1.1.1.   "**Affiliate**" of either Party shall mean a person or entity, directly or indirectly, controlling, controlled by, or under common control with such Party;

1.1.2.   "**Control**" means the right to appoint the majority of the directors or to control the management or policy decisions exercisable by a person or persons acting individually or in concert, directly or indirectly, including by virtue of their shareholding or management rights or shareholders' agreements or voting agreements or in any other manner and "**Change of Control**" shall mean a change in such Control;

1.1.3.   "**Confidential Information**" means without limitation, all information pertaining to the

1

business of the Company or the Customer, as the case may be, their clients and business partners including, but not limited to, product invention, ideas, trade secrets, know-how, research and development, training, software, programs, hardware configuration information, price lists, data, manuals, handbooks, sponsors, investors, business strategies and plans, marketing, sales records, drawings, specifications, designs, materials, parts lists, customer lists, consumer information, suppliers, contract terms, test criteria, vendor lists, financial information, publisher information, intellectual property, and all other information or data of any kind or character relating to the business of the Company and/or the Customer, including but not limited to, any invention, writing, idea, discovery, or improvement made or conceived by the Company and/or the Customer directly or indirectly as a result of performing work pursuant to this Agreement, whether or not reduced to writing, and which is not generally available to the public. Confidential Information shall also include the deliverables created by the Company for the Customer under this Agreement;

1.1.4.  "**Services**" means media exchange, publisher and inventory management, marketing and creative services and shall include such other services as may be added thereto from time to time by mutual agreement in writing between the Parties by way of an amendment to this Agreement;

1.1.5.  "**Term**" shall have the meaning as set out in Clause 9.1.

## 2.      EXCLUSIVITY

2.1.    Both Parties agree that the Customer has engaged the Company on a non-exclusive basis for the performance of the Services.

## 3.      PAYMENTS

3.1.    The Customer shall pay the Company, charges at the rates and in the manner and at the time specified and additionally as agreed from time to time ("**Fee**"). Both Parties agree that the Company is using the Customer's platform for delivering revenues to its clients and customers. The Fees will be:

- 60% of spending on the Customer's platform against publisher and inventory management services
- 30% of spending on the Customer's platform against creative services and ad operations

3.2.    Both Parties will work in good faith to share the reconciliations and agree on the final amount to be settled under this arrangement.

3.3.    The Company will invoice the Customer, in arrears, for Fees hereunder on a monthly basis for the prior months' Services. All payments shall be made in full in United States Dollars ("**USD**") only within sixty (60) days of the previous month end. The Customer shall not deduct any service charges or offset any disputed amounts from any payments to be made to the Company hereunder, except for deduction of withholding tax as required under applicable laws.

3.4. Each Party will be responsible for the payment of income tax on the business conducted by it. Customer agrees that it shall be solely responsible for paying all applicable taxes which may be levied or assessed in connection with the Services provided under this Agreement, including but not limited to goods and service tax, sales, use, value added, employment or other direct or indirect taxes and their equivalents, in addition to other charges such as duties, customs, tariffs, imposts, and government imposed surcharges.

**4.      INTELLECTUAL PROPERTY RIGHTS**

4.1. All deliverables and Services, and all rights contained therein, shall be the property of the Company. Notwithstanding anything to the contrary, all rights in tools, software, equipment, documentation, websites and materials used or developed by the Company during the course of performance or delivery of the Services and/or deliverables shall transfer to the Customer and no rights in these shall be deemed to be retained by the Company under any circumstances.

**5.      CONFIDENTIALITY**

5.1. During the Term of this Agreement, each Party may be exposed to the Confidential Information relating to the other Party, their clients and their business partners. Each Party agrees to neither use nor disclose such Confidential Information without the prior written consent of the other Party. Notwithstanding the above, the Parties may disclose Confidential Information to its directors, officers, employees, contractors or advisors ("**Representatives**") only on a need to know basis in order to fulfill the Parties' obligations under this Agreement. The Parties shall ensure that such Representatives are bound by confidentiality obligations as restrictive as the terms of this Agreement. Each Party shall be held liable for the breach of this Clause by any of its Representatives. Each Party shall take precautions to protect the intellectual property and Confidential Information of the other Party, its clients and business partners. Neither Party shall be bound to retain as confidential any information which: (i) is or becomes part of the public domain other than by a breach of this Agreement; (ii) is lawfully obtained by it from another person without any restriction as to its use and disclosure; (iii) was known to it prior to disclosure and was documented in writing; or (iv) was independently developed by a Party without using any of the disclosing Party's Confidential Information as directly evidenced by written records. Confidentiality obligations under this Agreement shall survive for three (3) years from expiry/termination of this Agreement. For the avoidance of doubt, each of the Parties agrees that a breach of this Clause 5 shall constitute a material breach of this Agreement.

In the event that a Party or its Representatives are requested or required (by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar legal, judicial or regulatory process or as otherwise required by applicable law or regulation) to disclose any of the other Party's Confidential Information, such receiving Party shall (a) provide the disclosing Party with prompt written notice of such request or requirement (if legally permitted to do so), and (b) cooperate with the disclosing Party so that it may seek a protective order or other appropriate remedy at the disclosing Party's sole cost and expense. In the event that such protective order or other remedy is not obtained, or the disclosing Party waives compliance with the terms and provisions hereof, the receiving Party and its Representatives may disclose only that portion of the Confidential Information that such

3

person is advised by legal counsel is legally required to be disclosed.

5.2.    Upon termination or expiration of this Agreement, the Parties shall return the Confidential Information of the other Party or destroy the same upon written request by the disclosing Party. In the event where Confidential Information is being destroyed, the receiving Party shall certify in writing the fact that it has complied with its obligation herein.

