# Exhibit C

**REAL TIME BIDDING BUYER AGREEMENT**

THIS REAL TIME BIDDING BUYER AGREEMENT ("**Agreement**") is entered into as of the date that is the later of the two signature dates below ("**Effective Date**") by and between MobileFuse LLC, with place of business located at PO Box 37 Stirling, NJ 07980 ("**MFX**") and the entity listed below including its affiliates and assignes as signatory ("**Buyer**"). The parties agree as of the Effective Date to the following terms and conditions:

1.    **Services.**  Buyer hereby retains MFX to purchase impression inventory delivered for auction through MFX's online advertising exchange, MFX (the "**Services**").

2.    **Term and Termination.**  The term of this Agreement shall be for two (2) years commencing upon the Effective Date (the "**Initial Term**"), and shall then automatically renew for 12 month period unless either party gives a notice of intent not to renew at least thirty (30) days prior to the expiration of the then current term (each, a "**Renewal Term**" and together with the Initial Term, the "**Term**").

Either party may terminate this Agreement immediately if: (a) the other party commits a material breach of its obligations hereunder that is not cured within ten (10) days after written notice thereof from the non-breaching party; or (b) a petition in bankruptcy or other insolvency proceeding is filed by or against the other party, or if an application is made for the appointment of a receiver for the other party of its property, or if the other party makes an assignment for the benefit of creditors, is unable to pay its debts regularly as they become due, or ceases carrying on business in the ordinary course.

Any expiration or termination will be without any liability or obligation of the terminating party, other than with respect to any breach of the Agreement or obligations accrued prior to termination or as provided herein. Upon expiration or termination: (i) the parties will immediately cease representing to the public any affiliation between them in connection with the subject matter of this Agreement; (ii) return or destroy all Confidential Information and other materials belonging to such other party; (iii) all licenses and rights granted by one party to the other hereunder will terminate. Any Confidential Information that is not returned or destroyed, including, without limitation, any oral Confidential Information, shall remain subject to the confidentiality obligations in this Agreement for one (1) year thereafter; and (iv) any ads sold prior to such termination or expiration will continue to be served for their remaining duration (subject to the terms of this Agreement).

3.    **Fees.**  MFX runs an auction where: (a) bids are submitted on a CPM basis; (b) a bidder can win the auction only if the bid is above any applicable reserve price; and (c) the close price paid by Buyer for the cost of media is no higher than the highest bid. The price invoiced for each impression will be based on the auction closing price as recorded and reported in MFX. Buyer will be billed on one statement for media and fees, excluding any third party data fees which will be billed separately. Billing and invoices will be solely based off of MFX numbers and reports, unless Buyer determines any discrepancy on the MFX numbers and reports, in which case the discrepancy will be resolved in good faith by mutual discussion between the Parties. Parties agree that the Buyer will spend minimum USD 1,166,667 every month on MFX's online advertising exchange.

4.    **Payment Terms.**  MFX will invoice Buyer at the end of each month of activity. Buyer will remit payment within ninety (90) days after the end of the applicable month's activity. If an invoice is not paid within such one-hundred twenty (120) days period, Buyer agrees to pay interest on the overdue balance at the rate of zero point five percent (0.5%) per month or the maximum allowed by law, whichever is lower, for each month in which the balance remains unpaid.  All payments shall be made in U.S. Dollars.  Buyer must notify MFX in writing of any dispute regarding charges and costs (including for charges based on impressions generated from non-human traffic) within thirty (30) days after the end of the applicable month.  If Buyer fails to notify MFX of any such dispute within this timeframe, Buyer waives any dispute right and such charges and costs are deemed to be final.

Buyer may deduct from such payment any withholding, sales, value added, and other applicable taxes (other than its net income taxes) which Buyer is required by law to deduct.  Each party is responsible for paying any other taxes, duties, or fees for which such party is legally responsible.

