**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| **In re:** | **Chapter 11** |
| **NEAR INTELLIGENCE, INC., *et al.*,**[1] | **Case No. 23-11962 (TMH)** |
| **Debtors.** | **(Jointly Administered)** |
| **DRIVETRAIN, LLC, as Plan Administrator and Litigation Trustee of the Near Intelligence, Inc., et al., Litigation Trust,** |  |
|  | **Adversary Proceeding** |
| **Plaintiff,** | **No. 25-52298 (TMH)** |
| **v.** |  |
| **MOBILEFUSE, LLC,** |  |
| **Defendant.** |  |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT AND BRIEF IN SUPPORT**

PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler (DE Bar No. 4142)
Beth E. Levine (*pro hac vice*)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
Wilmington, DE 19899
(302) 652-4100
bsandler@pszjlaw.com
blevine@pszjlaw.com
pkeane@pszjlaw.com

REID COLLINS & TSAI LLP
Eric D. Madden (*pro hac vice*)
Brandon V. Lewis (*pro hac vice*)
Brian J. Bah (*pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX 75201
(214) 420-8900
emadden@reidcollins.com
blewis@reidcollins.com
bbah@reidcollins.com

*Counsel for Plaintiff Drivetrain, LLC, as Plan Administrator and Litigation Trustee of the Near Intelligence, Inc., et al. Litigation Trust*

Dated: January 13, 2026

---

[1] The Debtors in these chapter 11 cases are Near Intelligence, Inc., Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

NATURE AND STAGE OF THE PROCEEDING.............................................................. 2

SUMMARY OF ARGUMENT ........................................................................................... 2

COUNTER-STATEMENT OF FACTS AND OBJECTIONS ........................................... 3

ARGUMENT....................................................................................................................... 6

I.      LEGAL STANDARD............................................................................................... 6

II.     CHOICE OF LAW .................................................................................................. 7

III.    NEITHER *WAGONER* NOR *IN PARI DELICTO* BARS THE TRUSTEE'S CLAIMS..... 11

      A.      *Wagoner* Does Not Apply................................................................................. 11

      B.      *In Pari Delicto* Does Not Bar the Trustee's Claims. ..................................... 13

            1.      *In pari delicto* does not apply to the Statutory Claims............................... 13

            2.      *In pari delicto* does not bar the Common-Law Claims. .............................. 15

IV.     THE COMPLAINT ALLEGES PLAUSIBLE CLAIMS TO AVOID AND
       RECOVER FRAUDULENT TRANSFERS (COUNTS I – VIII). ................................. 17

      A.      The Complaint Sufficiently Alleges the Constructive Fraud Counts...................... 17

            1.      The Complaint sufficiently alleges insolvency............................................. 18

            2.      The Complaint sufficiently alleges lack of reasonably equivalent value. ...... 23

      B.      The Complaint Sufficiently Alleges the Intentional Fraud Counts. ........................ 24

      C.      Counts II, IV, and VIII Identify the Applicable State Law..................................... 26

      D.      The Avoidance Counts Are Timely. ................................................................. 27

V.      THE COMPLAINT ALLEGES PLAUSIBLE CLAIMS FOR BREACH OF
       CONTRACT (COUNTS IX AND X)................................................................... 27

VI.     THE COMPLAINT ALLEGES A PLAUSIBLE CLAIM FOR UNJUST
       ENRICHMENT (COUNT XI)............................................................................ 28

VII.    THE COMPLAINT ALLEGES PLAUSIBLE CLAIMS FOR EQUITABLE
       SUBORDINATION (COUNTS XII AND XIII)................................................... 29

CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

## CASES

*Am. Classic Voyages Co. v. JP Morgan Chase Bank (In re Am. Classic Voyages Co.)*,
   367 B.R. 500 (Bankr. D. Del. 2007) ...................................................................... 20

*Aphton Corp. v. Pasteur (In re Aphton Corp.)*,
   423 B.R. 76 (Bankr. D. Del. 2010) ....................................................................... 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................. 6

*Askanase v. Fatjo*,
   130 F.3d 657 (5th Cir. 1997)................................................................................. 20

*Astropower Liquidating Tr. v. Xantrex Tech., Inc. (In re Astropower Liquidating Tr.)*,
   335 B.R. 309 (Bankr. D. Del. 2005) ....................................................................... 6

*Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*,
   834 F.3d 651 (6th Cir. 2016)................................................................................. 11

*Bechtel v. Robinson*,
   886 F.2d 644 (3d Cir. 1989)................................................................................... 30

*Berg Chilling Sys., Inc. v. Hull Corp.*,
   435 F.3d 455 (3d Cir. 2006).................................................................... 7, 10, 11

*Beskrone v. OpenGate Cap. Grp. (In re PennySaver USA Publ'g, LLC)*,
   587 B.R. 445 (Bankr. D. Del. 2018) .................................................................. 7, 25

*Beskrone v. OpenGate Cap. Grp., LLC (In re PennySaver USA Publ'g, LLC)*,
   602 B.R. 256 (Bankr. D. Del. 2019) ................................................................ 17, 18

*Brandt v. B.A. Cap. Co. (In re Plassein Int'l Corp.)*,
   366 B.R. 318 (Bankr. D. Del. 2007) ..................................................................... 22

*Carickhoff v. Goodwin (In re Decade, S.A.C. LLC)*,
   635 B.R. 735 (Bankr. D. Del. 2021) ....................................................................... 7

*Carickhoff v. Wedbush Secs., Inc. (In re Live Well Fin., Inc.)*,
   652 B.R. 699 (Bankr. D. Del. 2023) ....................................................................... 7

*CarrAmerica Realty Corp. v. Nvidia Corp.*,
   302 F. App'x 514 (9th Cir. 2008)........................................................................... 11

*Century Glove, Inc. v. Iselin (In re Century Glove, Inc.),*
  151 B.R. 327 (Bankr. D. Del. 1993) ................................................................. 30

*Charys Liquidating Tr. v. Growth Mgmt., LLC (In re Charys Holding Co.),*
  2010 WL 2774852 (Bankr. D. Del. July 14, 2010) ........................................... 6

*Cobalt Multifamily Invs. I, LLC v. Shapiro,*
  857 F. Supp. 2d 419 (S.D.N.Y. 2012) ............................................................. 16

*Corzin v. Fordu (In re Fordu),*
  209 B.R. 854 (B.A.P. 6th Cir. 1997) ............................................................... 14

*Cutler Indus., Ltd. v. Bank of Am. (In re David Cutler Indus., Ltd.),*
  502 B.R. 58 (Bankr. E.D. Pa. 2013) ................................................................ 13

*Foman v. Davis,*
  371 U.S. 178 (1962) ........................................................................................ 30

*Forman v. HBK Master Fund L.P. (In re Glenco Acquisition, Inc.),*
  2015 WL 3777972 (Bankr. D. Del. June 16, 2015) ........................................ 18

*Fox v. Picard (In re Madoff),*
  848 F. Supp. 2d 469 (S.D.N.Y. 2012) ............................................................. 12

*Gavin Solmonese, LLC v. Shyamsundar (In re Amcad Holdings, LLC),*
  579 B.R. 33 (Bankr. D. Del. 2017) .................................................................. 21

*Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.),*
  2018 WL 2759301 (Bankr. D. Del. June 6, 2018) .......................................... 21

*Global Link Liquidating Tr. v. Avantel, S.A. (In re Global Link Telecom Corp.),*
  327 B.R. 711 (Bankr. D. Del. 2005) ........................................................... 18, 20

*Golden State TD Invs., LLC v. Andrews Kurth LLP (In re Cal. TD Invs. LLC),*
  489 B.R. 124 (Bankr. C.D. Cal. 2013) ............................................................ 16

*Goldfarb v. Solimine,*
  245 A.3d 570 (N.J. 2021) ................................................................................ 28

*Halperin v. Moreno (In re Green Field Energy Servs., Inc.),*
  2015 WL 5146161 (Bankr. D. Del. Aug. 31, 2015) .................................... 21, 25

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  885 F.2d 1149 (3d Cir. 1989) .......................................................................... 14

*In Re Novartis Pharms. Corp. v. MSN Pharms. Inc.*,
　　2024 WL 4723274 (D. Del. Nov. 8, 2024)................................................................ 28

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*,
　　2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019)................................................... 21

*Klauder v. Echo/RT Holdings, LLC*,
　　152 A.3d 581, 2016 WL 7189917 (Del. Dec. 12, 2016) ........................................ 22

*Kurz v. EMAK Worldwide, Inc.*,
　　464 B.R. 635 (D. Del. 2011) ..................................................................................... 9

*Luster v. Greenhill Cap. Partners II, LLP (In re CLK Energy Partners, LLC)*,
　　2010 WL 1930065 (W.D. La. May 12, 2010) .......................................................... 26

*Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.)*,
　　2019 WL 647027 (Bankr. D. Del. Feb. 15, 2019) ..................................................... 6

*McHale v. Silicon Valley L. Grp.*,
　　2011 WL 6990187 (N.D. Cal. Dec. 14, 2011) ........................................................ 15

*McNamara v. PFS (In re Personal & Bus. Ins. Agency)*,
　　334 F.3d 239 (3d Cir. 2003) .............................................................................. 13, 14

*Michaelson v. Farmer (In re Appleseed's Intermediate Holdings, LLC)*,
　　470 B.R. 289 (D. Del. 2012)..................................................................................... 22

*Miller v. ANConnect LLC (In re Our Alchemy, LLC)*,
　　2019 WL 4447545 (Bankr. D. Del. Sept. 16, 2019).................................................. 7

*Moratzka v. Morris (In re Senior Cottages of Am., LLC)*,
　　482 F.3d 997 (8th Cir. 2007) .................................................................................... 11

