# **EXHIBIT B**

# **(Blackline)**

5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **AN GLOBAL LLC, *et al.*,[1]** | Case No. 23-11294 (JKS) |
| **Debtors.** | (Jointly Administered) |
| | Re: Docket No. 12 & 65 |

~~INTERIM~~FINAL ORDER (I) AUTHORIZING THE

DEBTORS TO
(A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE
CASH COLLATERAL, (II) GRANTING SENIOR SECURED
PRIMING LIENS AND SUPERPRIORITY ADMINISTRATIVE
~~ADMINISTRATIVE~~ EXPENSE CLAIMS, (III) GRANTING ADEQUATE
PROTECTION
TO THE PREPETITION 1L SECURED PARTIES, (IV) MODIFYING
THE AUTOMATIC STAY, AND (V) ~~SCHEDULING~~ GRANTING RELATED
RELIEF
~~A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF~~

Upon the motion, dated August 28, 2023 (the "Motion"),[2] of AgileThought, Inc.

("Holdings") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number or registration number in the applicable jurisdiction, are: AN Global LLC (5504); AgileThought, Inc. (2509); 4th Source Holding Corp. (9629); 4th Source Mexico, LLC (7552); 4th Source, LLC (7626); AgileThought Brasil-Consultoria, Em Tecnologia LTDA (01-42); AgileThought Brasil Servicos de Consultoria Em Software (01-20); AgileThought Costa Rica S.A. (6822); AgileThought Digital Solutions, S.A.P.I. de C.V. (3KR0); AgileThought México S.A. de C.V. (7E46); AgileThought, LLC (7076); AgileThought Servicios Administrativos, S.A. de C.V. (4AG1); AgileThought Servicios México S.A. de C.V. (8MY5); AgileThought, S.A.P.I. de C.V. (No Tax ID); AGS Alpama Global Services USA, LLC (0487); AN Data Intelligence, S.A. de C.V. (8I73); AN Extend, S.A. de C.V. (1D80); AN Evolution, S. de R.L. de C.V. (7973); AN USA (5502); AN UX, S.A. de C.V. (7A42); Cuarto Origen, S. de R.L. de C.V. (0IQ9); Entrepids México, S.A. de C.V. (OCYA); Entrepids Technology Inc. (No Tax ID); Facultas Analytics, S.A.P.I. de C.V. (6G37); Faktos Inc., S.A.P.I. de C.V. (3LLA); IT Global Holding LLC (8776); and QMX Investment Holdings USA, Inc. (9707). The Debtors' headquarters are located at 222 W. Las Colinas Boulevard, Suite 1650E, Irving, Texas 75039.

2.  Unless otherwise indicated herein, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

the above-captioned chapter 11 cases (the "Chapter 11 Cases") commenced on August 28, 2023 (the "Petition Date") for ~~interim (this "Interim~~ entry of the Interim Order[3] and final order (this "Final Order") ~~and final orders~~ under sections 105(a), 361, 362, 363, 364, 503(b), 506(c) and 507(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (this "Bankruptcy Court") seeking, among other things,

(a)     authorization for Debtor AN Global LLC, in its capacity as borrower (the "Borrower"), to obtain postpetition financing, and for each of the other Debtors to guarantee unconditionally (the "Guarantors"), on a joint and several basis, the Borrower's obligations in connection with a debtor-in-possession financing, comprising a superpriority senior secured multiple-draw term loan facility in an aggregate principal amount of not less than $119,882,093.79 (the "DIP Facility"), which consists of (i) a new money multi-draw term loan facility in an aggregate principal amount of $22,700,000.00 (the commitments thereunder, the "New Money DIP Commitments" and the Term Loans (as defined below) advanced thereunder, the "New Money DIP Loans" comprising (i) $11,200,000.00 in Initial Term Loans (as defined in the Interim Order), and (ii) $11,500,000.00 in New Money DIP Loans to be funded following entry of this Final Order (the "Final Term Loans")) to be funded by certain Prepetition 1L Lenders (as defined herein), and (ii) ~~upon entry of the Final Order,~~ a deemed term loan "roll-up" post-petition financing of the full amount of the Prepetition 1L Obligations (such rolled-up debt, the "Roll-Up Loans" and, the Roll-Up Loans together with the New Money DIP Loans, the "Term Loans");

(a)     authorization for the Debtors to enter into that certain *Senior Secured Superpriority Priming Debtor-In-Possession Financing Agreement* among Holdings, the Borrower, the other Guarantors, the lenders from time to time party thereto (collectively, the "DIP Lenders"), and Blue Torch Finance LLC, as administrative agent and collateral agent (in such capacities, the "DIP Agent" and, together with the DIP Lenders, the "DIP Parties") (as amended, restated or

---

[3]   "Interim Order" shall mean the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to the Prepetition 1l Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 65].

otherwise modified from time to time in accordance with the terms thereof, the "DIP Credit Agreement," together with all agreements, documents, and instruments delivered or executed in connection therewith, the "DIP Documents") which shall be in substantially the same form attached hereto as Exhibit 2, and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Documents;

(b)     authorization for the Debtors (x) to use the proceeds of the New Money DIP Loans and the Prepetition Collateral (as defined herein), including Cash Collateral (as defined herein), in accordance with the terms hereof, including pursuant to the DIP Budget (as defined herein) as further described herein, to pay fees and interest under the DIP Facility, to provide working capital for, and for other general corporate purposes of, the Debtors, including for payment of any Adequate Protection Obligations (as defined herein), and (y) upon entry of the Final Order to effectuate the Roll-Up Loans;

(c)     the granting of adequate protection to the lenders under that certain Financing Agreement, dated as of May 27, 2022 (as amended, supplemented or otherwise modified, the "Prepetition 1L Credit Agreement" and, all security, pledge and guaranty agreements and all "Loan Documents" (as defined in the Prepetition 1L Credit Agreement, each as amended, supplemented or otherwise modified, the "Prepetition 1L Documents")), by and among AN Global LLC, as borrower, the subsidiaries of Holdings party thereto, as guarantors (collectively with AN Global LLC, the "Prepetition 1L Obligors"),[34] the several lenders party thereto (the "Prepetition 1L Lenders"), and Blue Torch Finance LLC, as administrative agent and collateral agent for the Prepetition 1L Lenders (the "Prepetition 1L Agent" and, collectively with the Prepetition 1L Lenders, the "Prepetition 1L Secured Parties"), with respect to, among other things, the use of their Cash Collateral and the Prepetition Collateral;

(d)     authorization for the Debtors to pay, on a final and irrevocable basis, the principal, interest, fees, expenses, and other amounts payable under the DIP Documents as such become earned, due and payable, including, without limitation, the Closing Fee (as defined herein), the Agency Fee (as defined herein), the Audit and Collateral Monitoring Fees (as defined herein), the Exit Fee (as defined herein), and the reasonable fees and disbursements of the DIP Agent's and DIP Lenders' attorneys, advisors, accountants, appraisers, bankers and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

---

[34]    The Prepetition 1L Obligors are: AN Global LLC; AgileThought, Inc.; AgileThought, LLC; 4th Source, LLC; IT Global Holdings LLC; 4th Source Holding Corp.; QMX Investment Holdings USA, Inc.; AGS Alpama Global Services USA, LLC; Entrepids Technology Inc.; 4th Source Mexico, LLC; AN USA; AgileThought Digital Solutions S.A.P.I. de C.V.; and AgileThought Mexico, S.A. de C.V.

(e)     the granting of valid, enforceable, non-avoidable and fully perfected first priority liens on and senior security interests in all of the property, assets and other interests in property and assets of the Debtors, in favor of the DIP Agent and the DIP Lenders, that was not subject to a valid and perfected lien on the Petition Date (such property and assets, the "Unencumbered Assets"), except as otherwise specifically provided herein, whether such property is presently owned or after-acquired, and all other "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors, of any kind or nature whatsoever, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date, including, upon entry of  the Final Order, the proceeds of Avoidance Actions (as defined herein), subject only to the Carve Out (as defined herein) and, if any, the Permitted Liens (as defined herein) on the terms and conditions set forth herein and in the DIP Documents;

(f)     the granting of valid, enforceable, non-avoidable and fully perfected first priority priming liens on and senior security interests in all of the property, assets and other interests in property and assets of the Debtors, in favor of the DIP Agent and the DIP Lenders, except as otherwise specifically provided herein, whether such property is presently owned or after-acquired, and all other "property of the estate" (within the meaning of Section 541 of the Bankruptcy Code) of the Debtors, of any kind or nature whatsoever, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date, subject only to the Carve Out and, if any, the Permitted Liens on the terms and conditions set forth herein and in the DIP Documents;

(g)     the granting of valid, enforceable, non-avoidable and fully perfected liens on and junior security interests in all of the property, assets and other interests in property and assets of the Debtors, in favor of the DIP Agent and the DIP Lenders, except as otherwise specifically provided herein, whether such property is presently owned or after-acquired, and all other "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors, of any kind or nature whatsoever, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Petition Date, that is subject to valid and perfected security interests in and liens on such property in favor of third parties existing on the Petition Date, excluding the Prepetition First Liens (as defined below), subject only to the Carve Out and, if any, the Permitted Liens on the terms and conditions set forth herein and in the DIP Documents;

(h)     the granting of superpriority administrative expense claims against each of the Debtors' estates in favor of the DIP Agent and the DIP Lenders, with respect to the DIP Obligations (as defined herein) with priority over any and all administrative expenses of any kind or nature subject and subordinate only to the Carve Out on the terms and conditions set forth herein and in the DIP Documents;

(i)     the waiver of the Debtors' and the estates' right to surcharge against the Prepetition Collateral pursuant to Bankruptcy Code section 506(c), ~~subject to entry of the Final Order (but retroactive to the~~effective as of the Petition Date~~)~~;

(j)     authorization for the DIP Agent and the DIP Lenders to exercise remedies under the DIP Documents on the terms described herein upon the occurrence and during the continuance of a Termination Event (as defined herein);

(k)     the modification of the automatic stay imposed pursuant to Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms of this ~~Interim~~Final Order;

(l)     pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Bankruptcy Court to consider entry of ~~this~~the Interim Order; and

(m)     that this Bankruptcy Court schedule a final hearing (the "Final Hearing") to consider entry of ~~a final order (the "~~this Final Order~~") authorizing and approving, on a final basis, among other things, the Borrower's borrowing from the DIP Lenders under the DIP Documents up to an aggregate principal amount of $22,700,000.00 in New Money DIP Loans, the Roll-Up Loans and the continued use of Cash Collateral and granting adequate protection, in each case, as described in the Motion and set forth in the DIP Documents.~~.

