**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| **AN GLOBAL LLC,** *et al.*,[1] | Case No. 23-11294 (JKS) |
| **Debtors.** | (Jointly Administered) |

**DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF: (I) AN ORDER (A) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES OTHER THAN ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (B) APPROVING CERTAIN BIDDING PROCEDURES, BIDDING PROTECTIONS, AND ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, (C) AUTHORIZING THE DEBTORS TO ENTER INTO THE STALKING HORSE APA, AND (D) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING ASSET PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES OTHER THAN ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby submit this reply (the "Reply") in further support of the *Debtors' Motion*

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number or registration number in the applicable jurisdiction, are: AN Global LLC (5504); AgileThought, Inc. (2509); 4th Source Holding Corp. (9629); 4th Source Mexico, LLC (7552); 4th Source, LLC (7626); AgileThought Brasil-Consultoria Em Tecnologia LTDA (01-42); AgileThought Brasil Servicos de Consultoria Em Software (01-20); AgileThought Costa Rica S.A. (6822); AgileThought Digital Solutions, S.A.P.I. de C.V. (3KR0); AgileThought México S.A. de C.V. (7E46); AgileThought, LLC (7076); AgileThought Servicios Administrativos, S.A. de C.V. (4AG1); AgileThought Servicios México S.A. de C.V. (8MY5); AgileThought, S.A.P.I. de C.V. (No Tax ID); AGS Alpama Global Services USA, LLC (0487); AN Data Intelligence, S.A. de C.V. (8I73); AN Extend, S.A. de C.V. (1D80); AN Evolution, S. de R.L. de C.V. (7973); AN USA (5502); AN UX, S.A. de C.V. (7A42); Cuarto Origen, S. de R.L. de C.V. (0IQ9); Entrepids México, S.A. de C.V. (OCYA); Entrepids Technology Inc. (No Tax ID); Facultas Analytics, S.A.P.I. de C.V. (6G37); Faktos Inc., S.A.P.I. de C.V. (3LLA); IT Global Holding LLC (8776); QMX Investment Holdings USA, Inc. (9707); AgileThought Argentina, S.A. (No Tax ID); AGS Alpama Global Services México, S.A. de C.V. (No Tax ID); and Tarnow Investment, S.L. (No Tax ID). The Debtors' headquarters are located at 222 W. Las Colinas Boulevard, Suite 1650E, Irving, Texas 75039.

1

*for Entry of: (I) an Order (A) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Approving Certain Bidding Procedures, Bidding Thereof, (C) Authorizing the Debtors To Enter into the Stalking Horse APA, and (D) Granting Related Relief; and (II) an Order (A) Approving Asset Purchase Agreement, (B) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [D.I. 72] (the "Motion"),[2] and in response to the *Limited Objection of the United States Trustee to Debtors' Motion to Establish Bid Procedures* [D.I. 106] (the "Limited Objection").[3] In support of this Reply, the Debtors rely on the Declaration of Stephen Preefer [D.I. 111] (the "Preefer Declaration"), which is incorporated by reference herein, and respectfully state as follows:

**REPLY**

1. The U.S. Trustee has objected on a limited basis to the Motion solely with respect to the Debtors' request for approval of the Expense Reimbursement, in an amount up to, but not exceeding $2.5 million. No other party in interest has objected to the Expense Reimbursement. The U.S. Trustee's objection is that the Debtors have not met their burden of establishing that the Expense Reimbursement constitutes an actual, necessary expense of

---

2. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

3. On September 22, 2023, the Court granted the Motion as to the relief sought therein other than approval of the Stalking Horse APA and the Expense Reimbursement [D.I. 132].

preserving the Debtors' estates, as required under section 503(b) of the Bankruptcy Code, because "there is no explanation why the secured lender would need any inducement to credit bid for its own collateral." (Limited Obj. ¶ 1.) It is less a question of inducement than of reimbursing a party that has provided postpetition benefit to the estate. The Stalking Horse Bidder has no obligation to serve in such capacity, and has incurred, and will continue to incur, significant expenses in connection with its role as Stalking Horse Bidder, including but not limited to costs relating to diligence, and negotiation and documentation of the Stalking Horse APA and related schedules.

2. The Third Circuit Court of Appeals has made clear that an expense reimbursement may be approved so long as it provides some postpetition benefit to the debtor's estate. *See Calpine Corp. v. O'Brien Env't Energy Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 536 (3d Cir. 1999). Here, the Expense Reimbursement is being paid to a party that has provided a tangible and significant postpetition benefit to the Debtors' estates. The Stalking Horse APA sets a floor for a competitive, value-maximizing bidding process. It also provides potential bidders with guidance as to a potential transaction structure. And, perhaps most importantly, it provides a path forward for the Debtors that gives employees, customers and vendors comfort as to the continuity of the Debtors' business, with a closing contemplated within three months of the Petition Date. This comfort is critical to, among other things, employee retention, and customers' and vendors' willingness to continue to do business with the Debtors. Absent a stalking horse bidder, these constituents may be unwilling to continue to do business with the Debtors, which could severely and negatively impact the Debtors' operations and the value of their business. A bright line prohibition of such protections would harm debtors in situations similar to those present here, where the stalking horse bid serves a vital function within the sale process by incentivizing bidding for the debtor's assets.