## 6.    INDEMNITY

6.1.    The Customer shall defend, indemnify and hold harmless the Company and keep the Company and all of its employees, officers, consultants, representatives and agents, indemnified against all claims, actions, suits, proceedings, losses, damages, costs and expenses that any or all of them may suffer or incur on account of the Customer's breach of any provision of this Agreement and for infringement by the Customer of any copyright or any other intellectual property rights of the Company.

6.2.    The Company shall defend, indemnify and hold harmless the Customer and keep the Customer and all of its employees, officers, consultants, representatives and agents, indemnified against all claims, actions, suits, proceedings, losses, damages, costs and expenses that any or all of them may suffer or incur on account of the Company's breach of any provision of this Agreement and for infringement by the Company of any copyright or any other intellectual property rights of the Customer.

## 7.    LIMITATION OF LIABILITY

7.1.    The total aggregate liability of the Company to the Customer under or in relation to this Agreement shall be limited to the fees paid by the Customer to the Company in relation to which the claim has arisen, for the preceding three (3) months, which limitation shall be considered cumulatively and not per incident. The Company shall not, under any circumstances, be liable in any manner, under any cause of action, whether in contract, tort, or otherwise, for any loss of profits, revenue, anticipated profits or business, or for any indirect, incidental, consequential, special, punitive, or exemplary damages arising in connection with this Agreement. This liability limitation applies even if the Customer has been advised of the possibility of such damages, and even if the damages were reasonably foreseeable.

7.2.    The total aggregate liability of the Customer to the Company under or in relation to this Agreement shall be limited to the fees paid by the Company to the Customer in relation to which the claim has arisen, for the preceding three (3) months, which limitation shall be considered cumulatively and not per incident. The Customer shall not, under any circumstances, be liable in any manner, under any cause of action, whether in contract, tort, or otherwise, for any loss of profits, revenue, anticipated profits or business, or for any indirect, incidental, consequential, special, punitive, or exemplary damages arising in connection with this Agreement. This liability limitation applies even if the Company has been advised of the possibility of such damages, and even if the damages were reasonably foreseeable.

**8.     REPRESENTATIONS AND WARRANTIES**

8.1.    Each Party hereby represents and warrants that:

    8.1.1.   it is a legally incorporated entity in accordance with applicable laws;

    8.1.2.   it has obtained all necessary internal as well as governmental and statutory licenses and approvals necessary for the execution of this Agreement and the conduct of its business; and

    8.1.3.   there are no pending or threatened legal proceedings against it before any judicial or quasi-judicial forum whatsoever and further that there are no existing or proposed contracts and/or agreements that could affect its performance hereunder.

8.2.    EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, ALL WARRANTIES, REPRESENTATIONS AND UNDERTAKINGS WHATSOEVER CONCERNING THE SERVICES AND/OR DELIVERABLES, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, TITLE, NON-INFRINGEMENT, QUIET ENJOYMENT, SATISFACTORY QUALITY, ACCURACY, RELIABILITY OR COMPLETENESS ARE HEREBY EXCLUDED BY THE COMPANY TO THE FULLEST EXTENT PERMISSIBLE UNDER THE APPLICABLE LAWS.

**9.     TERM AND TERMINATION**

9.1.    This Agreement shall be coterminous with the Allspark Usage Agreement dated 1st January, 2020 between the Customer and the Company ("**Allspark Usage Agreement**") to ensure that this Agreement shall have the same term and termination provisions as the Allspark Usage Agreement.

**10.    MISCELLANEOUS**

10.1.   The Parties are independent contractors, and this Agreement does not create an agency, employment, partnership or joint venture relationship between the Parties.

10.2.   Neither this Agreement nor any of the rights and obligations created hereunder shall be assigned by either Party without the prior written permission of the other Party.

10.3.   **Governing Law and Dispute Resolution.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the principles of conflict of laws that would defer to the substantial laws of any other jurisdiction. The Parties hereby irrevocably consent and submit to the exclusive jurisdiction of any state court located in New York County in the State of New York or the United States District Court for the Southern District of New York located in New York County in the State of New York in connection with any dispute arising out of or relating to this Agreement.

10.4.   Either Party's failure to exercise any of its rights under this Agreement shall not constitute or

be deemed to constitute a waiver or forfeiture of such rights.

10.5.    Clauses 4 (*Intellectual Property Rights*), 5 (*Confidentiality*), 6 (*Indemnity*), 7 (*Limitation of Liability*) and 10.3 (*Governing Law and Dispute Resolution*) shall survive the expiration or termination of this Agreement.

10.6.    This Agreement is the entire agreement and understanding between the Parties and supersedes all previous negotiations, representations by either Party on the subject matter thereof. No alteration or amendment thereto shall be valid and binding upon them unless the same has been agreed and signed by both the Parties.

10.7.    This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.8.    All exhibits attached to this Agreement are integral parts of this Agreement and are incorporated into this Agreement by this reference.

**THE REMAINDER OF THIS PAGE HAS BEEN LEFT BLANK**

**IN WITNESS WHEREOF,** the authorized representatives of the Parties have affixed their signatures on the date of their respective signatures as specified below.

| FOR AND ON BEHALF OF COMPANY | FOR AND ON BEHALF OF CUSTOMER |
|---|---|

| | | | |
|---|---|---|---|
| **Signature:** | | **Signature:** | |
| **Name:** | **Kenneth Harlan** | **Name:** | Anil Mathews |
| **Title:** | **Founder & CEO** | **Title:** | Founder & CEO |
| **Date:** | **March 24, 2020** | **Date:** | March 24, 2020 |

*[Signature Page to MobileFuse, LLC Services Agreement]*