**5.    License; Data.**  Buyer agrees that MFX owns and retains all right, title, and interest in and to MFX, all software, databases, and other aspects and technologies related to MFX, any enhancements, modifications, or derivative works thereto, any materials made accessible to Buyer by MFX through its platforms, such as through the user interfaces or otherwise, and all Intellectual Property Rights (hereinafter defined) in and to all of the foregoing.  Subject to the terms and conditions of this Agreement, MFX grants to Buyer, and Buyer accepts, during the Term, the limited, non-exclusive, non-transferable, non-assignable, revocable right and license to use MFX solely in connection with activities relating to this Agreement. MFX is licensed to Buyer and not sold. Buyer may only use MFX in accordance with the limited rights expressly granted in this Agreement. All rights not expressly granted herein are reserved by MFX. Buyer must use the MFX platform only in accordance with instructions provided by MFX and MFX's standard security procedures, as communicated to Buyer by MFX in writing.  "**Intellectual Property Rights**" means: (a) any and all proprietary rights provided under, (i) patent law, (ii) copyright law, (iii) trademark law, (iv) design patent or industrial design law, or (v) any other statutory provision or common law principle applicable to this Agreement, including trade dress and trade secret law, which may provide a right in either ideas, formulae, algorithms, concepts, inventions or know-how generally, or the expression or use of such ideas, formulae, algorithms, concepts, inventions or know-how; and (b) any and all applications, registrations, licenses, sub-licenses, franchises, agreements or any other evidence of a right in any of the foregoing.

Buyer shall not (and will not allow any third party to): (1) copy or duplicate MFX or Services; (2) reverse engineer, decompile, disassemble, or otherwise attempt to discover the source code, object code, or underlying structure, ideas, or algorithms of MFX; (3) modify (except as permitted under this Agreement), translate, or create derivative works based on MFX; (4) rent, lease, distribute, sublicense, resell, pledge, assign, or otherwise transfer or encumber rights to MFX; or (5) remove or otherwise alter any proprietary notices or labels from MFX or any portion thereof.  Furthermore, Buyer shall not resell any inventory on any exchange or in any manner not specifically authorized by MFX.

Buyer hereby grants MFX, for the Term, a limited, non-exclusive, non-transferable, non-assignable, revocable right and license to store, use, serve, reproduce, and display Buyer's advertisements (and any material associated with Buyer's advertisements, including the ad tags) ("**Buyer Data**") and Buyer's trademarks in connection with MFX's performance of its obligations and exercise of its rights hereunder.  MFX's usage of Buyer's trademarks and Buyer Data will comply with Buyer's usage guidelines provided to MFX in writing.  Buyer retains all right, title, and interest (including all Intellectual Property Rights) in and to Buyer's trademarks and Buyer Data.  MFX's rights in and to Buyer's trademarks and Buyer Data are limited solely to those rights expressly granted herein and all rights not expressly granted herein are reserved by Buyer.

MFX shall provide access to Buyer to the MFX Buyer UI where Buyer can access reports pertaining to the Services provided per this Agreement.

For the purposes of this Agreement, **"Client"** means the Buyer's customer using the Buyer's services on behalf of whom, the Buyer uses MFX to serve advertisements.

Each of Buyer and MFX will own the Interaction Data that it collects.  "**Interaction Data**" means data collected solely from and relating to a web/app user's interaction with advertisements sold and delivered as part of the inventory, excluding any information that directly or indirectly connects such data to the applicable website/application or its brand, content and context.  For greater certainty, Interaction Data stops at advertiser's website/application (i.e. once a web/app user has clicked an advertiser's advertisement and reached the advertiser's website/application, any data tracked or collected thereafter is proprietary to, and can be used by, the advertiser in its sole discretion, and this data is not part of the Interaction Data).  Any other use of data, the data was obtained with proper user consent, following all applicable privacy laws.

Either party shall have the right to use all Interaction Data collected by itself pursuant to this Agreement: (A) to perform its obligations under this Agreement; (B) to optimize and improve its services; and (C) for analytics and general reporting purposes.  To the extent any portion of the Interaction Data is owned by a party, it grants to the other

party a perpetual, non-exclusive, royalty-free license to use any such data for the purposes set forth in the immediately preceding sentence.

**6.     Ad Quality.**  Buyer represents and warrants that it shall not display or offer any ads or content on MFX that: (a)     contain, promote or have links to any sexually explicit materials, hate material, defamatory materials, materials promoting violence or discrimination based on race, sex, religion, nationality, disability, sexual orientation, age or family status; (b) promote or reference any software piracy systems (warez, cracking, etc.), hacking, phreaking, emulators, ROM's, or illegal MP3 activity; (c) promote any illegal activities, deceptive practices, violations or infringements of the Intellectual Property Rights of others; (d) promote activities generally understood as Internet abuse, including but not limited to, the sending of unsolicited bulk electronic mail or the use of Spyware Programs; (e) infringe or violate a third party's rights, including but not limited to intellectual property and privacy rights; or (f) other violations of standard publisher policies.  Buyer will cure any violation of the above as soon as reasonably practicable upon receipt of written notice of aforementioned violation. Ads in violation of the abovementioned ad quality are subject to immediate removal from MFX at MFX's sole discretion.