*NCP Litig. Tr. v. KPMG LLP*,
　　901 A.2d 871 (N.J. 2006)................................................................................... 15, 16

*Off. Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs
　Credit Partners LP (In re Fedders N. Am., Inc.)*,
　　405 B.R. 527 (Bankr. D. Del. 2009) .......................................................................... 6

*Off. Comm. of Unsecured Creditors of Pack Liquidating, LLC v. Vagenas
　(In re Pack Liquidating, LLC)*,
　　2025 WL 2587577 (Bankr. D. Del. Sept. 5, 2025)................................................... 20

*Off. Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp.*
  *(In re Verestar, Inc.)*,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006)................................................................ 13

*Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
    267 F.3d 340 (3d Cir. 2001) ............................................................ passim

*Pa. Emp., Ben. Tr. Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010) ................................................................ 10

*Picard v. Avellino (In re Bernard L. Madoff Inv. Secs. LLC)*,
    557 B.R. 89 (Bankr. S.D.N.Y. 2016)................................................................ 14

*Picard v. Taylor (In re Park S. Secs., LLC)*,
    326 B.R. 505 (Bankr. S.D.N.Y. 2005)................................................................ 12

*Plan Adm'r v. 225 Bowery Mezz Lender LLC (In re 225 Bowery LLC)*,
    2025 WL 2445879 (Bankr. D. Del. Aug. 25, 2025). ............................................... 6

*Ritz Camera & Image, LLC v. Canon U.S.A., Inc. (In re Ritz Camera & Image, LLC)*,
    2014 WL 432192 (Bankr. D. Del. Feb. 4, 2014).................................................... 18

*SB Liquidation Tr. v. Preferred Bank, (In re Syntax-Brillian Corp.)*,
    2016 WL 1165634 (Bankr. D. Del. Feb. 8, 2016)................................................. 25

*Shearson Lehman Hutton, Inc. v. Wagoner*,
    944 F.2d 114 (2d Cir. 1991) ............................................................................ 11

*Shubert v. Lucent Techs. (In re Winstar Commc'ns, Inc.)*,
    348 B.R. 234 (Bankr. D. Del.) ........................................................................ 29

*Stanziale v. Emerson Radio Corp. (In re Home Easy Ltd.)*,
    672 B.R. 595 (Bankr. D.N.J. 2025)................................................................... 28

*Thabault v. Chait*,
    541 F.3d 512 (3d Cir. 2008) ............................................................................ 16

*Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*,
    88 F. Supp. 3d 1156 (S.D. Cal. 2015) ............................................................... 28

*Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*,
    503 B.R. 239 (Bankr. S.D.N.Y. 2013)............................................................... 23

*UD Dissolution Liquidating Tr. v. Sphere 3D Corp. (In re UD Dissolution Corp.)*,
    629 B.R. 11 (Bankr. D. Del. 2021) ................................................................... 26

*UMB Bank, N.A. v. Sun Cap. Partners V, LP (In re LSC Wind Down, LLC)*,
    610 B.R. 779 (Bankr. D. Del. 2020) ............................................................... 27

*Vanguard Logistics Servs. (USA), Inc. v. Robinson*,
    2023 WL 8290422 (C.D. Cal. Nov. 9, 2023) .................................................. 28

*VFB LLC v. Campbell Soup Co.*,
    482 F.3d 624 (3d Cir. 2007) ........................................................................... 23

*Wagner v. Wilson (In re Vaughan Co., Realtors)*,
    2013 WL 960143 (Bankr. D.N.M. Mar. 11, 2013) ......................................... 14

*Wansdown Props. Corp. N.V. v. Azari (In re Wansdown Props. Corp. N.V.)*,
    647 B.R. 23 (Bankr. S.D.N.Y. 2022) .............................................................. 12

*Welded Constr., LP v. Williams Cos (In re Welded Constr., LP)*,
    616 B.R. 649 (Bankr. D. Del. 2020) ................................................................ 9

*Werner v. Werner*,
    267 F.3d 288 (3d Cir. 2001) ............................................................................. 3

*Zazzali v. Mott (In re DBSI, Inc.)*,
    445 B.R. 344 (Bankr. D. Del. 2011) ............................................................... 18

## STATUTES

6 DEL. C. § 1304 ...................................................................................................... 22

6 DEL. C. § 1305 ...................................................................................................... 22

6 DEL. C. § 1309 ...................................................................................................... 27

11 U.S.C. § 541 .................................................................................................. 13, 14

11 U.S.C. § 544 .................................................................................. 17, 22, 26, 27

11 U.S.C. § 548 .................................................................................. 13, 17, 22, 27

N.Y. DEBT. & CRED. LAW § 273 ........................................................................... 22

N.Y. DEBT. & CRED. LAW § 274 ........................................................................... 22

N.Y. DEBT. & CRED. LAW § 278 ........................................................................... 27

## RULES

FED. R. CIV. P. 8 ................................................................................................ 7, 19

FED. R. CIV. P. 9 ............................................................................................................ 6, 7

FED. R. CIV. P. 15 ............................................................................................................ 30

FED. R. EVID. 402 .............................................................................................................. 4

FED. R. EVID. 403 .............................................................................................................. 4

FED. R. EVID. 602 .............................................................................................................. 4

FED. R. EVID. 802 .............................................................................................................. 4

FED. R. EVID. 901 .............................................................................................................. 4

## **OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 187 .............................................................. 9

Restatement (Second) of Conflict of Laws § 188 .............................................................. 9

Restatement (Second) of Conflict of Laws § 221 .......................................................... 9, 10

**PRELIMINARY STATEMENT**

This action arises from a fraud perpetrated by insiders at the Debtors and at MobileFuse to loot the Debtors for their own benefit.[2]  In the Payment Scheme, the Near Insiders caused Near to transfer more than $25 million to MobileFuse in purported satisfaction of amounts owed under the 2020 Services Agreement.  In reality, the Debtors owed a tiny fraction of that total.  These Sham Payments constituted fraudulent transfers, unjustly enriched MobileFuse, deprived the Debtors of $25.67 million, and artificially inflated MobileFuse's balance sheet (and the Near Insiders' stake in MobileFuse) as it positioned itself to be acquired.  The Near Insiders and the MobileFuse Insiders worked together to conceal all this from other Near personnel and the outside world.

Meanwhile, MobileFuse was Near's largest customer and counterparty to a series of other contracts—the Usage Agreements—under which MobileFuse owed Near roughly $18 million per year for access to Near's data and services.  When the Payment Scheme wound down, MobileFuse terminated the Usage Agreements, under which it still owed Near $26.5 million.  MobileFuse never paid these amounts and thus breached the Usage Agreements.

In the Complaint, the Trustee pleads eleven causes of action to avoid and recover the Sham Payments and 2023 Dues Settlement Agreement and to enforce the Usage Agreements.  The Trustee also objects to and asks the Court to equitably subordinate MobileFuse's Scheduled Claim.

MobileFuse moves to dismiss the Complaint on various grounds.  None has merit.  MobileFuse argues that (1) the Complaint contains only conclusory allegations; (2) the Trustee's claims are barred by an *in pari delicto* defense and the *Wagoner* rule; and (3) the Complaint's allegations are not plausible.  *See* Memorandum of Law in Support of Motion to Dismiss Plaintiff's Amended Complaint ("Def. Br.") [D.I. 29] at 5-6.  MobileFuse is wrong on all fronts.

---

[2] Capitalized terms not otherwise defined have the meanings assigned in Plaintiff's Amended Complaint (the "Complaint") [D.I. 24].  Citations to the Complaint appear as "Am. Compl. ¶."

The Court should promptly deny MobileFuse's motion because it (1) ignores the Complaint's well-pleaded allegations; (2) inverts the standard of review to make inferences in MobileFuse's favor; (3) relies on inapposite case law; and (4) disregards binding precedent. The Complaint states plausible claims for relief, and the Trustee respectfully requests that the Court allow it to pursue MobileFuse, the entity that helped orchestrate, perpetrate, and conceal a fraud that deprived the estates' creditors of more than $50 million.

## NATURE AND STAGE OF THE PROCEEDING

The Trustee does not dispute MobileFuse's procedural synopsis. *See* Def. Br. at 4-5.

## SUMMARY OF ARGUMENT

Each of the thirteen counts in the Complaint alleges a plausible claim for relief:

1.      Counts I-IV and VI-VIII (collectively, the "Avoidance Counts") allege plausible claims for fraudulent transfer. Counts I, II, VII, and VIII (collectively, the "Constructive Fraud Counts") plead plausible claims for constructive fraudulent transfer, and Counts III, IV, VI, and VIII (collectively, the "Intentional Fraud Counts") plead plausible claims for intentional fraudulent transfer.[3] The Avoidance Counts allege the necessary elements, satisfy the relevant pleading standards, and give fair notice of the claims against MobileFuse. The Complaint also sufficiently alleges insolvency, lack of reasonably equivalent value, applicable law, and—with respect to the Intentional Fraud Counts—badges of fraud. Moreover, the *in pari delicto* defense and its *Wagoner* rule corollary do not apply to the Avoidance Counts, and the Avoidance Counts are timely.

2.      Count V alleges a plausible claim to recover avoided transfers. Because the Avoidance Counts allege plausible claims for relief, Count V alleges a plausible claim for relief.

---

[3] Count VIII seeks to avoid the 2023 Dues Settlement Agreement as both a constructive fraudulent transfer and an intentional fraudulent transfer under 11 U.S.C. § 544(b)(1) and applicable state law. Am. Compl. ¶¶ 112-118.