The Bankruptcy Court having considered the Motion, the Feltman Declaration,[45] the evidence submitted or proffered and the arguments of counsel made at Interim Hearing and the Final Hearing; the Interim Order having been entered by this Bankruptcy Court on August 30, 2023; and proper notice of the Motion ~~and~~, the Interim Hearing, and the Final Hearing having been given and in compliance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014 and the Local Rules; and the Interim Hearing and the Final Hearing to consider the relief requested in the Motion having been held and concluded; and all objections, if any, to the relief requested in the Motion and to the entry of this ~~Interim~~Final Order having been withdrawn, resolved, or overruled by the Bankruptcy Court; and it appearing to the Bankruptcy Court that granting the

---

[45] *Declaration of James S. Feltman in Support of Debtors' DIP Financing Motion* (the "Feltman Declaration").

relief requested is fair and reasonable and in the best interests of the Debtors, their estates, creditors and parties in interest; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:[56]

1.    *Disposition*.  The Motion is GRANTED on an interim basis in accordance with the terms of this ~~Interim~~Final Order.  Any objections to the Motion with respect to the entry of this ~~Interim~~Final Order that have not been withdrawn, waived, or settled, and all reservation of rights included therein, are hereby denied and overruled.

2.    *Jurisdiction*.  This Bankruptcy Court has core jurisdiction over the Chapter 11 Cases commenced on Petition Date, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    *Notice*.  Under the circumstances, the notice given by the Debtors of, and as described in, the Motion, the relief requested therein, and the ~~Interim~~Final Hearing constitutes proper notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014, and no further notice of the relief sought at the ~~Interim~~Final Hearing and the relief granted herein is necessary or required.

4.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party, but subject to the limitations thereon contained in paragraphs 27 and 28 of this ~~Interim~~Final Order, the Debtors represent, admit, stipulate, and agree as follows:

---

[56] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact.

      (a)    <u>Prepetition 1L Obligations</u>.  As of the Petition Date, the Prepetition 1L Obligors, without defense, counterclaim, or offset of any kind, were jointly and severally indebted and liable to the Prepetition 1L Secured Parties under the Prepetition 1L Documents in the aggregate amount of not less than $97,182,093.79, which consists of (x) not less than approximately $95,937,658.01 in principal amounts of term loans advanced under the Prepetition 1L Credit Agreement along with fees and premiums, plus (y) no less than approximately $1,244,435.78 on account of accrued and unpaid interest thereon prior to the Petition Date ((x) and (y) together, the "<u>Prepetition 1L Obligations Amount</u>"), plus all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, if any, additional interest, any other "Obligations" (as defined on the Prepetition 1L Credit Agreement) and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Prepetition 1L Documents (collectively, including the Prepetition 1L Obligations Amount, the "<u>Prepetition 1L Obligations</u>").  The Prepetition 1L Obligations constitute legal, valid, binding and non-avoidable obligations against each of the Prepetition 1L Obligors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.  No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Prepetition 1L Agent or Prepetition 1L Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with any of the Petition 1L Documents is subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(b)      <u>Prepetition First Liens</u>.  Pursuant to the Prepetition 1L Documents, the Prepetition 1L Obligations are secured by valid, binding, perfected and enforceable first priority liens on and security interests in (the "<u>Prepetition First Liens</u>") the "Collateral" (as defined in the Prepetition 1L Documents) (the "<u>Prepetition Collateral</u>"), subject only to certain Permitted Liens as permitted under the Prepetition 1L Documents.  The Prepetition First Liens (i) are valid, binding, perfected, and enforceable first priority liens and security interests in the Prepetition Collateral, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) as of the Petition Date are subject or subordinate only to certain Permitted Liens (if any) as permitted by the terms of the Prepetition 1L Documents and (iv) constitute the legal, valid, and binding obligation of the Loan Parties (as defined in the Prepetition 1L Documents), enforceable in accordance with the terms of the applicable Prepetition 1L Documents.

(c)      <u>Cash Collateral</u>.  Any and all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral existing as of the Petition Date or from time to time, and the proceeds of any of the foregoing, is the Prepetition 1L Secured Parties' cash collateral within the meaning of Bankruptcy Code section 363(a) (the "<u>Cash Collateral</u>").

(d)      <u>Intercreditor Agreement</u>.  Prior to the commencement of the Chapter 11 Cases, the Prepetition 1L Agent and GLAS Americas LLC as collateral agent (the "<u>Prepetition 2L Collateral Agent</u>") under that certain Credit Agreement, dated as of November 22, 2021 (as (i) amended by that certain Amendment No. 1 to the Credit Agreement dated as of December 9,

2021, (ii) amended by that certain Amendment No. 2 to the Credit Agreement dated as of March 30, 2022, (iii) amended by that certain Amendment No. 3 to the Credit Agreement dated as of the date of this Agreement, (iv) amended by that certain Amendment No. 4 to the Credit Agreement dated as of August 10, 2022, (v) amended by that certain Amendment No. 5 to the Credit Agreement dated as of November 22, 2022, (vi) amended by that certain Amendment No. 6 to the Credit Agreement dated as of March 7, 2023 and that certain Waiver to Credit Agreement dated as of March 7, 2023, and (vii) modified by that certain Forbearance Agreement dated as of April 18, 2023) (the "Prepetition 2L Credit Agreement") by and among the Loan Parties party thereto (the "Prepetition 2L Obligors"),[67] the lenders thereto (the "Prepetition 2L Lenders"), the Prepetition 2L Collateral Agent, and GLAS USA LLC, as administrative agent (the "Prepetition 2L Administrative Agent" and, together with the Prepetition 2L Collateral Agent, the "Prepetition 2L Agents" and, together with the Prepetition 2L Lenders, the "Prepetition 2L Secured Parties" and, the Prepetition 2L Secured Parties together with the Prepetition 1L Secured Parties, the "Prepetition Secured Parties"), the Borrower and certain of the Guarantors entered into that certain Subordination and Intercreditor Agreement dated as of May 27, 2022 (as amended, supplemented or modified from time to time prior to the Petition Date, the "Intercreditor Agreement"), which sets forth the respective rights, obligations and priorities of the liens and security interests of Prepetition 1L Agent and the Prepetition 1L Lenders on the one hand, and the Prepetition 2L Collateral Agent and Prepetition 2L Lenders, on the other hand, with respect to the Collateral (as defined in the Intercreditor Agreement) and the obligations of

---

[67] The Prepetition 2L Obligors are AgileThought, Inc. (f/k/a AN Global Inc.); AgileThought Mexico, S.A. de C.V.; 4th Source, LLC; IT Global Holdings LLC; AN Global LLC; QMX Investment Holdings USA, Inc.; AgileThought Digital Solutions S.A.P.I. de C.V.; 4th Source Holding Corp.; Entrepids Technology Inc.; AGS Alpama Global Services USA, LLC; AN USA; and AgileThought, LLC.

Borrower and Guarantors party thereto due to the Prepetition 1L Agent and the Prepetition 1L Lenders, on the one hand, and the Prepetition 2L Collateral Agent and Prepetition 2L Lenders, on the other hand.

(e)     The Term Loans are not First Lien Obligations as defined in the Intercreditor Agreement.

(f)     Nothing in this ~~Interim~~Final Order shall modify the terms of the Intercreditor Agreement, and the rights, priorities and obligations set forth thereunder.

5.     *Findings Regarding the DIP Facility and Use of Cash Collateral.*

(a)     Good cause has been shown for the entry of this ~~Interim~~Final Order.

(b)     As set forth in the Feltman Declaration, the Debtors have an immediate need to obtain the DIP Facility and to use the Cash Collateral in each case on an interim basis, in order to, among other things: (i) permit the orderly continuation of their respective businesses; (ii) maintain business relationships with their vendors, suppliers, customers, and other parties; (iii) make payroll and honor other obligations to employees; (iv) make capital expenditures; (v) make adequate protection payments; and (vi) pay the costs of the administration of the Chapter 11 Cases and satisfy other working capital and general corporate purposes of the Debtors. The Debtors require immediate access to sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations to avoid irreparable harm by, among other things, preserving and maintaining the going concern value of the Debtors' business. The Debtors will not have sufficient sources of working capital and financing to operate their business or maintain their properties in the ordinary course of business throughout the Chapter 11 Cases without the DIP Facility and authorized use of Cash Collateral.

(c)      As set forth in the Feltman Declaration, the Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  Notwithstanding the existence of Unencumbered Assets, the Debtors are unable to secure adquate funding, the Debtors are also unable to obtain secured credit allowable under Bankruptcy Code sections 364(c)(1), 364(c)(2), and 364(c)(3) for the purposes set forth in the DIP Documents without the Debtors granting to the DIP Agent, for the benefit of itself and the DIP Lenders, subject to the Carve Out as provided for herein and the Permitted Liens (if any), the DIP Liens (as defined herein) and the DIP Superpriority Claims (as defined herein) and, subject to the Carve Out, incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in this ~~Interim~~Final Order and the DIP Documents.  For the avoidance of doubt, the DIP Liens include liens on and security interests in the Unencumbered Assets pursuant to Bankruptcy Code section 364(c)(2).