3. Moreover, the Expense Reimbursement is only payable in certain limited circumstances. The Expense Reimbursement is only payable if:

> (1) at the time of any such termination, any Alternative Transaction, as applicable, has been proposed in writing or announced, (2) a binding agreement is entered into with respect to such Alternative Transaction on or prior to the date that is three (3) months following the date of termination of this Agreement, and (3) Buyer is not in material breach of any of its material obligations under this Agreement at the time of such termination.

Stalking Horse APA § 10.2(a) (emphasis added). Thus, the Expense Reimbursement is only payable in the event that the Debtors have received an actionable offer to consummate an Alternative Transaction (as defined in the Stalking Horse APA) *and* a binding agreement with respect to such Alternative Transaction is entered into within three (3) months of the date of termination of the Stalking Horse APA. In that case, the Stalking Horse Bidder will have performed an important and valuable service for the Debtors' estates by incentivizing competitive bidding for the Debtors' assets.

4. The U.S. Trustee discounts this benefit because the proceeds of an Alternative Transaction benefit the prepetition first lien lenders and the postpetition lenders as well as the Debtors' estates, and "because bid protections are not necessary to induce the secured lenders to credit bid for their collateral." (Limited Obj. ¶¶ 10, 21.) However, the U.S. Trustee offers no support for these statements. Lenders have no obligation to acquire ownership of their borrowers' assets, which entails far more than liquidating collateral or receiving payment for amounts they loaned. In addition, section 503(b) contains no requirement that an administrative expense inure *solely* to the benefit of a debtor to be allowable.

5. In *In re Energy Future Holdings Corp.*, 990 F.3d 728 (3d Cir. 2021) (hereinafter "*EFH II*"), the Third Circuit found that an unsuccessful bidder plausibly alleged that it provided a benefit to the debtors' estates by providing a "roadmap" for other offers. *Id.* at 745-

4

746. While the U.S. Trustee argues that bid protections are inappropriate because the Mexican Tax Assessment chilled bidding prepetition, he does not explain how that would somehow necessitate a lender to acquire an asset under those circumstances. And, nevertheless, the Stalking Horse APA still serves an important function in that it lays out a "roadmap" for potential bidders by proposing a structure to acquire the Debtors' assets, notwithstanding the Mexican Tax Assessment.

6. Furthermore, the Stalking Horse Bidder has made it clear that the Expense Reimbursement is an important inducement for continuing to serve as the Debtors' stalking horse. As the U.S. Trustee acknowledges, an expense reimbursement can provide a benefit to the estate where, among other things, "the bid protection induces a bidder to adhere to its bid through an auction process." (Limited Obj. ¶ 14 (citing *In re Energy Future Holdings Corp.*, 904 F.3d 298, 314 (3d Cir. 2018)); *see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 661 (S.D.N.Y. 1992) (bid protections may "ensure that a bidder does not retract its bid").) It is worth noting that the Expense Reimbursement is the only bid protection that the Stalking Horse Bidder will receive; the Stalking Horse Bidder is not entitled to any breakup fee or other bid protection that a stalking horse transaction might typically entail.

7. Courts in this district have approved expense reimbursements for credit-bidding stalking horse bidders on similar metrics and when the proposed expense reimbursement was significantly larger vis-à-vis the proposed purchase price. *See In re AeroFarms, Inc.*, No. 23-10737 (MFW) (Bankr. D. Del. July 20, 2023), D.I. 191 at ¶ 7 (approving a $650,000 expense reimbursement, representing 6.5% of the value of the $10 million stalking horse credit bid); *In re Independent Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Feb. 24, 2023), D.I. 187 at ¶ 25 (approving an expense reimbursement of up to $750,000 in conjunction with $60

million credit bid); *In re Vesta Holdings, LLC*, No. 22-11019 (LSS) (Bankr. D. Del. Dec. 7, 2022), D.I. 158 at ¶ 12 (approving an expense reimbursement of up to $1.5 million in conjunction with a $125 million credit bid); *In re Gorham Paper & Tissue, LLC*, No. 20-12814 (KBO) (Bankr. D. Del. Nov. 19, 2020), D.I. 112 at ¶ 9 (approving a breakup fee equal to $300,000 and an expense reimbursement of up to $100,000 to a stalking horse of $10.25 million, $1.5 million of which was credit bid).

8.     Based on the foregoing, and for the reasons stated in the Motion and in the Preefer Declaration, the Expense Reimbursement is appropriate under the circumstances because it is: (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code; and (ii) reasonable and appropriate in light of other bid protections that have been approved in connection with stalking horse credit bids in this District.

*Remainder of page intentionally left blank*

## **CONCLUSION**

WHEREFORE, for the reasons set forth in the Motion and this Reply, the Debtors submit that the Court should overrule the Limited Objection and respectfully request that the Court grant the relief requested and such other and further relief as is just and proper.

Dated: October 2, 2023  
Wilmington, Delaware

Respectfully submitted,

*/s/ R. Stephen McNeill*
Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
Gregory J. Flasser (No. 6154)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
E-mail: jryan@potteranderson.com
rmcneill@potteranderson.com
gflasser@potteranderson.com
srizvi@potteranderson.com

and

Kathryn A. Coleman
Christopher Gartman
Jeffrey S. Margolin
Elizabeth A. Beitler
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: katie.coleman@hugheshubbard.com
chris.gartman@hugheshubbard.com
jeff.margolin@hugheshubbard.com
elizabeth.beitler@hugheshubbard.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*