**7.     No Guarantee.**  To the fullest extent permitted by law, MFX disclaims all guarantees regarding positioning, levels, quality, or timing of: (a) costs per click; (b) click through rates; (c) availability and delivery of any impressions; (d) clicks; (e) conversions or other results for any ads; (f) the accuracy of its affiliates' data (e.g. reach, size of audience, demographics or other purported characteristics of audience); and (g) the adjacency or placement of ads within the advertising networks used by MFX.

**8.     Confidentiality.**  Each party agrees not to disclose the Confidential Information of the other party without such party's prior written consent. "**Confidential Information**" of each party includes without limitation all information disclosed which is designated as confidential or would otherwise be reasonably considered confidential or proprietary under the circumstances. Confidential Information does not include information that: (a) is or becomes publicly available through no fault of the recipient; (b) is independently developed by the recipient without use of the disclosing party's Confidential Information; (c) becomes available to the recipient on a non-confidential basis from a source other than the disclosing party, provided that such source is not bound by a confidentiality agreement, confidentiality obligation or fiduciary duty which prohibits disclosure and the recipient has no reason to believe that such source may be restricted from making such disclosure; or (d) required to be disclosed by law or by a governmental authority, provided that each party agrees, to the extent legally permissible, to notify the other party upon the issuance of any such order, and to cooperate in its efforts to convince the court or administrative body to restrict disclosure.

**9.     Representations and Warranties.**

a.     Mutual Representations and Warranties. Each party represents and warrants to the other that: (i) it has the full right, power, and authority to enter into this Agreement; (ii) the execution of this Agreement and performance of its obligations under this Agreement do not and will not violate any other agreement to which it is a party; and (iii) this Agreement constitutes a legal, valid and binding obligation when executed and delivered.

b.     MFX Representations and Warranties. MFX represents and warrants that it: (i) has all necessary licenses and clearances to use and permit Buyer to use MFX; and (ii) will comply with all applicable laws, rules, regulations and applicable industry self-regulatory guidelines relevant to the performance of its obligations under this Agreement; (iii) performance of MFX's obligations under this Agreement will not in any way violate any Intellectual Property Right or other proprietary or privacy right of any third party.

c.     Buyer Representations and Warranties. Buyer represents and warrants that: (i) it owns or has the rights to all content, products, and services to perform its obligations herein; (ii) it will conduct its business and fulfill its obligations under this Agreement in compliance with all applicable laws, rules, regulations and industry self-regulatory guidelines; (iii) the materials (including any advertising) provided by Buyer under this Agreement (other than any materials provided by MFX) will not in any way (i) violate any applicable law, rule, or regulation; (ii) promote violence, the use of firearms, gambling, online casinos, tobacco, alcohol, or unlawful subject matter or activities; (iii) violate any intellectual property right or other proprietary or privacy right of any third party; (iv) be defamatory,

libelous, abusive, harassing, offensive, deceptive, obscene, pornographic or sexually explicit; or (v) contain, link to, use or otherwise cause the downloading of any malicious code.

10.   **Warranty Disclaimers.**  OTHER THAN AS CONTAINED IN THE AGREEMENT HEREIN, MFX MAKES NO WARRANTIES, REPRESENTATIONS, OR COVENANTS OF ANY KIND TO ANY PERSON WITH RESPECT TO MFX, USE THEREOF, ANY AD OR DATA CONTAINED THEREIN, OR ANY OTHER MATTERS, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NONINFRINGEMENT. MFX DOES NOT MAKE ANY WARRANTIES OR REPRESENTATIONS REGARDING THE BENEFIT THAT BUYER WILL OBTAIN FROM USE OF MFX, OR THAT ITS PLATFORM WILL BE ERROR-FREE, ALWAYS AVAILABLE, OPERATE SECURELY, OR OPERATE WITHOUT LOSS OR CORRUPTION OF DATA OR TECHNICAL MALFUNCTION.  THIS SECTION SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THE AGREEMENT. OTHER THAN AS CONTAINED IN THE AGREEMENT HEREIN, BUYER MAKES NO WARRANTIES, REPRESENTATIONS, OR COVENANTS OF ANY KIND TO ANY PERSON WITH RESPECT TO BUYER DATA.

11.   **Limitation of Liability.** NEITHER PARTY SHALL BE LIABLE FOR ANY CONSEQUENTIAL, SPECIAL, INDIRECT, INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES, WHETHER IN CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL EITHER PARTY'S LIABILITY HEREUNDER EXCEED THE LESSER OF EITHER $50,000 USD OR THE AMOUNT OF FEES ACTUALLY PAID TO MFX BY BUYER DURING THE SIX (6) MONTH PERIOD PRIOR TO THE TIME SUCH LIABILITY AROSE UNDER THIS AGREEMENT.