3.     Counts IX and X allege plausible claims for breach of contract with respect to the 2022 Usage Agreement and the 2023 Usage Agreement.  Each alleges sufficient facts to satisfy the necessary elements and gives MobileFuse fair notice of the claims.  Additionally, neither count is subject to the *in pari delicto* defense under applicable law, and the *Wagoner* rule does not apply.

4.     Count XI alleges a plausible, alternative claim for unjust enrichment.  It alleges sufficient facts to satisfy the necessary elements and give MobileFuse fair notice of the claim.  Moreover, no contract addresses MobileFuse's obligation to return the Sham Payments, and MobileFuse argues that the Usage Agreements are unenforceable.

5.     Counts XII and XIII allege, respectively, a plausible claim for equitable subordination and a plausible claim objection, each concerning MobileFuse's Scheduled Claim.  The Complaint details the MobileFuse Insiders' gross misconduct, how they aided, abetted, and concealed the Payment Scheme, and how the amounts MobileFuse owes under the Usage Agreements far outstrip the Scheduled Claim.

## COUNTER-STATEMENT OF FACTS AND OBJECTIONS

MobileFuse's brief reframes the Complaint in the light most favorable to it.  The Trustee objects to this misguided attempt to invert the standard of review.  The Trustee also objects to MobileFuse's incorporating the Indictment and "Real Time Bidder Buyer Agreement" into its brief.  The Indictment was not referenced in or integral to the Complaint, and MobileFuse asks the Court to accept the truth of its allegations under the guise of judicial notice, which is improper.  *See Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001) (advising that courts can take judicial notice of only those adjudicative facts "not subject to reasonable dispute").  It is also telling that MobileFuse omits that ***MobileFuse's CEO, Ken Harlan, is among the indicted***.  Surely he, too, is presumed innocent until proven guilty.

The Trustee objects to the Court's consideration of the "Real Time Buyer Agreement" for a more troubling reason: it is not a contract with any Debtor or any predecessor or affiliate. Nor does it reference any of those entities, and it was not signed on their behalf. It appears to be a contract between MobileFuse and some unrelated and irrelevant entity. The Trustee thus objects to the Court's consideration of it—and to counsel's improper attempt to authenticate it—under Federal Rules of Evidence 402, 403, 602, 802, and 901.

Moving on, to avoid competing characterizations of a Complaint that speaks for itself, the discussion below provides merely a roadmap.

The Debtors were entities within the Near enterprise, which began with Near Pte. Am. Compl. ¶¶ 10-15, 21. The enterprise moved its operations from Singapore to California in early 2021, and Calfornia-based Near Holdco became Near Pte.'s successor-in-interest. *Id.* ¶¶ 23-24. Near Holdco was later acquired by Near Inc. in a de-SPAC transaction that resulted in Near LLC's becoming Near Holdco's successor-in-interest. *Id.* ¶ 24. At all relevant times, the Near Insiders were officers of—and controlled—the Near enterprise. *Id.* ¶ 4.

By November 2019, the Near Insiders and the MobileFuse Insiders had agreed that (a) MobileFuse would provide Near's data products on its platform and charge Near for that service under the 2020 Services Agreement, (b) MobileFuse would pay Near for access to Near's data products under the Usage Agreements, and (c) one or more of the Near Insiders would acquire a 10% stake in MobileFuse. *Id.* ¶ 26. Things later went awry, and the Payment Scheme began.

Under the Payment Scheme, the Near Insiders had Near pay MobileFuse millions more than Near actually owed under the 2020 Services Agreement (the Sham Payments). *Id.* ¶¶ 5, 29-31, 42. These were fraudulent transfers. *Id.* ¶¶ 77-98. The parties calculated these overpayments using the amounts that MobileFuse legitimately owed Near under the Usage Agreements. *Id.* ¶¶

38-39.  That is, the Payment Scheme allowed MobileFuse to use Near's data products at roughly no cost and simultaneously drained more than $25 million in cash from Near.  *Id.* ¶ 6.  The Near Insiders and MobileFuse Insiders worked together to conceal the Payment Scheme from other Near personnel and outsiders.  *Id.* ¶¶ 36-37, 54-55.

The Near Insiders' principal motive for the Payment Scheme was to benefit themselves at Near's expense.  *Id.* ¶ 56.  The Near Insiders had secretly acquired a 10% stake in MobileFuse through holding companies and used the Payment Scheme to artificially inflate MobileFuse's value and consequently the value of their own stake in MobileFuse.  *Id.* ¶¶ 28, 56.

The Payment Scheme siphoned $25.67 million out of Near's bank accounts while the Near entities were insolvent and for less than reasonably equivalent value.  *Id.* ¶ 44.  The Payment Scheme ended after the Near enterprise went public in a de-SPAC transaction.  *Id.* ¶¶ 24, 59. Winding down the Payment Scheme caused MobileFuse's CEO, Ken Harlan, to terminate the 2023 Usage Agreement.  *Id.* ¶¶ 60-61.  After all, Near would no longer be funding MobileFuse's obligations under the Usage Agreements.  Harlan's early termination triggered a $23.5 million debt under the 2023 Usage Agreement, which MobileFuse never paid.  *Id.* ¶¶ 60-62, 67.

MobileFuse also owes amounts under the 2022 Usage Agreement.  *Id.* ¶¶ 63-64.  The Near Insiders and MobileFuse Insiders purported to cancel this $3 million debt for $1.5 million in the 2023 Dues Settlement Agreement.  *Id.* ¶ 65.  This, too, was a fraudulent transfer.  *Id.* ¶¶ 102-111.

In all, MobileFuse reaped a windfall of over $50.7 million from the Sham Payments and its refusal to pay amounts still owing under the Usage Agreements.  *Id.* ¶ 70.  This action seeks to recover those amounts for the benefit of the estates' creditors.

**ARGUMENT**

**I.    LEGAL STANDARD**

A motion to dismiss must be denied unless "the complaint fails to establish a prima facie claim for relief on its face." *Plan Adm'r v. 225 Bowery Mezz Lender LLC (In re 225 Bowery LLC)*, 2025 WL 2445879, at *1 (Bankr. D. Del. Aug. 25, 2025). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making that assessment, a court "must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the Plaintiff." *Astropower Liquidating Tr. v. Xantrex Tech., Inc. (In re Astropower Liquidating Tr.)*, 335 B.R. 309, 332 (Bankr. D. Del. 2005).

Although the Intentional Fraud Counts may also need to satisfy Federal Rule of Civil Procedure 9(b), those requirements "are relaxed and interpreted liberally where [as here] a . . . trust formed for the benefit of creditors [asserts] fraudulent transfer claims." *Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.)*, 2019 WL 647027, at *1 (Bankr. D. Del. Feb. 15, 2019) (quoting *Off. Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners LP (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009)). A trustee, for example, may plead "badges of fraud as circumstantial evidence of actual fraudulent intent." *Charys Liquidating Tr. v. Growth Mgmt., LLC (In re Charys Holding Co.)*, 2010 WL 2774852, at *3, *5 (Bankr. D. Del. July 14, 2010) (citing *Fedders*, 405 B.R. at 545).

Badges of fraud include but are not limited to: (1) a close relationship between debtor and transferee; (2) lack of consideration; (3) insolvency; and (4) "secrecy or concealment." *Fedders*, 405 B.R. at 545. While no single badge is conclusive, "the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id*. Courts may also

consider other factors when analyzing intent. *See, e.g.*, *Carickhoff v. Wedbush Secs., Inc. (In re Live Well Fin., Inc.)*, 652 B.R. 699, 705-07 (Bankr. D. Del. 2023) (finding intent sufficiently alleged when court could infer that debtor paid defendant to continue "fraudulent bond scheme").

The other counts, including the Constructive Fraud Counts, are not subject to Rule 9(b). Courts in the Third Circuit evaluate such claims "under the notice pleading standard of Fed. R. Civ. Pro. 8(a)(2)." *Beskrone v. OpenGate Cap. Grp. (In re PennySaver USA Publ'g, LLC) ("PennySaver I")*, 587 B.R. 445, 455-56 (Bankr. D. Del. 2018) (collecting cases); *see also Miller v. ANConnect LLC (In re Our Alchemy, LLC)*, 2019 WL 4447545, at *10 (Bankr. D. Del. Sept. 16, 2019) ("Rule 9(b) does not apply to constructive fraudulent transfer claims.").

## II.   CHOICE OF LAW

MobileFuse argues that New York law applies to every cause of action in the Complaint and immunizes it from liability.  MobileFuse is wrong.

When deciding what law applies, "this Court looks to the Restatement (Second) Conflicts of Laws" to determine "which state has the most significant relationship to the occurrence and the parties." *Carickhoff v. Goodwin (In re Decade, S.A.C. LLC)*, 635 B.R. 735, 760 (Bankr. D. Del. 2021) (citation modified).  The Restatement counsels the Court to conduct that analysis on a claim-by-claim basis. *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (noting that "[b]ecause choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case").  In other words, one state's law may govern one set of claims and another state's law may govern a different set.  That is the case here.

This adversary proceeding entails two sets of claims: those arising under the Bankruptcy Code (*i.e.*, Counts I – VIII and XII – XIII) (the "Statutory Claims") and those alleging common-law causes of action (*i.e.*, Counts IX – XI) (the "Common-Law Claims").  MobileFuse insists that

the Statutory Claims are subject to the 2020 Services Agreement and its New York choice-of-law provision because the Statutory Claims "aris[e] out of the provision of services by MobileFuse to Near." Def. Br. at 13. Because the Statutory Claims seek to recover amounts that Near overpaid for MobileFuse's services, if any, *see* Am. Compl. ¶¶ 30-31, 42-44, New York law may apply to the Statutory Claims.