(d)      The extensions of credit under the DIP Facility, the DIP Documents, and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)      The DIP Facility has been negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Documents including, without limitation, all loans (including the Roll-Up Loans) made to and guarantees issued by the Debtors pursuant to the DIP Documents and all other Obligations (as defined in the DIP Credit Agreement) (collectively, the "DIP Obligations") shall be deemed to

-11-

have been extended by the DIP Agent and the DIP Lenders in good faith as that term is used in Bankruptcy Code section 364(e) and in express reliance upon the protections offered by Bankruptcy Code section 364(e) and the terms of this ~~Interim~~Final Order.  The DIP Obligations, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this ~~Interim~~Final Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise and any liens or claims granted to the DIP Agent or the DIP Lenders hereunder arising prior to the effective date of any such vacatur, reversal or modification of this ~~Interim~~Final Order shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

~~(f) Intentionally omitted.~~

(f)     The Roll-Up Loans, as provided for under the DIP Facility are appropriate and the DIP Lenders would not be willing to provide the New Money DIP Loans or extend credit to the Debtors thereunder without the inclusion of the Roll-Up Loans within the DIP Facility.

(g)     The DIP Lenders would not agree to lend New Money DIP Loans, including the Final Term Loans, without the DIP Liens, including, without limitation, without the first lien on unencumbered property provided for in paragraph 10(a) of this Final Order and the first priority senior priming security interest in and lien on all collateral subject to the Prepetition Second Liens securing the Prepetition 2L Obligations as provided for in paragraph 10(b) of this Final Order.   For the avoidance of doubt, the DIP Lenders would not agree to lend New Money DIP Loans, including the Final Term Loans, if the DIP Liens were *pari passu* or junior to the Prepetition Second Liens securing the Prepetition 2L Obligations.

(h)    Pursuant to the Intercreditor Agreement, the Prepetition 2L Agents, on their own behalf and on behalf of the Prepetition 2L Lenders, may not raise or support any objection to the DIP Facility or the provisions of this Final Order and the DIP Documents including, without limitation, the Roll-Up Loans and the Carve Out.

(i)    ~~(g)~~ The Debtors have requested entry of this ~~Interim~~Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules.  For the reasons set forth in the Motion, the declarations filed in support of the Motion, and the record presented to the Bankruptcy Court at the ~~Interim~~Final Hearing, absent granting the relief sought by this ~~Interim~~Final Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and authorization of the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this ~~Interim~~Final Order and the DIP Documents are, therefore, in the best interests of the Debtors' estates and are consistent with the Debtors' fiduciary duties.

6.    *Authorization of the DIP Facility and the DIP Documents.*

(a)    The Debtors are hereby expressly authorized and empowered to execute and deliver and, on such execution and delivery, directed to perform under the DIP Documents, including the DIP Credit Agreement, which is hereby approved and incorporated herein by reference.

(b)    Upon entry of this ~~Interim~~Final Order, the Borrower is hereby authorized to borrow, and the Guarantors are hereby authorized to guaranty, borrowings up to an aggregate principal amount of $~~11,200,000.00~~22,700,000 in New Money DIP Loans (plus an amount equal to the Closing Fee and Agency Fee, plus interest, fees, indemnities, and other expenses and other

-13-

amounts provided for in the DIP Credit Agreement) ~~(the "Interim Term Loans"),~~ subject to and in accordance with this ~~Interim~~Final Order and the DIP Documents.

(c)     Proceeds of the DIP Loans and Cash Collateral shall be used solely for the purposes permitted under the DIP Credit Agreement, this ~~Interim~~Final Order and in accordance with the applicable DIP Budget, the DIP Documents, and this ~~Interim~~Final Order.

(d)     In furtherance of the foregoing and without further approval of this Bankruptcy Court, each Debtor is authorized, and the automatic stay imposed by Bankruptcy Code section 362 is hereby lifted to the extent necessary and applicable, to perform all acts and to make, execute and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement and any collateral documents contemplated thereby), and to pay all fees, expenses, indemnities, and other amounts contemplated thereby or that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility including, without limitation:

(i)     the execution, delivery, and performance of the DIP Documents, including, without limitation, the DIP Credit Agreement and any collateral documents contemplated thereby;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents (in each case in accordance with the terms of the DIP Documents and in such form as the Debtors, the DIP Agent and the Required Lenders (as defined in the DIP Credit Agreement) may agree), it being understood that no further approval of the Bankruptcy Court shall be required for any amendments, waivers, consents or other modifications to and under the DIP Documents or the DIP Budget, except

-14-

that any modifications or amendments to the DIP Documents that shorten the maturity thereof or increase the aggregate commitments thereunder or the rate of interest payable with respect thereto shall be on notice and subject to a hearing and Bankruptcy Court approval, as necessary;

(iii)    the non-refundable and~~, upon entry of this Interim Order,~~ irrevocable payment to each of the DIP Lenders or the DIP Agent, as applicable, of the fees referred to in the DIP Documents (which fees, in each case, ~~shall be~~were, and ~~shall~~were be deemed to have been, approved upon entry of ~~this~~the Interim Order, and which fees shall not be subject to any challenge, contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of any indemnification obligations under the DIP Documents, including:

- a closing fee of 5.0% of the aggregate principal amount of the New Money DIP Commitments (the "Closing Fee"), which shall be paid in immediately available funds on the Effective Date (as defined in the DIP Credit Agreement);

- An agency fee of $100,000 per annum to the DIP Agent on account of managing agency and administrative costs (the "Agency Fee"), which shall be paid in immediately available funds on the Effective Date (as defined in the DIP Credit Agreement);

- Audit and collateral monitoring fees on account of visits to any or all of the Loan Parties and inspections, audits, physical counts, valuations, appraisals, environmental site assessments and/or examinations of any or all of the Loan Parties conducted by representatives of the DIP Agent from time to time, including (i) $1,500 per day per examiner plus the examiner's out-of-pocket costs and reasonable expenses incurred in connection with all such visits, inspections, audits, physical counts, valuations, appraisals,

-15-

environmental site assessments and/or examinations and (ii) the cost of all visits, inspections, audits, physical counts, valuations, appraisals, environmental site assessments and/or examinations conducted by a third party on behalf of the DIP Agent (the "Audit and Collateral Monitoring Fees"); and

- an exit fee (the "Exit Fee") equal to 5.00% of the aggregate principal amount of the New Money DIP Commitments and~~, subject to entry of the Final Order,~~ an Exit Fee equal to 5.00% of the aggregate principal amount of the Roll-Up Loans, which Exit Fee shall be payable at the times specified in the DIP Credit Agreement (but in no event later than the date of repayment in full of all other DIP Obligations thereunder, or, if sooner, the date of a deemed payment or reduction of the DIP Obligations in connection with any credit bit by the DIP Agent or DIP Lenders) provided that, to the extent that (i) Second Additional Term Loans (as defined in the Prepetition 1L Credit Agreement) have been converted into Roll-Up Loans and (ii) the Roll-Up Loans include the fee of 4.00% payable on the Second Additional Term Loans (in accordance with the agreement entered into in connection with the Second Additional Term Loans and Section 2.01(a)(iv) of the DIP Credit Agreement), then only an additional 1.00% Exit Fee shall apply to such amount of Roll-Up Loans (which amount, for the avoidance of doubt, shall include the aggregate amount of Roll-Up Loans under clauses (i) and (ii) above).

(iv)     make the payments on account of the Adequate Protection Obligations provided for in this ~~Interim~~Final Order; and

(v)     the performance of all other acts required under or in connection with the DIP Documents.

(e)     Upon execution and delivery of the DIP Credit Agreement and the other DIP Documents, such DIP Documents shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto in accordance with their respective terms and the terms of ~~this~~the Interim Order and this Final Order for all purposes during the Chapter 11 Cases, any subsequently converted Case of any Debtor to a case under chapter 7 of the Bankruptcy Code, or after the dismissal of any Case.  No obligation, payment, transfer, or

grant of security under the DIP Credit Agreement, the other DIP Documents or this ~~Interim~~Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under Bankruptcy Code sections 502(d), 548 or 549 or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transaction Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(f)     The Guarantors hereby are authorized and directed to jointly, severally and unconditionally guarantee in full all of the DIP Obligations of the Borrower and to incur any DIP Obligations and DIP Liens in connection therewith.

7.      *DIP Budget.*

(a)      Except as otherwise provided herein or in the DIP Documents, the Debtors may only use Cash Collateral and the proceeds of the DIP Facility in accordance with a projected statement of sources and uses of cash for the Debtors for the 13 calendar weeks (but not any preceding weeks) attached hereto as **Exhibit 1** (as may be amended, replaced, supplemented or otherwise modified in accordance with the terms of this ~~Interim~~Final Order and the DIP Documents, the "<u>DIP Budget</u>"), subject to permitted variances as set forth in the DIP Documents, including without limitation for: (A) working capital requirements; (B) general corporate purposes; and (C) the costs and expenses (including making payments on account of the Adequate Protection Obligations hereunder and payment of the allowed fees and expenses of professionals retained by the Debtors' estates) of administering the Chapter 11 Cases (including payments under the Carve Out as provided herein).  On the Monday (or, if such Monday is not a Business Day (as defined in the DIP Credit Agreement), the immediately succeeding Business Day) of each week following the week in which the Petition Date occurs, the Debtors shall deliver an updated DIP Budget, in each case substantially in the form attached hereto as **Exhibit 1** (with only such changes thereto as the Required Lenders shall agree in their sole discretion) or is otherwise in form and substance satisfactory to the Required Lenders in their sole discretion.