12.   **Indemnification.**  Both parties will indemnify, defend, release and hold harmless the other party, and its employees, directors, officers, agents from and against any and all claims, actions, suits, damages, losses, expenses, and costs, including reasonable outside attorney's fees, arising in connection with or related to: (a) MFX's breach of the representations and warranties provided under this Agreement; (b) any other act or omission resulting into a breach of applicable laws by MFX; or (c) MFX's breach of its obligations under Section 13 or any non-compliance with its obligations under Applicable Data Protection Law (*hereinafter defined*).

13.   **Data Protection.**

a.   Definitions.  In this Section, the following terms shall have the following meanings:

"**controller**", "**processor**", "**data subject**", "**personal data**", "**processing**" (and "**process**") and "**special categories of personal data**" shall have the meanings given in Applicable Data Protection Law;

"**Applicable Data Protection Law**" means any and all applicable privacy and data protection laws (including, where applicable, EU Data Protection Law and the California Consumer Privacy Act of 2018) as may be amended or superseded from time to time; and

"**EU Data Protection Law**" means (i) the EU General Data Protection Regulation (Regulation 2016/679); (ii) the EU e-Privacy Directive (Directive 2002/58/EC); (iii) EU Network and Information Systems Directive (Directive (EU) 2016/1148); and (iv) any national data protection laws made under or pursuant to (i), (ii) or (iii).

b.   Purpose of Processing.  MFX may disclose the personal data described in the Agreement (the "**Data**") to Buyer.

c.   Relationship of the Parties.  The parties acknowledge that MFX is a controller of the Data it discloses to Buyer, and that Buyer will process the Data as a separate and independent controller.  For the avoidance of doubt, neither party is a processor of the other.

d.   Compliance with Law.  Each party shall be individually and separately responsible for complying with the obligations that apply to it as a controller under Applicable Data Protection Law.  Without limitation to the

foregoing, each party shall maintain a publicly-accessible privacy policy on its website that satisfies the transparency disclosure requirements of Applicable Data Protection Law. Notwithstanding the foregoing, MFX shall be responsible to ensure that appropriate consents as required under Applicable Data Protection Law are collected from data subjects prior to sharing their Data with the Buyer and for the Buyer to serve advertisements to such data subjects by using the Services; and to the extent required by the Buyer, MFX shall procure and share the appropriate consent logs with the Buyer. MFX shall ensure that its publisher partners provide legally compliant notice to the data subjects about how their personal data will be used, including that it will be used for the purpose of serving targeted advertisements on them.

e. <u>Security.</u>  Each party shall implement appropriate technical and organizational measures to protect the Data: (i) from accidental or unlawful destruction; and (ii) loss, alteration, unauthorised disclosure of, or access to the Data (a "**Security Incident**").  In the event that a party suffers a confirmed Security Incident, it shall notify the other party without undue delay and both parties shall cooperate in good faith to agree and action such measures as may be necessary to mitigate or remedy the effects of the Security Incident.

f. <u>Subcontracting.</u>  Each party may appoint third party processors to process Data for the purposes of this Agreement, provided that such processors: (i) agree in writing to process Data in accordance with the party's documented instructions; (ii) implement appropriate technical and organisational security measures to protect the Data against a Security Incident; and (iii) otherwise provide sufficient guarantees that they will process the Data in a manner that will meet the requirements of Applicable Data Protection Law.  Each party accepts responsibility for any breach of this Subsection that is caused by an act, error or omission of a processor it has appointed.

g. <u>International Transfers</u>.  Where EU Data Protection Law applies, neither party shall process any Data (nor permit any Data to be processed) in a territory outside of the European Economic Area ("**EEA**") unless it has taken such measures as are necessary to ensure the transfer is in compliance with EU Data Protection Law.  Such measures may include (without limitation) transferring the Data to a recipient in a country that the European Commission has decided provides adequate protection for personal data, to a recipient that has achieved binding corporate rules authorization in accordance with Applicable Data Protection Law, or to a recipient that has executed standard contractual clauses adopted or approved by the European Commission.

h. <u>Processing.</u>  Neither Buyer nor its agents (including without limitation Buyer's CMP) shall decide, control, amend or restrict the legal bases, purposes or features (including special features) that MFX relies on to process the Data which shall mandatorily include Article 13 and Article 14 of the GDPR.

i. <u>Survival.</u>  This section shall survive the expiration or termination of the Agreement. Upon termination or expiration of the Agreement, Buyer may continue to process the Data provided that such processing complies with the requirements of this Section and Applicable Data Protection Law.