On the other hand, MobileFuse's belief that New York law also applies to the Common-Law Claims is pure fantasy. Unlike the Statutory Claims, the Common-Law Claims do not "arise[] out of the provision of services by MobileFuse to Near" and thus fall outside the ambit of the 2020 Services Agreement's choice-of-law clause.[4] Instead, the Common-Law Claims arise out of the provision of services by Near to MobileFuse, an arrangement governed by an entirely different set of contracts with their own choice-of-law provisions: the Usage Agreements.

Specifically, the Common-Law Claims allege that MobileFuse breached the terms of the Usage Agreements.[5] Neither the 2022 Usage Agreement nor the 2023 Usage Agreement—which are incorporated into the Complaint as Exhibits B and C[6]—choose New York law to govern disputes arising under those agreements. In fact, the 2022 Usage Agreement and 2023 Usage Agreement have a Singapore choice-of-law clause. *See* Ex. C at 16 ("These Terms of Use will be governed by the laws of Singapore.").[7] The Usage Agreements also provide that they "supersede[]

---

[4] The 2020 Service Agreement's New York choice-of-law provision does not purport to govern all disputes between Near and MobileFuse. Rather, its express terms confine its reach to only "dispute[s] arising out of or relating to the" 2020 Services Agreement. 2020 Services Agreement § 10.3 [D.I. 30-2].

[5] Count IX alleges that MobileFuse breached the 2022 Usage Agreement by failing to pay Near the $1.5 million still owed under that agreement; Count X alleges that MobileFuse breached the 2023 Usage Agreement by failing to pay Near the $23.5 million owed under that agreement; Count XI alleges, in the alternative, that MobileFuse was unjustly enriched by the Sham Payments and its free access to Near's data. Am. Compl. ¶¶ 119-136.

[6] *See* D.I. 25-2, 25-3.

[7] The 2022 Usage Agreement provides that it "shall be governed by the terms available at www.near.com/terms." Ex. B at 1. Although that website is no longer active, archived copies of it from January 2022 provide that "These T&Cs will be governed by the laws of Singapore." Near Platform Terms of Use § 13.7, https://web.archive.org/web/20220118010750/https://near.com/terms/#near-platform-terms (last visited January 12, 2026).

all previous agreements entered in-between [sic] the parties" and also "expressly supersede any oral or written prior agreements or arrangements between [Near] and [MobileFuse]."  Ex. B at 1; Ex. C at 1.

Because the Usage Agreements choose Singapore law, Restatement section 187 applies. *See Welded Constr., LP v. Williams Cos. (In re Welded Constr., LP)*, 616 B.R. 649, 657 (Bankr. D. Del. 2020) ("Delaware courts rely on Section 187 . . . to determine whether the Parties' contractually-designated choice of law should be given effect.").  Section 187(2)(a) advises courts to apply the law chosen by the parties unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." Restatement § 187.  That exception applies here.

Singapore had no relationship to the parties or the Usage Agreements at issue.  Near had located to California almost a year before the 2022 Usage Agreement.  Am. Compl. ¶ 23 (noting that Near moved operations "from Singapore to California" in "early 2021").  And the parties to the 2023 Usage Agreement—Near NA and MobileFuse—never had any presence in Singapore. *Id.* ¶¶ 13, 16.  Singapore thus "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice."  Restatement § 187(2)(a).[8]

When one of section 187's exceptions is triggered, section 188 of the Restatement instructs courts to decide which state has the most significant relationship to the underlying dispute—here, the Common-Law Claims—by weighing certain factors, including the place of contracting, the place of negotiation, the place of performance, and the parties' principal place of business. *See* Restatement § 188(2); *see also id.* § 221 (considering similar factors when deciding what state's

---

[8] For these and similar reasons, the Singapore choice-of-forum provisions in the Usage Agreements are likewise unenforceable.  No parties, witnesses, or evidence is located in Singapore, and this is a core proceeding. *See Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 641 (D. Del. 2011) ("The Third Circuit's decision in *In re Exide Technologies* implies that forum selection clauses are unenforceable in core bankruptcy proceedings . . . .").

law will govern unjust enrichment).  Those factors support California or New Jersey as the state with the "most significant relationship" to the Common-Law Claims.  Importantly, none of those factors supports New York as having the most significant relationship to the 2023 Usage Agreement or the Common-Law Claims.

At all relevant times, Near LLC and Near NA (the Debtors whose claims the Trustee is asserting in, respectively, Counts IX and X) maintained their sole place of business in California.  Am. Compl. ¶¶ 12-13.  Any negotiating, contracting, and performing of the relevant Usage Agreements by Near would have taken place in California.  Conversely, by the time it negotiated, contracted, and later breached the 2023 Usage Agreement, MobileFuse was based in New Jersey.  *Id*. ¶ 16.  Indeed, the 2023 Usage Agreement identifies New Jersey as MobileFuse's home state.  Ex. C at 1 (identifying MobileFuse as "having its office address at PO Box 37, Stirling NJ 07980").

Having identified California and New Jersey as the states likely to have the most significant relationship to the Common-Law Claims, the Court need not proceed further.  Under Delaware choice-of-law rules, before weighing interested states' contacts, "it is necessary to compare the laws of the competing jurisdictions to determine whether the laws actually conflict on a relevant point."  *Pa. Emp., Ben. Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010).  "[T]he Third Circuit, as well as other federal state courts within Delaware, have concluded that Delaware's choice of law rules require that an actual conflict exist prior to engaging in a complete conflict of laws analysis."  *Id*. (collecting cases).  As explained below, there is no conflict between the outcomes of the Common-Law Claims were the Court to apply the law of New Jersey instead of California.  *See infra* Section III(B)(2); Section V n.20.  Because applying the laws of New Jersey and California produce the same result, the Court may refrain from choosing between them.  *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("According to conflicts

of law principles, where the laws of the two jurisdictions would produce the same result . . . there is a 'false conflict,' and the Court should avoid the choice-of-law question.").

In sum, although New York law may apply to the Statutory Claims, the laws of either New Jersey or California apply to the Common-Law Claims, and because both states' laws will produce the same outcome, there is no need to choose between them.

## III.   NEITHER WAGONER NOR IN PARI DELICTO BARS THE TRUSTEE'S CLAIMS.

MobileFuse spends much of its brief arguing that the Second Circuit's decision in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) and the affirmative defense of *in pari delicto* bar the Trustee's claims.  In reality, *Wagoner* does not apply here, and the *in pari delicto* defense does not immunize MobileFuse.

### A.   *Wagoner* Does Not Apply.

More than thirty years ago, the Second Circuit conflated the *in pari delicto* defense and standing doctrines to produce what is often called the "*Wagoner* rule."  *See Wagoner*, 944 F.2d at 120.  Lamented by scholars as "nonsensical," *Moratzka v. Morris (In re Senior Cottages of Am., LLC)*, 482 F.3d 997, 1003 (8th Cir. 2007), the *Wagoner* rule has been rejected by every other federal circuit court of appeals to consider it.  *See id.* (aligning Eighth Circuit with First, Third, Fifth, and Eleventh Circuits in "declin[ing] to conflate the constitutional standing doctrine with the *in pari delicto* defense"); *see also Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 675 (6th Cir. 2016) (same); *CarrAmerica Realty Corp. v. Nvidia Corp.*, 302 F. App'x 514, 517 (9th Cir. 2008) ("[T]he *Wagoner* rule has been much criticized and we decline to follow it.").

Most important here, the Third Circuit has rejected the theory underlying the *Wagoner* rule. *See Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 346 (3d Cir. 2001) ("An analysis of standing does not include an analysis of equitable defenses, such as *in pari*

*delicto*.").  The "nonsensical" *Wagoner* rule is therefore no barrier here, and tellingly, MobileFuse fails to cite a single decision by any court within the Third Circuit applying the *Wagoner* rule.

Rather than admit that binding precedent forecloses its argument, MobileFuse attempts a workaround.  Pointing to the New York forum-selection clause in the 2020 Services Agreement, MobileFuse urges that Second Circuit "substantive and procedural law should play a direct, guiding role" in this lawsuit.  Def. Br. at 13.  MobileFuse offers no legal support for this ploy. Regardless, its attempt to inject Second Circuit rules into this proceeding fails at every turn.

For starters, even the Second Circuit would not apply the *Wagoner* rule to the Statutory Claims.  Courts within the Second Circuit have repeatedly held that "avoidance actions do not fall within the *Wagoner* rule."  *Wansdown Props. Corp. N.V. v. Azari (In re Wansdown Props. Corp. N.V.)*, 647 B.R. 23, 40 (Bankr. S.D.N.Y. 2022); *see also Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 483 (S.D.N.Y. 2012) ("The *Wagoner* Rule does not . . . apply to causes of action that the Bankruptcy Code specifically confers on a trustee or a debtor in possession." (quoting *Picard v. Taylor (In re Park S. Secs., LLC)*, 326 B.R. 505, 513 (Bankr. S.D.N.Y. 2005))).  Accordingly, "the '*Wagoner* Rule' is unavailing as applied to the Trustee's fraudulent transfer causes of action."  *Park S. Secs.*, 326 B.R. at 513.  Plus, as "the Bankruptcy Code specifically confers" standing on the Trustee to equitably subordinate and object to claims against the estate, the *Wagoner* rule does not apply to Counts XII or XIII, either.  *Id.*

Further, for the reasons explained above, the 2020 Services Agreement's forum-selection clause does not apply to the Common-Law Claims, as that clause expressly limits its scope to only those "disputes arising out of or relating to [the 2020 Services] Agreement."  *See supra* Section II. Because the Common-Law Claims do not "aris[e] out of or relat[e] to" the 2020 Services Agreement (and, instead, arise out of and relate to the Usage Agreements), they are beyond the

reach of the 2020 Services Agreement and its forum-selection clause. As a result, MobileFuse's

excuse for this Court to apply the *Wagoner* rule has no basis in law or fact.

**B.      *In Pari Delicto* Does Not Bar the Trustee's Claims.**

MobileFuse also argues that the *in pari delicto* defense bars the Trustee's claims. Two facts

undermine MobileFuse's position. First, *in pari delicto* does not apply to the Statutory Claims.

Second, under both California and New Jersey law, the Common-Law Claims are not subject to *in

pari delicto*. Thus, *in pari delicto* does not bar any portion of the Complaint.

**1.      *In pari delicto* does not apply to the Statutory Claims.**

The *in pari delicto* defense does not apply to the Statutory Claims because each arises from

a specific power granted by the Bankruptcy Code and none derives from the Debtors' rights under

11 U.S.C. § 541. For example, the Avoidance Counts (Counts I-VIII) each allege an avoidance

claim under the Bankruptcy Code. Courts are unanimous in holding that the *in pari delicto* defense

does not apply to such claims. *See Cutler Indus., Ltd. v. Bank of Am. (In re David Cutler Indus.,

Ltd.)*, 502 B.R. 58, 71-72 (Bankr. E.D. Pa. 2013) (collecting cases); *see also Off. Comm. of

Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 480

(Bankr. S.D.N.Y. 2006) (noting "*in pari delicto* is not a defense to a fraudulent conveyance suit").

The Third Circuit confirmed as much in *McNamara v. PFS (In re Personal & Bus. Ins.

Agency)*, reversing a district court's decision to impute the debtor's conduct to a trustee bringing a

fraudulent transfer action. *See* 334 F.3d 239, 247 (3d Cir. 2003) ("[W]e hold that [the debtor's]

conduct will not be imputed to the Trustee."). In so holding, the Third Circuit distinguished claims

brought under 11 U.S.C. § 548 from those brought under 11 U.S.C. § 541 and dilated on why

*Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001) was

inapposite. *See McNamara*, 334 F.3d at 245 (noting that "[t]he *Lafferty* Court made clear that its

holding did not extend to actions brought under [Bankruptcy] Code sections other than § 541," and therefore did not implicate "the trustee's avoiding powers") (citation modified).[9]

The Third Circuit's holding in *McNamara* joined other circuits in refusing to apply *in pari delicto* to avoidance claims.  For example, in *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854 (B.A.P. 6th Cir. 1997), the Bankruptcy Appellate Panel for the Sixth Circuit noted that "courts have consistently recognized that a trustee may pursue fraudulent or preferential transfers despite the fact that the debtor was a knowing and willing participant to such conveyances."  209 B.R. at 863. As another court explained, "[b]ecause the bankruptcy trustee does not stand in the shoes of the pre-petition debtor as to [avoidance] claims, the debtor's pre-petition wrongdoing does not taint the claims."  *Wagner v. Wilson (In re Vaughan Co., Realtors)*, 2013 WL 960143, at *6 (Bankr. D.N.M. Mar. 11, 2013).  This accords with the Third Circuit's view that avoidance claims "are not derivative of the debtor."  *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153 (3d Cir. 1989).  And contrary to MobileFuse's insinuations, even courts applying New York law recognize that "*in pari delicto* is not a defense to a fraudulent conveyance suit."  *FIA Leveraged Fund Ltd. v. Grant Thornton LLP*, 56 N.Y.S.3d 12, 19 (N.Y. App. Div. 2017).

For the same reasons, the *in pari delicto* defense does not apply to Counts XII or XIII. Those counts, like the Avoidance Counts, arise from specific powers granted by the Bankruptcy Code (*i.e.*, 11 U.S.C. §§ 510(c) and 502) that are separate from and independent of rights under 11 U.S.C. § 541.  *See McNamara*, 334 F.3d at 245; *Picard v. Avellino (In re Bernard L. Madoff Inv. Secs. LLC)*, 557 B.R. 89, 127 (Bankr. S.D.N.Y. 2016) (holding *in pari delicto* defense does not apply to equitable subordination).

---

[9] Unsurprisingly, MobileFuse fails to cite a single instance where a court applied the *in pari delicto* defense to an avoidance claim, instead choosing to repeatedly cite *Lafferty* while wholly ignoring *McNamara* and its explanation of why MobileFuse's reliance on *Lafferty* is groundless.

Accordingly, the *in pari delicto* defense does not apply to the Statutory Claims.

### 2.    *In pari delicto* does not bar the Common-Law Claims.

The *in pari delicto* defense does not bar the Common-Law Claims (*i.e.*, Counts IX-XI) because the applicable state law will not impute the Near Insiders' misconduct to Near. *See Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001) ("[T]he rules of imputation determine whether or not the Debtors will be deemed to have participated in wrongdoing . . . ."). Where, as here, misconduct is not imputed, the *in pari delicto* defense fails.

As addressed above, California and New Jersey are the states with the most significant relationship to the Common-Law Claims. *See supra* Section II. Neither California nor New Jersey would impute the Near Insiders' misconduct to bar claims against MobileFuse.

Under California law, "when a corporate officer collaborates with outsiders to defraud a corporation, knowledge of the fraud is not attributable to the corporation." *McHale v. Silicon Valley L. Grp.*, 2011 WL 6990187, at *5 (N.D. Cal. Dec. 14, 2011) (citing *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 35 Cal. Rptr. 3d 31, 47 (Cal. Ct. App. 2005)). The result is the same under New Jersey law, with the New Jersey Supreme Court admonishing that "one who contributed to the misconduct cannot invoke imputation." *NCP Litig. Tr. v. KPMG LLP*, 901 A.2d 871, 882 (N.J. 2006).

Here, the Complaint alleges that MobileFuse colluded with the Near Insiders to conceal and perpetuate the fraudulent Payment Scheme to Near's detriment. Am. Compl. ¶¶ 4, 29, 30, 32-37, 46, 52, 54, 55. MobileFuse therefore cannot impute the Near Insiders' misconduct under either California or New Jersey law.

Nor can MobileFuse impute the Near Insiders' misconduct even absent the pleaded collusion. Under California and New Jersey law, courts will not impute wrongdoing that triggers

4929-2311-5911.2 19286.00001                              15

"the 'adverse interest' exception to imputation." *Golden State TD Invs., LLC v. Andrews Kurth LLP (In re Cal. TD Invs. LLC)*, 489 B.R. 124, 131 (Bankr. C.D. Cal. 2013); *see also Thabault v. Chait*, 541 F.3d 512, 528 (3d Cir. 2008) (recognizing New Jersey's "adverse interest exception"). Under both states' laws, the exception is triggered when, as here, the insiders' interests "were adverse to the corporation." *Thabault*, 541 F.3d at 528; *see also Cal. TD Invs.*, 489 B.R. at 129 ("[T]he acts of an officer acting adversely to a company will not be attributed to it." (citation omitted)). The Complaint's detailing how the Near Insiders looted Near while it was insolvent triggers the adverse interest exception under both California and New Jersey law. Am. Compl. ¶¶ 4-8, 29-31, 38-46, 53-58, 70-76.[10]

In its gambit for the Court to apply New York law, MobileFuse notes that states like New York limit the adverse interest exception to only those scenarios where "the debtor receives [no] sort of benefit from the fraud." Def. Br. at 7. But California and New Jersey have expressly rejected this heightened standard. *See Cal. TD Invs.*, 489 B.R. at 130 (rejecting that adverse interest exception requires complete adversity); *NCP Litig. Tr.*, 901 A.2d at 888 (rejecting total abandonment standard because "[e]ven if the fraud . . . could be considered a 'benefit' to the corporation," any such benefit "would not be a complete bar to liability"); *see also Cobalt Multifamily Invs. I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 431 (S.D.N.Y. 2012) (explaining that unlike New York, "New Jersey do[es] not consider an extension of a corporation's life as a result of fraud to be a material 'benefit' sufficient to preclude" adverse interest exception). As such, that heightened standard does not apply here.

---

[10] *See Cal. TD Invs.*, 489 B.R. at 130 (finding that "deplet[ing] Funds' assets for the benefit of [manager]" triggered adverse interest exception); *NCP Litig. Tr.*, 901 A.2d at 381-82 (agreeing that "inflating a corporation's revenues and enabling [it] to continue in business 'past the point of insolvency' cannot be considered a benefit to the corporation").

Instead, the Complaint's allegations are sufficient to bar the application of the *in pari delicto* defense to the Common-Law Claims under both California and New Jersey law.

**IV.    THE COMPLAINT ALLEGES PLAUSIBLE CLAIMS TO AVOID AND RECOVER FRAUDULENT TRANSFERS (COUNTS I – VIII).**

The Constructive Fraud Counts (Counts I, II, VII, and VIII) plead plausible claims for constructive fraudulent transfer.  Count I seeks to avoid the § 548 Transfers under 11 U.S.C. § 548(a)(1)(B). Am. Compl. ¶¶ 77-81.  Count II seeks to avoid the § 544 Transfers under 11 U.S.C. § 544(b)(1).  *Id.* ¶¶ 82-88.  Counts VII and VIII seek to avoid the 2023 Dues Settlement Agreement under, respectively, 11 U.S.C. §§ 548(a)(1)(B) and 544(b).  *Id.* ¶¶ 107-118.

The Intentional Fraud Counts (Counts III, IV, VI, and VIII) plead plausible claims for intentional fraudulent transfer.  Count III seeks to avoid the § 548 Transfers under 11 U.S.C. § 548(a)(1)(A).  *Id.* ¶¶ 89-93.  Count IV seeks to avoid the § 544 Transfers under 11 U.S.C. § 544(b)(1).  *Id.* ¶¶ 94-98.  Counts VI and VIII seek avoid the 2023 Dues Settlement Agreement under, respectively, 11 U.S.C. §§ 548(a)(1)(A) and 544(b).  *Id.* ¶¶ 102-106, 112-118.

Count V seeks to recover avoided transfers under 11 U.S.C. § 550.  *Id.* ¶¶ 99-101.  Because the Constructive Fraud Counts and Intentional Fraud Counts state plausible claims for relief, Count V states a plausible claim for relief.

**A.    The Complaint Sufficiently Alleges the Constructive Fraud Counts.**

"[T]o plead adequately a constructive fraud claim 'all that is needed . . . is an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent.'"  *Beskrone v. OpenGate Cap. Grp., LLC (In re PennySaver USA Publ'g, LLC) ("PennySaver II")*, 602 B.R. 256, 266 (Bankr. D. Del. 2019) (quoting *JLL Consultants, Inc. v. Gothner (In re Agfeed USA, LLC)*, 546 B.R. 318, 336 (Bankr. D. Del. 2016)).  A claim need only "provide the defendant with 'fair notice' of the charges against him."  *Id.*  "Thus, complaints that

identify the dates, amounts, source, and transferee of each of the alleged transfers successfully support claims of constructive fraudulent transfer under [Rule] 8(a)(2)'s pleading standard." *Id.*

The Constructive Fraud Counts each identify the "dates, amounts, source, and transferee" and thus give fair notice. Am. Compl. ¶¶ 42, 65, 78, 83, 108, 112; *see also PennySaver II*, 602 B.R. at 269 ("[B]y naming each transferee and the exact amount they received per transfer, the Trustee has given each Defendant fair notice . . . ."). MobileFuse largely concedes this point but nevertheless urges dismissal. Relying on mischaracterizations of the Complaint and inapposite case law, MobileFuse insists that the Trustee has not sufficiently alleged insolvency or lack of reasonably equivalent value. MobileFuse's arguments are groundless.

### 1. The Complaint sufficiently alleges insolvency.

MobileFuse claims that the Complaint "does not contain any specific allegations regarding each specific transferor's assets or liabilities" and contains only "generalized assertions and conclusory allegations." Def. Br. at 19-20. MobileFuse's critiques ring hollow.

"Insolvency is generally a factual determination not appropriate for resolution in a motion to dismiss." *Zazzali v. Mott (In re DBSI, Inc.)*, 445 B.R. 344, 349 (Bankr. D. Del. 2011). Although it is insufficient to "present no information on the Debtors' financial status," *Global Link Liquidating Tr. v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718 (Bankr. D. Del. 2005), a plaintiff "is not required to include precise calculations evidencing balance sheet insolvency." *Forman v. HBK Master Fund L.P. (In re Glenco Acquisition, Inc.)*, 2015 WL 3777972, at *4 (Bankr. D. Del. June 16, 2015) (citations omitted).

On the contrary, where allegations regarding the transferor's financial condition are sufficient to allow the court to infer insolvency, the pleading standard is satisfied. *See Ritz Camera & Image, LLC v. Canon U.S.A., Inc. (In re Ritz Camera & Image, LLC)*, 2014 WL 432192, at *3 (Bankr. D. Del. Feb. 4, 2014) (blessing avoidance claim where complaint "assert[ed] that the

Debtors were insolvent, as demonstrated by their operating losses"). Further, reviewing courts must construe pleadings "so as to do justice." FED. R. CIV. P. 8(e).

Here, the Complaint pleads considerable detail allowing the Court to infer insolvency. Am. Compl. ¶¶ 71-76. It alleges that:

- Near[11] suffered operating losses "each year since its inception in 2012" to April 2021, when the § 544 Transfers began.[12] *Id.* ¶ 71.

- Near did not achieve positive EBITDA "during any period between April 2015 and the Petition Date" and thus throughout the time of the Sham Payments. *Id.* ¶ 72.

- "Near's total debt steadily increased from $3.5 million in April 2018 to more than $100 million by July 2023." *Id.*

- "By April 2021, Near's total enterprise value . . . was negative $57.5 million," and "liabilities exceeded the fair value of its assets by at least $69.1 million" and remained at that level "for the rest of 2021." *Id.* ¶ 73.

- By July 2022, "Near's liabilities exceed[ed] the fair value of its assets by approximately $180 million" and remained in a nine-figure hole. *Id.* ¶ 74.

- "[F]rom April 2021 onward," Near generated "negative cumulative free cash flows," creating a "cash shortfall from April 2021 until the Petition Date [that] was never less than $48.7 million, meaning that Near's operations were never able to generate enough cash . . . to fund its operations and service its debts as they came due." *Id.* ¶ 75.

The Complaint thus alleges that the § 544 Transfers and the § 548 Transfers were made when the Near entities: (a) "intended to incur, believed, or reasonably should have believed that they would incur debts beyond [their respective] ability to pay as they became due"; (b) "were engaged or about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction"; and/or (c) owed debts "greater than the sum of [their] respective assets, at a fair valuation." *Id.* ¶¶ 71, 80, 85.

---

[11] The Complaint defines "Near" to include all four Debtors and alleges that Near LLC was the successor-in-interest to Near Pte. and Near Holdco. *See* Am. Compl. at 1 n.1, ¶¶ 11-12, 14, 24. Thus, every reference in the Complaint to Near is a reference to, collectively, Near Inc., Near LLC, Near Singapore, Near LLC, and, by extension, Near Pte. and Near Holdco.

[12] The § 544 Transfers include the § 548 Transfers. *See* Am. Compl. ¶ 83 n.4.

The Complaint's detailed allegations far exceed merely "alleg[ing] the statutory elements" or "present[ing] no information on the Debtors' financial status." *Global Link Telecom Corp.*, 327 B.R. at 718. In pleading how and why the Near entities' liabilities exceeded their assets throughout the relevant period, the Complaint contains "a text-book allegation of balance-sheet insolvency." *Off. Comm. of Unsecured Creditors of Pack Liquidating, LLC v. Vagenas (In re Pack Liquidating, LLC)*, 2025 WL 2587577, at *8 (Bankr. D. Del. Sept. 5, 2025). Undeterred, MobileFuse advances three further critiques. None passes muster.

First, MobileFuse contends that the Constructive Fraud Counts "fail to satisfy the federal pleading requirements" because they "lump all of the alleged debtors and alleged transferors together." Def. Br. at 20. MobileFuse has no authority for this contention and instead cites only post-trial decisions that are unconcerned with pleading standards. *See Askanase v. Fatjo*, 130 F.3d 657, 663 (5th Cir. 1997) (noting that appeal concerned "a take nothing judgment"); *Am. Classic Voyages Co. v. JP Morgan Chase Bank (In re Am. Classic Voyages Co.)*, 367 B.R. 500, 502 (Bankr. D. Del. 2007) (assessing whether plaintiff met burden of proof at trial).

Regardless, the Complaint gives MobileFuse fair notice of the grounds for insolvency. Am. Compl. ¶¶ 71-78, 82, 83. In addition to pleading that the liabilities of "Near Pte., Near Holdco, Near Singapore, and Near Inc. exceeded the fair value of [their] assets from April 2021 through the Petition Date,"[13] the Complaint quantifies that insolvency: $69.1 million insolvent as of April 2021, $70 million insolvent for the rest of 2021, $180 million insolvent by July 2022, and at least $100 million insolvent through the Petition Date, with no intervening solvent periods. *Id*. ¶¶ 72-74. Accepting these well-pleaded facts as true and drawing the resulting inferences in the Trustee's favor cements that the Complaint has plausibly alleged insolvency at all relevant points in time:

---

[13] Am. Compl. ¶ 71.

- Near Inc. was insolvent as of the 2023 Dues Settlement Agreement. *Id.* ¶¶ 71-76, 113;

- Near Singapore was insolvent when it made its nine Sham Payments. *Id.* ¶¶ 42, 71-78, 80, 82, 83, 85;

- Near Holdco was insolvent when it made its two Sham Payments. *Id.*; and

- Near Pte. was insolvent when it made its five Sham Payments. *Id.*

Nothing requires the Trustee to further particularize insolvency at this stage, and the authorities that MobileFuse relies on to claim otherwise undercut its position.[14] They confirm that the Trustee's allegations of operating losses, debt increases, and net working capital deficiencies are sufficient. *See Liquid Holdings Grp.*, 2018 WL 2759301, at *19 (citing *Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*, 2015 WL 5146161, at *7 (Bankr. D. Del. Aug. 31, 2015)). Indeed, the *Amcad Holdings* decision that MobileFuse cites undermines its argument entirely by stating that "a party can meet its burden of pleading insolvency without providing specific financial information." *Gavin Solmonese, LLC v. Shyamsundar (In re Amcad Holdings, LLC)*, 579 B.R. 33, 39 (Bankr. D. Del. 2017).

Second, MobileFuse implies that the challenged transfers were made by "affiliate[s] or subsidiar[ies]" of the Debtors. Def. Br. at 21. MobileFuse is wrong. The Constructive Fraud Counts seek to recover transfers made by Near Singapore, Near Inc., Near Pte., and Near Holdco. Am. Compl. ¶¶ 77-88, 99-101, 107-118. Near Singapore and Near Inc. are Debtors, and the Complaint explains that Debtor Near LLC is the successor-in-interest to both Near Pte. and Near

---

[14] Unlike here, the complaint in *F-Squared* contained no "specific allegations regarding Debtors' assets or liabilities" and merely labeled the liabilities as "enormous" and "massive." *Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC)*, 2019 WL 4261168, at *11-13 (Bankr. D. Del. Sept. 6, 2019). Similarly, the complaint in *Liquid Holdings* contained no "financial data surrounding the Transfers that the Court [could] use to infer" insolvency. *Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*, 2018 WL 2759301, at *19 (Bankr. D. Del. June 6, 2018).

Holdco. *Id.* ¶¶ 11, 12, 14, 24. Near LLC's successor-in-interest status distinguishes it from the "subsidiary" and "affiliate" at issue in MobileFuse's *Klauder* and *Plassein* decisions.[15]

Because the Complaint alleges that Near LLC is the successor to Near Pte. and Near Holdco, the Court may infer that the Sham Payments by Near Pte. and Near Holdco "would have been part of [Near LLC's] estate had [they] not been transferred" to MobileFuse. *Michaelson v. Farmer (In re Appleseed's Intermediate Holdings, LLC)*, 470 B.R. 289, 298-99 (D. Del. 2012) (quoting *Bergier v. IRS*, 496 U.S. 53, 58 (1990)). Near Pte. and Near Holdco thus each transferred "interest[s] of the debtor [Near LLC] in property," and the Trustee may avoid those transfers under at least 11 U.S.C. § 548(a)(1)(B).[16]

Those transfers are also avoidable under 11 U.S.C. § 544(b)(1). Under that section, the Trustee may avoid any transfer "that is voidable under applicable law" by an unsecured creditor. 11 U.S.C. § 544(b)(1). Under the "applicable law" (*i.e.*, state fraudulent transfer law), the Near LLC Predicate Creditors can avoid the Sham Payments made by Near Pte. and Near Holdco because those transfers were made (1) while Near Pte. and Near Holdco were insolvent, and (2) for less than fair consideration. *See* Am. Compl. ¶¶ 42, 44-45, 71-76, 82-88; 6 DEL. C. §§ 1304, 1305; N.Y. DEBT. & CRED. LAW §§ 273, 274. Because the Near LLC Predicate Creditors could avoid those Sham Payments, the Trustee can too.

Third, MobileFuse insists that the Complaint's insolvency allegations are not plausible because Near "went public in 2023" and "continued to operate" until December 2023. Def. Br. at

---

[15] *See Klauder v. Echo/RT Holdings, LLC*, 152 A.3d 581, 2016 WL 7189917, at *2 (Del. Dec. 12, 2016) (holding that trustee had "no standing" because debtor "ha[d] no direct interest in the assets of" its subsidiary); *Brandt v. B.A. Cap. Co. (In re Plassein Int'l Corp.)*, 366 B.R. 318, 326 (Bankr. D. Del. 2007) (finding no legal basis for avoidance claim when debtors' affiliate made transfers).

[16] MobileFuse appears to argue that the Trustee cannot avoid transfers unless they were made by entities that filed petitions for relief. The express wording of the Bankruptcy Code provides otherwise. *See* 11 U.S.C. § 548(a)(1)(B) (allowing trustee to avoid "any transfer of an interest of the debtor in property"); 11 U.S.C. § 544(b) (same).

21-22. But courts agree that market evidence is unreliable in a case like this one, where "the financial statements on which the market relied were false and misleading." *Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 298 (Bankr. S.D.N.Y. 2013). The Complaint not only details the underlying fraud, but also how it was concealed from the market, how MobileFuse aided and abetted that concealment, and how Near later announced that its "previously issued financial statements . . . should not be relied upon." Am. Compl. ¶ 68. Thus, market evidence does not render the Complaint's insolvency allegations implausible.

### 2.      The Complaint sufficiently alleges lack of reasonably equivalent value.

MobileFuse also argues that the Complaint "fails to plausibly allege that the Debtor[s] did not receive reasonably equivalent value" for the Sham Payments. Def. Br. at 18. MobileFuse's argument both ignores and contradicts the Complaint's well-pleaded allegations.

The Complaint alleges that none "of the Sham Payments was made at arm's length or in exchange for reasonably equivalent value." Am. Compl. ¶ 44. The Complaint elaborates that, although the Sham Payments were purportedly made to satisfy debts Near owed MobileFuse under the 2020 Services Agreement, the Sham Payments far exceeded those purported debts. Under the 2020 Services Agreement, Near owed MobileFuse less than $1.2 million per year. *Id.* ¶ 29. Meanwhile, the Sham Payments totaled nearly $26 million in less than 2.5 years. *Id.* ¶ 42.

In the Third Circuit, "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'" *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007). Paying almost $26 million to wipe out purported debts of less than $3 million is not getting "roughly the value it gave." Am. Compl. ¶ 44. Rather, "[t]he value, if any of data or services that MobileFuse actually provided" in exchange for the Sham Payments was "at most, far less than the millions of dollars" in transfers the Trustee seeks to avoid. *Id.* ¶¶ 79, 84; *see also id.* ¶¶ 45, 46.

To dodge this obvious conclusion, MobileFuse claims that Near received a "net margin." Def. Br. at 18. The Complaint, however, contradicts MobileFuse's "net margin" argument. MobileFuse asks the Court to infer, contrary to the Complaint's allegations, that MobileFuse's payments to Near refunded the Sham Payments. The Complaint, on the other hand, specifically alleges the opposite: "MobileFuse's transfers to Near were not repayments of the Sham Payments," Am. Compl. ¶ 47, and "the Sham Payments did not result in a net benefit to the Near entity making the transfer or Near in general." Id. ¶ 45.

Moreover, the Complaint explains why MobileFuse's payments to Near had nothing to do with repaying the Sham Payments; they were to satisfy a separate obligation that MobileFuse owed under a different set of contracts, the Usage Agreements. Id. ¶¶ 47-51. The Complaint also alleges that, as MobileFuse made its required payments under the Usage Agreements, its failure to repay Near for the Sham Payments created a growing debt to Near that eventually totaled $25.67 million. Id. ¶¶ 46-47, 51. The Court may thus reasonably infer (as alleged) that MobileFuse's paying amounts owed under the Usage Agreements had no effect on the debt created by the Sham Payments and did not provide reasonably equivalent value for the Sham Payments.

In sum, the Trustee has plausibly alleged that the Near entities did not receive reasonably equivalent value for the Sham Payments.

### B.    The Complaint Sufficiently Alleges the Intentional Fraud Counts.

Despite MobileFuse's repeated assertions that the Intentional Fraud Counts are "allege[d] in conclusory fashion," Def. Br. at 23, the Complaint's well-pleaded allegations exceed Rule 9(b)'s relaxed requirements. The Complaint alleges at least four badges of fraud from which the Court can reasonably infer actual intent to hinder, delay, or defraud creditors.

First, as discussed above, the Complaint alleges that the Near entities did not receive reasonably equivalent value for any of the Sham Payments or the 2023 Dues Settlement Agreement. *See supra* Section IV(A)(2); Am. Compl. ¶¶ 45-47, 51, 65, 103, 104.

Second, as also discussed above, the Complaint alleges insolvency as of each Sham Payment. *See supra* Section IV(A)(1); Am. Compl. ¶¶ 71-76.

Third, the Complaint details that the Near Insiders—who controlled each of the Near entities—were involved in an ongoing fraudulent scheme with the MobileFuse Insiders, which included the Near Insiders' owning part of MobileFuse. Am. Compl. ¶¶ 7, 27-28, 30-31.[17]

Fourth, the Complaint details how the Near Insiders concealed the Sham Payments and the 2023 Dues Settlement Agreement. *Id.* ¶¶ 37, 52-55, 92, 97, 104.

Further, "Debtors are presumed to intend the natural consequences of their acts." *SB Liquidation Tr. v. Preferred Bank, (In re Syntax-Brillian Corp.)*, 2016 WL 1165634, at *6 (Bankr. D. Del. Feb. 8, 2016). The natural consequence of the Sham Payments and the 2023 Dues Settlement Agreement was to deprive creditors of more than $27 million that would have otherwise been part of the Debtors' estates and available to them.

In sum, the Complaint's allegations far exceed what is required to survive a motion to dismiss. *See PennySaver I*, 587 B.R. 445, 461 (Bankr. D. Del. 2018) (three badges of fraud sufficient to survive motion to dismiss); *Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*, 2015 WL 5146161, at *7 (Bankr. D. Del. Aug. 31, 2015) ("Four badges of fraud is certainly enough for an actual fraudulent transfer claim to survive a Rule 12(b)(6) motion.").

---

[17] MobileFuse remarks that it "make[s] no logical sense" sense that the Near Insiders funneled over $25 million to MobileFuse and received only "a single $303,927.70 member distribution." Def. Br. at 24. This hindsight nag overlooks that the Sham Payments "artificially increased [MobileFuse's] revenues" and "purported value" and would have resulted in a windfall to the Near Insiders had MobileFuse "been acquired or recapitalized." Am. Compl. ¶ 56.

C.      **Counts II, IV, and VIII Identify the Applicable State Law.**

Notwithstanding that the Avoidance Counts state plausible claims for relief, MobileFuse carps that the Trustee's claims under 11 U.S.C. § 544(b)(1) "are not based on the ***appropriate*** and the applicable state law."  Def. Br. at 26 (emphasis added).  MobileFuse's argument is spurious.

Counts II, IV, and VIII seek to avoid the challenged transfers "pursuant to 11 U.S.C. § 544(b)(1) and other applicable law, including 6 DEL. C. § 1304(a)(2)."  Am. Compl. ¶¶ 88, 98, 117.  That is, the Complaint specifically references the Delaware UFTA as the "applicable state law."  This specific reference to the Delaware Code—which MobileFuse oddly labels "the Delaware Chancery Law"—satisfies the Trustee's burden.  Indeed, alleging merely that a transfer "is avoidable under 'applicable state law'" is sufficient.  *UD Dissolution Liquidating Tr. v. Sphere 3D Corp. (In re UD Dissolution Corp.)*, 629 B.R. 11, 40 (Bankr. D. Del. 2021).

MobileFuse's gripe is that it disagrees that Delaware law applies.  But its disagreement is not grounds for dismissal, and the case law that MobileFuse cites in support of its position—an unpublished decision from Louisiana where the complaint did not identify any non-bankruptcy law supporting avoidance and a case where a trustee did "not allege the elements of the . . . Uniform Fraudulent Transfer Act"[18]—does not suggest otherwise.

MobileFuse's gripe is also misplaced; there are no material differences between the Delaware UFTA and the New York UVTA.  *See Burkhart v. Genworth Fin., Inc.*, 275 A.3d 1259, 1268 (Del. Ch. 2022) (noting that "[d]espite its new name, UVTA remained substantially similar to UFTA" and collecting cases).  That is, Counts II, IV, and VIII state plausible claims for relief, whether under the Delaware UFTA, the New York UVTA, or another state's UFTA or UVTA.

---

[18]*See Luster v. Greenhill Cap. Partners II, LLP (In re CLK Energy Partners, LLC)*, 2010 WL 1930065, at *4 (W.D. La. May 12, 2010) (noting that trustee did "not identify the applicable non-bankruptcy law that provides the basis for avoidance"); *Aphton Corp. v. Pasteur (In re Aphton Corp.)*, 423 B.R. 76, 87 (Bankr. D. Del. 2010).

**D.    The Avoidance Counts Are Timely.**

MobileFuse also argues that the Trustee cannot avoid transfers "made prior to December 8, 2021," two years before the Petition Date.  Def. Br. at 25.  This is a red herring.  The Trustee does not seek to avoid those earlier Sham Payments under 11 U.S.C. § 548.[19]  Rather, in Counts II and IV, the Trustee seeks to avoid them under 11 U.S.C. § 544, which borrows the lookback period of applicable state law.  *See UMB Bank, N.A. v. Sun Cap. Partners V, LP (In re LSC Wind Down, LLC)*, 610 B.R. 779, 785 (Bankr. D. Del. 2020) ("[S]o long as an underlying state law avoidance claim is not time-barred . . . a section 544(b)(1) claim may be brought . . . .").

The lookback period under both the Delaware UFTA and the New York UVTA is four years.  *See* 6 DEL. C. § 1309; N.Y. DEBT. & CRED. LAW § 278.  All Sham Payments occurred within four years of the Petition Date.  Am. Compl. ¶ 42.  Thus, regardless of which state's law supplies the lookback period, the Trustee may avoid all the Sham Payments.

## V.    THE COMPLAINT ALLEGES PLAUSIBLE CLAIMS FOR BREACH OF CONTRACT (COUNTS IX AND X).

Counts IX and X allege that MobileFuse breached, respectively, the 2022 Usage Agreement and 2023 Usage Agreement.  *See* Am. Compl. ¶¶ 120-130.  MobileFuse challenges these counts based on *in pari delicto* and for purportedly containing only "conclusory allegations."  Def. Br. at 5.  MobileFuse's *in pari delicto* defense fails because, as detailed above, neither California nor New Jersey would impute the Near Insiders' misconduct.  *See supra* Section III(B)(2).  The accusation that Counts IX and X contain only "conclusory allegations" is equally unavailing.

Counts IX and X incorporate the Complaint's allegations that detail "(1) existence of [each] contract; (2) plaintiff's performance . . . (3) defendant's breach; and (4) damages to plaintiff as a

---

[19] *See* Am. Compl. ¶¶ 78, 89 (invoking 11 U.S.C. § 548 to avoid the "§ 548 Transfers," which the Complaint defines to include only those Sham Payments made on or after January 26, 2022).

result of [each] breach." *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1173 (S.D. Cal. 2015);[20] Am. Compl. ¶¶ 47-50, 60-63, 67; *see also id.* ¶¶ 120-124, 126-130. Counts IX and X thus allege plausible claims for relief, and MobileFuse's challenge fails.

## VI.    THE COMPLAINT ALLEGES A PLAUSIBLE CLAIM FOR UNJUST ENRICHMENT (COUNT XI).

MobileFuse apparently concedes that the Complaint alleges each of the requisite elements of its unjust enrichment claim.  MobileFuse raises no challenge to that claim, except in a passing argument buried in a footnote.  *See* Def. Br. at 17 n.5 (asserting that an unjust enrichment claim is "ordinarily precluded" by the existence of a written contract).  The Court, however, need not consider this cursory argument, as "[a]rguments in footnotes are forfeited." *In Re Novartis Pharms. Corp. v. MSN Pharms. Inc.*, 2024 WL 4723274, at *4 (D. Del. Nov. 8, 2024) (citing *Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023)).

MobileFuse's drive-by argument also misses its mark.  An unjust enrichment claim may be pleaded in the alternative to a breach of contract claim when (1) the contract does not cover the same subject matter as the unjust enrichment claim, or (2) the enforceability of the contract is disputed.  *See, e.g.*, *Vanguard Logistics Servs. (USA), Inc. v. Robinson*, 2023 WL 8290422, at *7 (C.D. Cal. Nov. 9, 2023); *Stanziale v. Emerson Radio Corp. (In re Home Easy Ltd.)*, 672 B.R. 595, 647-48 (Bankr. D.N.J. 2025).  Both points are present here.  First, the Usage Agreements—the focus of the Complaint's contract claims—involved payments <u>from</u> MobileFuse.  Am. Compl. ¶¶ 47-51, 119-130.  Yet the Sham Payments—the primary subject of the Complaint's unjust enrichment claim—involved wholly non-contractual payments <u>to</u> MobileFuse.  *Id.* ¶¶ 38-46, 132-

---

[20] New Jersey's elements for breach of contract mirror those of California.  *See Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (listing four elements: (1) the parties "entered into a contract," (2) "plaintiff did what the contract required," (3) defendant "did not do what the contract required," and (4) "defendants' breach . . . caused a loss to the plaintiffs") (citation modified).

133. Second, the enforceability of the Usage Agreements is hotly disputed.  Indeed, MobileFuse tried to extinguish the 2022 Usage Agreement through the 2023 Dues Settlement Agreement, and MobileFuse now argues that the Usage Agreements are unenforceable thanks to the *in pari delicto* doctrine.  *Id.* ¶ 65.  The Complaint therefore alleges a plausible unjust enrichment claim.

**VII.   THE COMPLAINT ALLEGES PLAUSIBLE CLAIMS FOR EQUITABLE SUBORDINATION (COUNTS XII AND XIII).**

MobileFuse raises only one challenge to the Complaint's equitable subordination claims. Specifically, MobileFuse argues that the Complaint fails to allege sufficient facts showing that it engaged in "gross misconduct," as required to equitably subordinate the Scheduled Claim. MobileFuse is dead wrong.  The Complaint is replete with allegations satisfying this standard.

Gross misconduct involves "fraud, overreaching or spoliation" or other "moral turpitude." *Shubert v. Lucent Techs. (In re Winstar Commc'ns, Inc.)*, 348 B.R. 234, 284 (Bankr. D. Del.), *aff'd*, 2007 WL 1232185 (D. Del. 2007), *aff'd in part, modified in part*, 554 F.3d 382 (3d Cir. 2009). The Complaint easily satisfies this standard, alleging that the MobileFuse Insiders (1) "concocted a multifaceted scheme," pursuant to which MobileFuse "received tens of millions of dollars in services and data from Near" for free; (2) "drained" more than $25 million in Sham Payments from Near through this scheme; (3) "fraudulently inflated MobileFuse's revenue" through this scheme; (4) "gave the Near Insiders a discounted investment" in MobileFuse, so that they could personally profit from this scheme; (5) "helped deceive Near's own internal controls and conceal the extent of the Near-MobileFuse relationship," including the "hidden" personal investment in MobileFuse; and (6) "concealed the Payment Scheme by creating false documentation supporting the Sham Payments."  Am. Compl. ¶¶ 4-8, 34-37, 42-46, 52-55.  Indeed, MobileFuse's CEO has been indicted for this alleged misconduct.  These allegations undoubtedly support an equitable subordination claim.  *See Century Glove, Inc. v. Iselin (In re Century Glove, Inc.)*, 151 B.R. 327,

335 (Bankr. D. Del. 1993) (finding that allegations of fraudulent scheme involving creditor and debtor's CEO were sufficient to state claim for equitable subordination).

## CONCLUSION

For all these reasons, the Trustee respectfully requests that the Court deny MobileFuse's motion to dismiss in its entirety.  In the alternative, if the Court concludes that any claim in the Complaint is not adequately pleaded, the Trustee respectfully requests leave to replead.  Rule 15(a) of the Federal Rules of Civil Procedure, made applicable here by Rule 7015 of the Federal Rules of Bankruptcy Procedure, provides that "when justice so requires," leave to amend should be "freely granted."  FED. R. CIV. P. 15(a)(2).  As the Third Circuit has explained, courts should use "strong liberality" in considering whether to grant leave to amend.  *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).  Leave to amend should not be denied absent undue delay, bad faith, undue prejudice to the non-movant, or futility, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), none of which is present here.

Dated: January 13, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*
Bradford J. Sandler (DE Bar No. 4142)
Beth E. Levine (*pro hac vice*)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
T: (302) 652-4100
F: (302) 652-4400
bsandler@pszjlaw.com
blevine@pszjlaw.com
pkeane@pszjlaw.com

-and-

**REID COLLINS & TSAI LLP**

Eric D. Madden (*pro hac vice*)
Brandon V. Lewis (*pro hac vice*)
Brian J. Bah (*pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX 75201
T: (214) 420-8900
F: (214) 420-8909
emadden@reidcollins.com
blewis@reidcollins.com
bbah@reidcollins.com

*Counsel for Drivetrain, LLC, as*
*Plan Administrator and Litigation Trustee of the*
*Near Intelligence, Inc., et al. Litigation Trust*

4929-2311-5911.2 19286.00001

31