(b)    By 7:00 p.m. (New York City Time) on the third (3rd) Business Day after the end of each Testing Period (as defined in the DIP Credit Agreement), commencing with the Testing Period that ends on the last day of the third (3rd) Weekly Period after the Petition Date and weekly, the Debtors shall deliver to (i) the DIP Agent, and (ii) the DIP Lenders (with a copy to the DIP Lenders' advisors), a variance report, in form and substance satisfactory to the Required Lenders, showing for the Testing Period (1) the variance (as compared to the applicable DIP Budget) of the cash receipts (on a line item by line item basis and an aggregate basis for all line items) of the Debtors for the applicable period, and (2) the variance (as compared to the applicable DIP Budget) of the cash disbursements (on a line item by line item basis and an aggregate basis for all line items) made by the Debtors set forth in the DIP Budget for the applicable period (the "Variance Report").  Without giving effect to the making of DIP Loans or the repayments or prepayments of DIP Loans, as of the last day of each four-week period (or any portion thereof) commencing for the period ended after the fourth full week after the Petition Date), it shall be an Event of Default under the DIP Documents if:  (i) disbursements (as set forth in the Variance Report) for such period exceed 110% of the amount of disbursements projected in the applicable DIP Budget; or (ii) receipts (as set forth in the Variance Report) for such period to be less than 90% of the amount of receipts projected in the applicable DIP Budget.

(c)    The consent of the DIP Lenders to any applicable DIP Budget shall not be construed as consent to the use of any Cash Collateral or DIP Loans after the occurrence of an Event of Default (as defined in the DIP Credit Agreement), regardless of whether the aggregate funds shown on any applicable DIP Budget have been expended.

8.    *Reporting Requirements/Access to Records*.  The Debtors shall provide the DIP Lenders with all reporting and other information required to be provided to the DIP Agent under

the DIP Documents.  In addition to, and without limiting, whatever rights to access the DIP Agent and the DIP Lenders have under the DIP Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the DIP Agent and the DIP Lenders to: (i) have access to and inspect the Debtors' assets; (ii) examine the Debtors' books and records; and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers and relevant financial advisors; *provided that* nothing in this paragraph 8 or otherwise (x) shall require the Debtors or their advisors to furnish to, or discuss with, the DIP Agent and the DIP Lenders any materials (whether prepared by the Debtors' financial advisors or legal advisors or otherwise) or other information subject to any attorney-client or other privilege or confidentiality obligations or (y) shall be construed to obligate any of the aforementioned advisors to disclose any information or to otherwise take or refrain from taking any action, absent an express contractual requirement to do so.

9.      *DIP Superpriority Claims*.  Pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall constitute allowed senior administrative expense claims of the DIP Agent and the DIP Lenders, against each of the Debtors' estates (the "DIP Superpriority Claims"), without the need to file any proof of claim or request for payment of administrative expenses, with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 or otherwise, whether or not such expenses or

claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of Bankruptcy Code section 1129(a)(9)(A) be considered administrative expenses allowed under Bankruptcy Code section 503(b) and which shall be payable from and, subject to paragraph 22 of this ~~Interim~~Final Order, have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including~~, upon entry of~~ the ~~Final Order, the~~ proceeds of any claims or causes of action arising under chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>" and any proceeds thereof, the "<u>Avoidance Proceeds</u>"), subject only to the payment of the Carve Out to the extent specifically provided for herein.  Except as set forth in, or permitted by, this ~~Interim~~Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

10.     *DIP Liens*.  As security for the DIP Obligations, the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "<u>DIP Collateral</u>"), subject only to the payment of the Carve Out to the extent specifically provided for herein and the Permitted Liens (if any) (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Agent and the DIP Lenders, pursuant to this ~~Interim~~Final Order and the DIP Documents, the "<u>DIP Liens</u>").  Other than as set forth for Avoidance Actions within, the DIP Liens ~~shall be~~were effective and automatically perfected upon the date of ~~this~~the Interim Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of, or over, any DIP Collateral (as defined herein):

-21-

(a)      First Lien on Unencumbered Property.    Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (or perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b)), including, without limitation, any unencumbered cash of the Debtors (whether maintained with the DIP Agent or otherwise) and any investment of such cash, accounts, inventory, goods, contract rights, mineral rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, intercompany claims, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims (including, without limitation, any commercial tort claims against directors and officers of the Debtors), securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, vehicles, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, causes of action (excluding Avoidance Actions but including, upon entry of the Final Order, the Avoidance Proceeds), and all cash and non-cash proceeds, rents, products, substitutions, accessions, profits and supporting obligations of any of the collateral described above, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located.

(b)      <u>Liens Priming the Prepetition First Liens and Prepetition Second Liens</u>.  Pursuant

to Bankruptcy Code section 364(d)(1), a valid, binding, continuing, enforceable, fully-perfected

first priority senior priming security interest in and lien upon all prepetition and postpetition

property of the Debtors including, without limitation, the Prepetition Collateral, Cash Collateral,

and any investment of such cash, accounts, inventory, goods, contract rights, mineral rights,

instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor,

accounts receivable, receivables and receivables records, general intangibles, payment

intangibles, tax or other refunds, insurance proceeds, letters of credit, intercompany claims,

contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort

claims (including, without limitation, any commercial tort claims against directors and officers

of the Debtors), securities accounts, instruments, investment property, letter-of-credit rights,

supporting obligations, vehicles, machinery and equipment, real property, leases (and proceeds

from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other

equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned

subsidiaries, money, investment property, causes of action, and all cash and non-cash proceeds,

rents, products, substitutions, accessions, profits and supporting obligations of any of the

collateral described above, whether in existence on the Petition Date or thereafter created,

acquired, or arising and wherever located, that is subject to any of the Prepetition First Liens

securing the Prepetition 1L Obligations or the Prepetition Second Liens securing the Prepetition

2L Obligations.

(c)      <u>Liens Junior to Certain Other Liens</u>.      Pursuant to Bankruptcy Code section

364(c)(3), a valid, binding, continuing, enforceable, fully-perfected security interest in and lien

upon all prepetition and postpetition property of the Debtors (other than the property described in

clauses (a) or (b) of this paragraph 10, as to which the liens and security interests in favor of the DIP Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date, if any, that are senior to the liens securing the Prepetition 1L Obligations or to valid and unavoidable liens in existence immediately prior to the Petition Date, if any, that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b) that are senior to the liens securing the Prepetition 1L Obligations, which security interests and liens in favor of the DIP Agent and the DIP Lenders are junior only to such valid, perfected and unavoidable liens (collectively, the "Permitted Liens").

11.    *Carve Out.*

(a)    Carve Out.  As used in this ~~Interim~~Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000.00 incurred by a trustee under Bankruptcy Code section 726(b) (without regard to the notice set forth in (iii) below); (iii) to the extent allowed, whether by interim order, procedural order, or otherwise, and, with respect to the amounts in clause (x) below, to the extent provided for in the DIP Budget, and all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and an official committee of unsecured creditors (the "Creditors' Committee"), if any, pursuant to Bankruptcy Code section 328 or 1103 (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") (x) at any time before or on the first business day following delivery by the DIP Agent

-24-

or the Required Lenders of a Carve Out Trigger Notice (as defined herein), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice (but not to exceed the amount of Allowed Professional Fees specified in the applicable DIP Budget for the period from the Petition Date to the date of the Carve Out Trigger Notice, the "Pre-Carve Out Trigger Amount"), plus (y) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $200,000 incurred after the first business day following delivery of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, plus (z) ~~up to $2,500,000 on account of~~any amounts required to be paid to Guggenheim Securities, LLC on account of any Transaction Fee under and as defined in that certain engagement letter between Guggenheim Securities, LLC and the Debtors, effective as of August 11, 2023 (the "GS Engagement Letter"), incurred at any time, before or after delivery of a Carve-Out Trigger Notice, and payable under sections 328, 330, and/or 331 of the Bankruptcy Code, and allowed by order of this Court at any time (provided, notwithstanding the foregoing, nothing herein shall preclude, prevent or limit any amount of any Sale Transaction Fee under and as defined in the GS Engagement Letter from being paid from the proceeds of the relevant Sale Transaction (as defined in the GS Engagement Letter) to the extent provided in any other order of the Court) (the amounts set forth in clauses (y) and (z) being the "Post-Carve Out Trigger Notice Cap" and the amounts set forth in clauses (x), (y) and (z), net of any unused retainers held by or on behalf of such Professional Persons, collectively, the "Carve-Out Amount").  For the avoidance of doubt, the maximum aggregate Pre-Carve-Out Trigger Amount shall not exceed the cumulative amount set forth in the applicable DIP Budget for the Professional Persons incurred from the Petition Date to the date of the Carve Out Trigger Notice.  Within three business days of the receipt of a Carve-Out Trigger Notice, each Professional Person shall provide its

reasonable, good-faith estimate of the amount of its fees and expenses to be included in the Pre-Carve Out Trigger Amount.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent or the Required Lenders to the Debtors, their lead restructuring counsel, the U.S. Trustee, and lead counsel to the Creditors' Committee (if appointed) providing that a Termination Event has occurred and stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    The Debtors shall be authorized and permitted to establish and maintain an escrow, to be held solely for the benefit of the Professional Persons and fund such escrow on a weekly basis the amount of the professional fees for the prior week set forth in the DIP Budget (solely to the extent of Carve-Out Amounts deposited, the "Funded Reserve Account"), to satisfy the Carve-Out.  The Funded Reserve Account shall be funded on a weekly basis (starting on the Closing Date and then on the first business day of each week, and ending on the date upon which a Carve-Out Trigger Notice is delivered) with the amount for Professional Persons set forth in the DIP Budget for that week.  After the delivery of a Carve-Out Trigger Notice, notwithstanding anything herein to the contrary, the Debtors shall be authorized to deposit cash on hand into the Funded Reserve Account up to the amount of the Carve-Out Amount, less cash the Debtors reasonably believe is necessary to maintain operations.  Except with respect to any amounts covered by 11(a)(iii)(z) above, the funds on deposit in the Funded Reserve Account shall be the sole source available to satisfy the obligations benefiting from the Carve-Out.  The Debtors shall disburse funds on deposit in the Funded Reserve Account to satisfy the obligations benefiting from the Carve-Out, and shall be permitted to make such disbursement at any time, including following delivery of a Carve-Out Trigger Notice.

(c)    <u>Application of Funded Reserve Account</u>.  All funds in the Funded Reserve Account shall be used to pay the obligations set forth in Carve Out, until paid in full, and then, to the extent the Funded Reserve Account has not been reduced to zero, as follows: (1) first, to the DIP Agent for the benefit of the DIP Lenders, in accordance with the DIP Credit Agreement, until the DIP Facility is paid in full; (2) second, to the Prepetition 1L Agent, for the benefit of the Prepetition 1L Lenders, in accordance with the Prepetition 1L Documents; and (3) third, to the Prepetition 2L Collateral Agent, for the benefit of the Prepetition 2L Lenders, in accordance with the Prepetition 2L Documents.  Notwithstanding anything to the contrary in the DIP Documents, ~~this~~<u>the</u> Interim Order, or ~~the~~<u>this</u> Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Funded Reserve Account has been fully funded, but shall have DIP Liens and DIP Superpriority Claims in any residual interest in the funds constituting the Funded Reserve Account, with any excess paid to the DIP Agent for application.  Further, notwithstanding anything to the contrary in ~~this~~<u>the</u> Interim Order or ~~the~~<u>this</u> Final Order, (i) the failure of the Funded Reserve Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (ii) in no way shall the DIP Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Funded Reserve Account or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors, nor as a cap or limitation on the amount of fees due and payable by the Debtors under paragraph 11(a)(i) of this ~~Interim~~<u>Final</u> Order.  For the avoidance of doubt and notwithstanding anything to the contrary in this ~~Interim~~<u>Final</u> Order, the DIP  Facility, any Prepetition 1L Documents or any Prepetition 2L Documents, the Carve Out shall be senior to the DIP Superpriority Claims, the DIP Liens, the First Lien Adequate Protection Liens (as defined

-27-

herein), the First Lien Adequate Protection Superpriority Claim (as defined herein), the Prepetition First Liens, the Prepetition Second Liens, the Prepetition 1L Obligations, the Prepetition 2L Obligations, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations, the Prepetition 1L Obligations, or the Prepetition 2L Obligations.

(d)    <u>Reduction for Unused Retainers</u>.  Prior to any payment from the Funded Reserve Account, each Professional Person must apply any unused retainers held by or on behalf of such Professional Person as of the Petition Date to satisfy its Allowed Professional Fees prior to receiving payment from the funds in the Funded Reserve Amount for its Allowed Professional Fees.

(e)    <u>Carve Out Procedure</u>.  Debtors must, upon reasonable request of DIP Agent, but no less frequently than once every two (2) weeks, provide to DIP Agent a written report ("<u>Carve Out Report</u>"), in which Debtors disclose their then current estimate of:  (1) the aggregate amount of unpaid professional fees, costs, and expenses accrued or incurred by the Professional Persons through the date of the Carve Out Report; and (2) the projected fees, costs, and expenses of the Professional Persons for the thirty (30) day period following the date of such Carve Out Report.

(f)    <u>Reservation of Rights</u>.  Nothing herein may be construed as consent by the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties to the allowance of any fees, costs, or expenses of the Professionals Persons or will affect the right of DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties to object to the allowance and payment of any such fees, costs, or expenses, or the right of the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties to the return of any portion of the Carve Out that is funded with respect to fees, costs, and expenses for a Professional Person that are approved on an interim basis, but that are later denied on a final basis.

-28-

(g)    <u>No Direct Obligation to Pay Allowed Professional Fees</u>.  Subject to paragraph 12 of this ~~Interim~~<u>Final</u> Order, neither the DIP Agent, the DIP Lenders, nor the Prepetition 1L Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this ~~Interim~~<u>Final</u> Order or otherwise shall be construed to obligate DIP Agent, the DIP Lenders, nor the Prepetition 1L Secured Parties, nor the Debtors, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

12.    *Limitation on Charging Expenses Against Collateral*.  ~~Subject to entry of the Final Order (but retroactive to the~~<u>Effective as of the</u> Petition Date~~)~~, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the DIP Collateral (except to the extent of the Carve Out), the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties pursuant to Bankruptcy Code sections 105(a) or 506(c) or any similar principle of law or equity, without the prior written consent of the DIP Agent, the DIP Lenders, and the Prepetition 1L Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties.

13.    *No Marshaling/Application of Proceeds*.  ~~Subject to entry of the Final Order (but retroactive to the~~<u>Effective as of the</u> Petition Date~~)~~, the DIP Agent and the Prepetition 1L Agent shall be entitled to apply the payments or proceeds of the DIP Collateral and the Prepetition

-29-

Collateral in accordance with the provisions of ~~this~~the Interim Order or ~~the~~this Final Order, as applicable, the DIP Documents, the Intercreditor Agreement, or the Prepetition 1L Documents, each as applicable, and in no event shall the DIP Agent, the DIP Lenders, or any of the Prepetition 1L Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral.

14.     *Equities of the Case*.   ~~Subject to entry of the Final Order (but retroactive to the~~Effective as of the Petition Date~~)~~, (i) the DIP Agent, the DIP Lenders, and the Prepetition 1L Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and (ii) the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, products, offspring or profits of any of the Prepetition Collateral or the DIP Collateral, as applicable.

15.     *Use of Cash Collateral*.   The Debtors are hereby authorized to use all Cash Collateral solely in accordance with this ~~Interim~~Final Order, the DIP Documents and the applicable DIP Budget including, without limitation, to make payments on account of the Adequate Protection Obligations provided for in ~~this~~the Interim Order, ~~from the date of~~ this ~~Interim~~Final Order ~~through~~ and ~~including~~ the ~~date of the Final Hearing~~DIP Documents.  Except on the terms and conditions of this ~~Interim~~Final Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

16.    *Adequate Protection for the Prepetition 1L Secured Parties*.  Subject only to the Carve Out, the rights and limitations set forth in paragraphs 27 and 28 of this ~~Interim~~Final Order, and the terms of this ~~Interim~~Final Order, pursuant to Bankruptcy Code sections 361, 363(e), and 364, and in consideration of the stipulations and consents set forth herein, as adequate protection of their interests in the Prepetition Collateral (including Cash Collateral), for and equal in amount to the aggregate postpetition diminution in value of such interests (each such diminution, a "Diminution in Value"), resulting from the imposition of the priming DIP Liens on the Prepetition Collateral, the Carve Out, the Debtors' sale, lease or use of the Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay, and/or any other reason for which adequate protection may be granted under the Bankruptcy Code, the Prepetition 1L Agent, for the benefit of themselves and the Prepetition 1L Lenders, are hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)      First Lien Adequate Protection Liens.  As security for and solely to the extent of any Diminution in Value, additional and replacement valid, binding, enforceable non-avoidable, and effective and automatically perfected postpetition security interests in, and liens on, as of the date of ~~this~~the Interim Order (the "First Lien Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, all DIP Collateral (which for the avoidance of doubt, excludes Avoidance Actions, but includes~~,~~ ~~upon entry of the Final Order,~~ the Avoidance Proceeds).   Subject to the terms of this ~~Interim~~Final Order, the First Lien Adequate Protection Liens shall be subordinate only to the (A) Carve Out, (B) the DIP Liens, and (C) the Permitted Liens (if any).  The First Lien Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (including, for the avoidance of doubt, the Prepetition First Liens and any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code section 551).

10989514v.5

(b)    First Lien Adequate Protection Superpriority Claim.    As further adequate protection, and to the extent provided by Bankruptcy Code sections 503(b) and 507(b), an allowed administrative expense claim in the Chapter 11 Cases to the extent of any postpetition Diminution in Value ahead of and senior to any and all other administrative expense claims in such Chapter 11 Cases, except the Carve Out and the DIP Superpriority Claims (the "First Lien Adequate Protection Superpriority Claim").    The First Lien Adequate Protection Superpriority Claim shall be payable from and, subject to paragraph 22 of this ~~Interim~~Final Order, have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding Avoidance Actions, but including~~, subject to entry of the Final Order, the~~ the Avoidance Proceeds).    Subject to the Carve Out and the DIP Superpriority Claims in all respects, the First Lien Adequate Protection Superpriority Claim will not be junior to any claims and shall have priority over all administrative expense claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) ~~(subject to entry of the Final Order)~~, 507(a), 507(b), 546(d), 726, 1113 and 1114.    The Prepetition 1L Secured Parties shall not receive or retain any payments, property or other amounts in respect of the First Lien Adequate Protection Superpriority Claims under Bankruptcy Code section 507(b) granted hereunder unless and until the DIP Obligations have been indefeasibly paid in full, in cash, or satisfied in a manner otherwise agreed to by the Required Lenders, in each case as provided in the DIP Documents.

(c)      <u>Fees and Expenses</u>.  As further adequate protection, the Debtors are authorized and directed to pay, without further Bankruptcy Court order, reasonable and documented fees and expenses (the "<u>First Lien Adequate Protection Fees</u>"), whether incurred before or after the Petition Date, of the Prepetition 1L Agent and Prepetition 1L Lenders, including, without limitation, the reasonable and documented fees and expenses of Ropes & Gray, LLP and Chipman Brown Cicero & Cole, LLP counsel to the Prepetition 1L Agent.  The invoices for such fees and expenses shall not be required to comply with any particular format, may be in summary form only, and may include redactions.  The applicable professional shall serve copies of the invoices supporting the First Lien Adequate Protection Fees on counsel to the Debtors, the U.S. Trustee and counsel to the Creditors' Committee (if any), and any First Lien Adequate Protection Fees shall be subject to prior ten day review by the Debtors, the U.S. Trustee and the Creditors' Committee (if any), and in the event the Debtors, the U.S. Trustee or the Creditors' Committee shall file with this Bankruptcy Court an objection to any such legal invoice, the portion of such legal invoice subject to such objection shall not be paid until resolution of such objection by this Bankruptcy Court.  If no objection is filed within such ten day review period, such invoice shall be paid without further order of the Bankruptcy Court within five days following the expiration of the foregoing review period and shall not be subject to any further review, challenge, or disgorgement.  For the avoidance doubt, the provision of such invoices shall not constitute a waiver of attorney- client privilege or any benefits of the attorney work product doctrine.

(d)     First Lien Accrued Adequate Protection Payments.    As further adequate protection, the Prepetition 1L Agent, on behalf of the Prepetition 1L Lenders, shall receive, ~~upon entry of this~~effective as of the date of the Interim Order, monthly adequate protection payments (the "First Lien Accrued Adequate Protection Payments") payable in-kind on the thirtieth day of each month equal to the interest at the Applicable Rate plus the Default Rate (as such terms are defined in the Prepetition 1L Credit Agreement) that would otherwise be owed to the Prepetition 1L Lenders under the Prepetition 1L Credit Agreement during such monthly period in respect of the Prepetition 1L Obligations, until such time as the full Prepetition 1L Obligations Amount is indefeasibly and irrevocably (x) paid in full, in cash; or (y) fully converted into DIP Obligations.

17.     *Section 507(b) Reservation*.    Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Prepetition 1L Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Chapter 11 Cases.  Nothing contained herein shall be deemed a finding by the Bankruptcy Court, or an acknowledgment by any of the Prepetition 1L Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition 1L Secured Parties against any diminution in value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

18.     *Restrictions on Disposition of Material Assets Outside the Ordinary Course of Business*.  Except as expressly permitted under the "first day" pleadings or the DIP Documents, the Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of this Bankruptcy Court to the extent required by Bankruptcy Code section 363, without obtaining the prior written consent of the Required Lenders at least five days (or such shorter period as the DIP Agent, at the direction of the Required Lenders, may

agree) prior to the date on which the Debtors seek the Bankruptcy Court's authority for such use, sale, or lease.  Except as otherwise provided under the DIP Documents, subject to the Carve Out and Permitted Liens, in the event of any such sale, lease, transfer, license, or other disposition of property of the Debtors that constitutes DIP Collateral outside the ordinary course of business (to the extent permitted by the DIP Documents and this ~~Interim~~Final Order), the Debtors are authorized and shall promptly pay, without further notice or order of this Bankruptcy Court, the DIP Agent, for the benefit of the DIP Parties, 100% of the net cash proceeds resulting therefrom no later than the second business day following receipt of such proceeds.  Upon indefeasible and irrevocable payment in full of the DIP Obligations, subject to the Carve Out and Permitted Liens, and subject to the rights and limitations set forth in paragraphs 27 and 28 of this ~~Interim~~Final Order, the Debtors are authorized and shall promptly pay, without further notice or order of this Bankruptcy Court, the Prepetition Agent, for the benefit of the Prepetition 1L Lenders, 100% of the net cash proceeds resulting from any such sale, lease, transfer, license, or other disposition of property of the Debtors that constitutes DIP Collateral outside the ordinary course of business (to the extent permitted by the DIP Documents and this ~~Interim~~Final Order) no later than the second business day following receipt of such proceeds.  Except as otherwise provided under the DIP Documents, subject to the Carve Out and Permitted Liens, in the event of any casualty, condemnation, or similar event with respect to property that constitutes DIP Collateral, the Debtors are authorized and shall promptly pay to the DIP Agent, for the benefit of the DIP Parties, any insurance proceeds, condemnation award, or similar payment (excluding any amounts on account of any D&O policies) no later than the second business day following receipt of payment by the Debtors, unless the Required Lenders consent, each in its sole discretion, in writing, to the funds being reinvested by the Debtors.

-36-

19.    *Insurance*.  At all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date.  ~~Upon entry of this~~The DIP Agent is, and effective as of the date of the Interim Order, ~~the DIP Agent shall be, and shall be~~was deemed to be, without any further action or notice, named as additional insured and lender's loss payee on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

20.    *Reservation of Rights of the DIP Agent, DIP Lenders, and Prepetition 1L Secured Parties*.  Notwithstanding any other provision in this ~~Interim~~Final Order to the contrary, the entry of this ~~Interim~~Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Prepetition 1L Secured Parties to seek any other or supplemental relief in respect of the Debtors including the right to seek additional adequate protection; <u>provided</u> that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent and the DIP Lenders granted under this ~~Interim~~Final Order and the DIP Documents; (b) any of the rights of the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties to (i) request modification of the automatic stay of Bankruptcy Code section 362, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases, (iii) seek to propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties.  The

-37-

delay in or failure of the DIP Agent, the DIP Lenders and/or the Prepetition 1L Secured Parties to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Agent's, the DIP Lenders' or the Prepetition 1L Secured Parties' rights and remedies.

21.    *Termination Event*.  Subject to paragraph 22, the Debtors' authorization to use Cash Collateral and the proceeds of the DIP Facility pursuant to this ~~Interim~~Final Order shall automatically terminate, and the DIP Obligations shall become due and payable, without further notice or action by the Bankruptcy Court following the earliest to occur of any of the following (each a "Termination Event"): (a) the occurrence of an Event of Default (as defined in the DIP Credit Agreement); (b) the Debtors' failure to (i) comply with any provision of this ~~Interim~~Final Order, (ii) comply with any other covenant or agreement specified in this ~~Interim~~Final Order or the DIP Credit Agreement (which covenants and agreements, together with any applicable grace periods, are explicitly incorporated by reference into this ~~Interim~~Final Order), or (iii) comply with any of the milestones set forth in Schedule 7.01(x) of the DIP Credit Agreement; or (c) the occurrence of the Maturity Date (as defined in the DIP Credit Agreement).

22.    *Remedies Upon a Termination Event*.  The Debtors shall immediately provide notice to counsel to the DIP Agent, the DIP Lenders, and the Prepetition 1L Agent (with a copy to counsel to the Creditors' Committee (if any)), of the occurrence of any Termination Event, at which time the Debtors' ability to use Cash Collateral hereunder shall terminate (subject to the proviso at the end of this paragraph 22) and the DIP Obligations shall become due and payable. Upon the occurrence of a Termination Event and following the giving of not less than five calendar days' advance written notice, which may be by email (the "Enforcement Notice"), to counsel to the Debtors, the U.S. Trustee, and counsel to the Creditors' Committee (if any) (the "Notice Period"), (a) the DIP Agent and the DIP Lenders may exercise any rights and remedies

against the DIP Collateral available to them under this ~~Interim~~Final Order, the DIP Documents, and applicable non-bankruptcy law, including but not limited to terminating all commitments to extend credit under the DIP Facility and (b) the Prepetition 1L Secured Parties may exercise any rights and remedies to satisfy the Prepetition 1L Obligations, the First Lien Adequate Protection Superpriority Claims and any other First Lien Adequate Protection Obligations, subject to the DIP Obligations, the DIP Superpriority Claims, Permitted Liens and, in each case, the Carve Out. The automatic stay pursuant to Bankruptcy Code section 362 shall be automatically terminated with respect to the DIP Agent, the DIP Lenders, and the Prepetition 1L Secured Parties at the end of the Notice Period, without further notice or order of the Bankruptcy Court, unless the DIP Agent, the DIP Lenders, the Prepetition 1L Agent, and the Prepetition 1L Lenders elect otherwise in a written notice to the Debtors, which may be by email.  Upon termination of the automatic stay, the DIP Agent, the DIP Lenders, and the Prepetition 1L Secured Parties shall be permitted to exercise all rights and remedies set forth herein, in the DIP Documents, and the Prepetition 1L Documents, as applicable, and as otherwise available at law against the DIP Collateral or Prepetition Collateral, without any further order of or application or motion to the Bankruptcy Court, and without restriction or restraint imposed by any stay under Bankruptcy Code sections 362 or 105, or otherwise, against (x) the enforcement of the liens and security interests in the DIP Collateral or the Prepetition Collateral, or (y) the pursuit of any other rights and remedies granted to the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties pursuant to the DIP Documents, the Prepetition 1L Documents, or this ~~Interim~~Final Order; <u>provided</u> that during the Notice Period the Debtors may use the proceeds of the DIP Facility (to the extent drawn prior to the occurrence of a Termination Event) or Cash Collateral only to (i) fund operations in accordance with the DIP Credit Agreement and the DIP Budget and (ii) to

fund the Funded Reserve Account; provided further that during the Notice Period the Debtors, the DIP Lenders, and the DIP Agent consent to a hearing on an expedited basis to consider whether a Termination Event has occurred; provided further, that if a hearing to consider the foregoing is requested to be heard before the end of the Notice Period but is scheduled for a later date by the Bankruptcy Court, the Notice Period shall be automatically extended to the date of such hearing, but in no event later than five business days after delivery of the Enforcement Notice; provided further that any fees and expenses incurred by the Debtors or the Creditors Committee during the Notice Period shall permanently reduce the Post-Carve Out Trigger Notice Cap.  Any party in interest shall be entitled to seek an emergency hearing for the purpose of contesting whether assets constitute assets of the Debtors' estates and nothing in this ~~Interim~~Final Order shall affect any party in interest's rights or positions at such hearing.

23.    *No Waiver for Failure to Seek Relief*.  The failure or delay of the DIP Agent, the DIP Lenders or any of the Prepetition 1L Secured Parties to exercise rights and remedies under this ~~Interim~~Final Order, the DIP Documents, the Prepetition 1L Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise.

24.    *Perfection of the DIP Liens and Adequate Protection Liens*.

(a)    The DIP Agent and the Prepetition 1L Agent are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder.  Whether or not the DIP Agent or the Prepetition 1L

Agent shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, such liens and security interests shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this ~~Interim~~Final Order, and subject to the rights and limitations set forth in paragraphs 27 and 28 of this ~~Interim~~Final Order), at the time and on the date of entry of ~~this~~the Interim Order.  Upon the request of the DIP Agent or the Prepetition 1L Agent, as applicable, each of the Prepetition 1L Secured Parties and the Debtors, without any further consent of any party, is authorized to take, execute, deliver, and file such instruments (in the case of the Prepetition 1L Secured Parties, without representation or warranty of any kind) to enable the DIP Agent or the Prepetition 1L Agent to further validate, perfect, preserve, and enforce the DIP Liens and the First Lien Adequate Protection Liens, respectively.  All such documents will be deemed to have been recorded and filed as of the Petition Date.  Notwithstanding anything to the contrary herein, but subject to the rights and limitations set forth in paragraphs 27 and 28 of this ~~Interim~~Final Order, any financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction previously filed by the Prepetition 1L Agent in order to validate and perfect the liens securing the Prepetition 1L Obligations shall remain in existence and shall be deemed postpetition filings to validate and perfect the liens securing the Term Loans, including, without limitations, the Roll Up Loans ~~(subject to entry of the Final Order)~~.

(b)    A certified copy of ~~this~~the Interim Order or this Final Order may, in the discretion of the DIP Agent or the Prepetition 1L Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar

instruments, and all filing offices are hereby authorized to accept such certified copy of ~~this~~the Interim Order <u>or this Final Order</u> for filing and recording; <u>provided</u>, <u>however</u>, that notwithstanding the date of any such filing, the date of such perfection shall be the date of ~~this~~the Interim Order.

(c)    ~~Effective upon entry of the Final Order, any~~<u>Any</u> provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords or other parties in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, shall be deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Thereupon, any such provision shall have no force and effect with respect to the granting of the DIP Liens and the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment, and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or ~~the~~<u>this</u> Final Order.

25.    *Preservation of Rights Granted Under this* ~~*Interim*~~<u>*Final*</u> *Order*.

(a)    Subject to the Carve Out, other than as set forth in this ~~Interim~~<u>Final</u> Order, neither the DIP Liens nor the First Lien Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases or arising after the Petition Date, and neither the DIP Liens nor the First Lien Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

(b)    To the extent provided in Section 364(e), in the event this ~~Interim~~<u>Final</u> Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the Prepetition 1L Secured Parties hereunder arising prior to the effective date of any

-42-

such vacatur, reversal, or modification of this ~~Interim~~Final Order shall be governed in all respects by the original provisions of this ~~Interim~~Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the Prepetition 1L Secured Parties shall be entitled to the protections afforded in Bankruptcy Code section 363(m) with respect to all uses of the Prepetition Collateral (including the Cash Collateral) and all Adequate Protection Obligations.

(c)     Subject to the Carve Out, unless and until all DIP Obligations, Prepetition 1L Obligations, and First Lien Adequate Protection Obligations are indefeasibly paid in full, in cash, and all commitments to extend credit under the DIP Facility are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the DIP Documents and with the prior written consent of the DIP Agent and the Required Lenders (x) any modification, stay, vacatur, or amendment of this ~~Interim~~Final Order, (y) a priority claim for any administrative expense, secured claim or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in Bankruptcy Code sections 503(b), 507(a) or 507(b)) in any of the Chapter 11 Cases, equal or superior to the DIP Superpriority Claims, the First Lien Adequate Protection Superpriority Claims, and the Prepetition 1L Obligations (or the liens and security interests securing such claims and obligations), or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under the DIP Documents, any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens, the First Lien Adequate Protection Liens, or the Prepetition First Liens, as the case may be; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this ~~Interim~~Final

-43-

Order; or (iv) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor.  Further, unless and until all DIP Obligations, Prepetition 1L Obligations, and First Lien Adequate Protection Obligations are indefeasibly paid in full, in cash, and all commitments to extend credit under the DIP Facility are terminated, the following shall each be an Event of Default under the DIP Documents: (x) an order converting or dismissing any of the Chapter 11 Cases; (y) an order appointing a chapter 11 trustee in any of the Chapter 11 Cases; or (z) an order appointing an examiner with enlarged powers in any of the Chapter 11 Cases.

(d)    Notwithstanding any order dismissing any of the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the First Lien Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to ~~this~~the Interim Order or this Final Order, shall continue in full force and effect and shall maintain their priorities as provided in ~~this~~the Interim Order or this Final Order until all DIP Obligations and First Lien Adequate Protection Obligations are indefeasibly paid in full, in cash (and such DIP Liens, DIP Superpriority Claims, First Lien Adequate Protection Liens, First Lien Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to ~~this~~the Interim Order or this Final Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(e)     Except as expressly provided in this ~~Interim~~Final Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens (subject to the rights and limitations in paragraphs 27 and 28 of this ~~Interim~~Final Order), the First Lien Adequate Protection Superpriority Claims (subject to the rights and limitations in paragraphs 27 and 28 of this ~~Interim~~Final Order), and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition 1L Agent, and the Prepetition 1L Lenders granted by the provisions of ~~this~~the Interim Order or this Final Order and the DIP Documents shall survive, shall maintain their priority as provided in ~~this~~the Interim Order or this Final Order, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to Bankruptcy Code section 363(b) or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtors have waived any discharge as to any remaining DIP Obligations or First Lien Adequate Protection Obligations.  The terms and provisions of this ~~Interim~~Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Obligations (subject to the rights and limitations in paragraphs 27 and 28 of this ~~Interim~~Final Order) and all other rights and remedies of the DIP Parties and the Prepetition 1L Secured Parties granted by the provisions of this ~~Interim~~Final Order shall continue in full force and effect until the DIP Obligations and the

First Lien Adequate Protection Obligations are indefeasibly paid in full, in cash (or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the Required Lenders).

26.    *Expenses and Indemnification.*

(a)    All (i) reasonable and documented out-of-pocket fees and expenses incurred by professionals or consultants retained by the DIP Agent and the DIP Lenders (collectively, the "DIP Professionals"), incurred in connection with the Chapter 11 Cases (in any capacity) and the DIP Facility, whether or not the DIP Facility is successfully consummated, and (ii) reasonable and documented out-of-pocket expenses (including, without limitation, fees, disbursements and other charges of DIP Professionals) of the DIP Agent and the DIP Lenders, for enforcement costs and documentary taxes associated with the DIP Facility and the transactions contemplated thereby, are to be paid by the Debtors.  All fees and expenses described above shall be payable by the Debtors (whether accrued or incurred prior to, on, or after the Petition Date) within ten calendar days after the delivery of invoices (which invoices shall not be required to comply with any particular format and may be in summary form only and may be in redacted form to protect privileged and confidential information) to the Debtors, the U.S. Trustee, and the Creditors' Committee (if any), without the necessity of filing motions or fee applications and such fees and expenses shall not be subject to any further review, challenge, or disgorgement following the expiration of such period.

(b)    As set forth in the DIP Facility, the Debtors will, jointly and severally, indemnify the DIP Lenders, the DIP Agent, and their respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons, and members of each of the foregoing (each an "Indemnified Person"), and hold them harmless from and against any and all losses, claims, damages, costs, expenses (including but not limited to reasonable and

-46-

documented legal fees and expenses), and liabilities arising out of or relating to the execution or delivery of the DIP Credit Agreement and other DIP Documents, transactions contemplated hereby and thereby, and any actual or proposed use of the proceeds of any loans made under the DIP Facility in accordance with the terms of the DIP Credit Agreement; provided that no such person will be indemnified for costs, expenses, or liabilities to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the actual fraud, gross negligence, willful misconduct of such person (or their related persons), or a successful Claim or Defense (as defined below) in accordance with paragraphs 27 and 28 of this ~~Interim~~Final Order.  No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in an final non- appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's actual fraud, gross negligence or willful misconduct, and in no event shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

27.      *Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral*

(a)      Notwithstanding anything to the contrary set forth in this ~~Interim~~Final Order, none of the DIP Facility, the DIP Collateral, the Prepetition Collateral or the proceeds thereof, including Cash Collateral, or the Carve Out may be used: (a) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (i) against any of the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties (each in their capacities as such) or seeking relief that would impair the rights

-47-

and remedies of the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties (each in their capacities as such) under the DIP Documents, this ~~Interim~~Final Order, or the Prepetition 1L Documents to the extent permitted or provided hereunder, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties to recover on the DIP Collateral or the Prepetition Collateral, as provided for herein, or seeking affirmative relief against any of the DIP Agent, the DIP Lenders or the Prepetition 1L Secured Parties related to the DIP Obligations or the Prepetition 1L Obligations, (ii) seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Obligations, the DIP Superpriority Claims, or the DIP Agent's and the DIP Lenders' liens or security interests in the DIP Collateral, the Prepetition 1L Obligations or the Prepetition First Liens, or (iii) for monetary, injunctive, or other affirmative relief against the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties (each in their capacities as such), or their respective liens on or security interests in the DIP Collateral or the Prepetition Collateral, or the DIP Superpriority Claims, that would impair the ability of any of the DIP Agent, the DIP Lenders, or the Prepetition 1L Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations, the Prepetition 1L Obligations to the extent permitted or provided hereunder; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition First Liens) held by or on behalf of each of the Prepetition 1L

-48-

Secured Parties related to the Prepetition 1L Obligations, or by or on behalf of the DIP Agent and the DIP Lenders related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the Prepetition 1L Obligations, or the Prepetition First Liens; (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of: (x) any of the DIP Liens, the DIP Superpriority Claims, or any other rights or interests of the DIP Agent or the DIP Lenders related to the DIP Obligations or the DIP Liens; or (y) any of the Prepetition First Liens or any other rights or interests of any of the Prepetition 1L Secured Parties related to the Prepetition 1L Obligations or the Prepetition First Liens; and (e) assert any claims, defenses, or any other causes of action any non- Debtor affiliates with respect to prepetition relationships with the Debtors; <u>provided</u> that (i) no more than $25,000.00 of the proceeds of the DIP Facility, the DIP Collateral, or the Prepetition Collateral, including the Cash Collateral, in the aggregate, may be used by the Creditors' Committee, if appointed, solely to investigate the foregoing matters with respect to the Prepetition 1L Obligations, and the Prepetition First Liens within the Challenge Period (as defined herein) (the "<u>Challenge Budget</u>").

(b)        ~~Subject to entry of the Final Order, all~~<u>All</u> fees and expenses of the Committee Professionals in incurred in connection with the investigation of the matters described in paragraph 27(a) ~~(a)~~in excess of the Challenge Budget shall not be entitled to administrative expense priority pursuant to section 503(b) of the Bankruptcy Code or otherwise.

28.        *Effect of Stipulations on Third Parties*.

(a)        The Debtors' acknowledgments, stipulations, admissions, waivers, and releases set forth in ~~this~~<u>the</u> Interim Order ~~shall be~~<u>and this Final Order are</u> binding on the Debtors, their

respective representatives, successors and assigns ~~upon entry of this Interim Order~~.  The acknowledgments, stipulations, admissions, waivers, and releases contained in this ~~Interim~~Final Order shall also be binding upon the Debtors' estate and all other parties in interest, including the Creditors' Committee (if any), or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (i) such party with requisite standing, has duly filed an adversary proceeding challenging the validity, perfection, priority, extent, or enforceability of the Prepetition First Liens or the Prepetition 1L Obligations, or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests, or defenses (collectively, the "Claims and Defenses") against the Prepetition 1L Secured Parties in connection with any matter related to the Prepetition Collateral, the Prepetition First Liens or the Prepetition 1L Obligations by no later than the date that is seventy-five (75) days after the date of entry of ~~this~~the Interim Order (such time period, the "Challenge Period"); provided that in the event that, prior to the expiration of the Challenge Period, (x) these chapter 11 cases are converted to chapter 7 or (y) a chapter 11 trustee is appointed in these chapter 11 cases, then, in each such case, the Challenge Period shall be extended, solely with respect to such Trustee, until the later of (1) the Challenge Period and (2) the date that is 10 calendar days from the date such Trustee is appointed; and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding.  If no such adversary proceeding is timely filed prior to the expiration of the Challenge Period, without further order of this Bankruptcy Court: (x) the Prepetition 1L Obligations shall constitute allowed claims, not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack,

-50-

objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases, if any; (y) the Prepetition First Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected and of the priority specified in paragraphs 4(b) and 4(d), not subject to setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery; and (z) the Prepetition 1L Obligations, the Prepetition First Liens on the Prepetition Collateral, and the Prepetition 1L Secured Parties (in their capacities as such) shall not be subject to any other or further challenge and any party in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding is timely filed prior to the expiration of the Challenge Period, (A) the stipulations and admissions contained in ~~this~~the Interim Order and this Final Order shall nonetheless remain binding and preclusive on the Creditors' Committee (if any) and any other party in these cases, including any Trustee, except as to any stipulations or admissions that are specifically and expressly challenged in such adversary proceeding and (B) any Claims and Defenses not brought in such adversary proceeding shall be forever barred; provided that, if and to the extent any challenges to a particular stipulation or admission are withdrawn, denied or overruled by a final non-appealable order, such stipulation also shall be binding on the Debtors' estates and all parties in interest.

(b)    Nothing in this ~~Interim~~Final Order vests or confers on any person (as defined in the Bankruptcy Code), including any Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any challenge with respect to the Prepetition 1L Documents or the Prepetition 1L Obligations.

29.    *Release*.  Subject to the rights and limitations set forth in paragraphs 27 and 28 of this ~~Interim~~Final Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors, and assigns shall to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the DIP Lenders, the DIP Agent, the Prepetition 1L Secured Parties, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, affiliated investment funds or investment vehicles, managed, advised or sub-advised accounts, funds or other entities, investment advisors, sub-advisors or managers, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the Prepetition 1L Obligations or the Prepetition First Liens, as applicable, including, without

limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection or avoidability of the liens or claims of the DIP Agent, the DIP Lenders, and the Prepetition 1L Secured Parties.

30.    *Credit Bidding*.  (a) The DIP Agent, or any assignee or designee of the DIP Agent, acting at the direction of the Required Lenders and on behalf of the DIP Parties, shall have, pursuant and subject to Bankruptcy Code section 363(k), the right to credit bid up to the full amount of any DIP Obligations (~~with respect to~~including, without limitation, the Roll-Up Loans~~, subject to entry of the Final Order~~) in the sale of any of the DIP Collateral, including pursuant to (i) Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under Bankruptcy Code section 725, and (b) subject to the rights and limitations in paragraphs 27 and 28 of this ~~Interim~~Final Order and subject to the satisfaction of the DIP Obligations, or as otherwise consented to by the DIP Agent (at the direction of the Required Lenders), the Prepetition 1L Agent (on behalf of the Prepetition 1L Lenders) shall have the right to credit bid (x) up to the full amount of the Prepetition 1L Obligations and (y) the First Lien Adequate Protection Obligations in the sale of any of the Prepetition Collateral, including, but not limited to, pursuant to (i) Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under Bankruptcy Code section 725.  The DIP Agent, at the direction of the Required Lenders, and on behalf of the DIP Parties, shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid in connection with any credit bid by or on

behalf of the DIP Parties to any acquisition entity or joint venture formed in connection with such bid.

31.    *~~Interim~~Final Order Governs*.   In the event of any inconsistency between the provisions of ~~this~~the Interim Order ~~or,~~ the DIP Documents and this Final Order, the provisions of this ~~Interim~~Final Order shall govern.

32.    *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this ~~Interim~~Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, any Creditors' Committee appointed in these Chapter 11 Cases, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, and the Prepetition 1L Secured Parties, underlined provided that, except to the extent expressly set forth in this ~~Interim~~Final Order, the Prepetition 1L Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any Trustee or similar responsible person appointed for the estates of the Debtors.

33.    *Limitation of Liability*.   In determining to make any loan under the DIP Documents, permitting the use of Cash Collateral, or exercising any rights or remedies as and when permitted pursuant to this ~~Interim~~Final Order, the DIP Documents, or the Prepetition 1L Documents, the DIP Agent, the DIP Lenders, and the Prepetition 1L Secured Parties, shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person"

-54-

or "owner or operator" with respect to the operation or management of the Debtors or their respective business (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors, their creditors or estates, or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors. Furthermore, nothing in this ~~Interim~~Final Order, the DIP Documents or the Prepetition 1L Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition 1L Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in Bankruptcy Code section 101(2)).

34. *Effectiveness*. This ~~Interim~~Final Order shall constitute findings of fact that shall take effect *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim~~Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this ~~Interim~~Final Order.

35. ~~*Final Hearing*. The Final Hearing is scheduled for September 22, 2023 at 11:00 a.m. (prevailing Eastern Time), before the Honorable United States Bankruptcy Judge J. Kate Stickles, at the United States Bankruptcy Court for the District of Delaware. The Debtors shall promptly transmit copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Bankruptcy Court and to any Creditors' Committee after~~

the same has been appointed, or Creditors' Committee counsel, if the same shall have been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file a written objection thereto, which shall be served upon the Notice Parties, and shall also be filed with the Clerk of the Court, in each case to allow actual receipt by the foregoing on or prior to September 15, 2023 at 4:00 p.m. (prevailing Eastern Time).

35.    36. No later than two business days after the date of this ~~Interim~~Final Order, the Debtors shall serve on the Notice Parties (a) a copy of this ~~Interim~~Final Order and shall file a certificate of service no later than 24 hours after service.

36.    Chubb Reservation of Rights. For the avoidance of doubt: (i) nothing in this Final Order and any document related thereto, including the DIP Documents, alters or modifies the terms and conditions of any insurance policies or related agreements issued by ACE American Insurance Company and Federal Insurance Company and each of their U.S.-based affiliates and successors to the Debtors; provided, however, pursuant to paragraph 19 of this Final Order and the Interim Order, the DIP Agent is, and effective as of the date of the Interim Order, was deemed to be, without any further action or notice, named as additional lender's loss payee on each current insurance policy maintained by the Debtors under which policy proceeds are payable to the insured (as opposed to a third party claimant) and which in any way relates to the DIP Collateral; and (ii) the proceeds of any insurance policy issued by Chubb shall only be considered to be DIP Collateral to the extent such proceeds are payable to the Debtors (as opposed to a third party claimant) pursuant to the terms of any such applicable insurance policy.

-56-

**Exhibit 1**

**DIP Budget**

**(To Be Filed)**

**<u>Exhibit 2</u>**

**DIP Credit Agreement**

**(Unchanged from Interim DIP Order)**