**14.  Force Majeure.**  Except for payment obligations, neither party shall be liable to the other party for any delay or failure in performance under this Agreement arising out of a cause beyond its control and without its fault or negligence.  Such causes may include, but are not limited to fires, floods, earthquakes, strikes, unavailability of necessary utilities, network interruption, blackouts, acts of God, acts of regulatory agencies, or national disasters.

**15.  Publicity.**  MFX may identify Buyer as a partner, in general listings of demand partners that MFX may make available on its website or in promotional or marketing materials.  MFX may issue a press release regarding this Agreement subject to prior review and approval by Buyer, not to unreasonably withheld or delayed, and may disclose Buyer as a demand partner.

**16.  Governing Law and Venue.**  All disputes arising from or relating to this Agreement will be governed by and construed in accordance with the laws of the state of New York, without giving effect to its conflict of laws principles. The parties hereby: (a) agree that any action arising out of this Agreement will be brought in the state or federal courts located in New York City, New York; and (b) irrevocably submit to the exclusive jurisdiction of such courts. In the event that Buyer fails to pay any amounts hereunder, MFX shall be entitled to recover from Buyer all reasonable fees, costs,

and expenses of enforcing such payments, including but not limited to reasonable collection agencies' and attorneys' fees and expenses.

   17. **Miscellaneous.**

    a.   Entire Agreement; Amendments.  This Agreement and any appendices attached hereto set forth the entire understanding of the parties with respect to the subject matter of this Agreement and supersede any prior or contemporaneous agreements or understandings, whether written, electronic, or oral, which may have existed between the parties on such subject matter.  This Agreement may only be modified, or any rights under it waived, by a written document executed by both parties.

    b.   Notice.  All notices required or permitted to be given by a party must be: (a) delivered to the address set forth in the first paragraph above, if to MFX to the attention of the Legal Department, MFX, and if to Buyer, to the person executing this Agreement on such party's behalf, or at such different address as may be designated by such party by written notice to the other party from time to time; (b) in writing; and (c) sent by electronic mail, commercial delivery service or certified mail, return receipt requested.  If mailed, notices will be deemed effective three (3) business days after deposit, postage prepaid.  Email notices will be deemed to have been given upon the next business day following such electronic mail transmission provided no "undeliverable" notice is received.

    c.   Survival.  Any terms of this Agreement that expressly survive termination or expiration, or by their nature ought to survive termination or expiration, will survive, including but not limited to provisions regarding confidentiality, disclaimers, exclusions and limitation of liability, indemnification, effect of termination, controlling law and jurisdiction, notices and other provisions of interpretation and enforcement.

    d.   Assignment.  Neither party may assign this Agreement, or any of its rights or obligations under the Agreement, without prior written consent of the other party, provided, however that either party may assign its rights and obligations to any of its parent, affiliates, or subsidiaries, or to any successor in interest to all or substantially all of its business or assets, or in connection with a corporate reorganization, provided that such successor is not a direct competitor of other party and is fully bound by this Agreement.  Any attempted assignment in derogation of this Section will be null and void.

    e.   Waiver.  A waiver by any party of any breach or covenant shall not be construed to be a waiver of any succeeding breach or any other covenant.

    f.   Severability.  If any portion of this Agreement is determined to be or becomes unenforceable or illegal, such portion shall be deemed eliminated and the remainder of this Agreement shall remain in effect in accordance with its terms as modified by such deletion.

    g.   Independent Contractor.  The relationship between Buyer and MFX (and its personnel or agents) in connection with this Agreement is at all times that of an independent contractor and MFX is not an employee, partner, agent, trustee or joint venturer of, for, or with Buyer. MFX shall not owe any fiduciary or, except to the extent otherwise provided herein, other duties to Buyer.

    h.   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original instrument, and all such counterparts shall together constitute the same agreement. A facsimile signature, electronic signature, or reasonable indication of assent through electronic means shall be recognized with the same force and effect as a handwritten signature.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date by their duly authorized signatures below.

**MFX:**

MOBILEFUSE LLC

Signature: *Ken Harlan*

Printed Name: Ken Harlan

Title: Founder & CEO

Email Notice: ken@mobilefuse.com

**BUYER:**

Signature: *Florica S*

Printed Name: Florica S

Title: Director

Email Notice: fs@cygnify.co

CC to: