**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| AN GLOBAL, LLC, et al., *et al.*,[1] | Case No. 23-11294 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Related Docket Nos.: 12, 65, 103 & 139** |

**RESPONSE OF DEBTORS TO CREDIT SUISSE MEXICO CREDIT
OPPORTUNITIES FUND'S RESERVATION OF RIGHTS
WITH RESPECT TO ENTRY OF FINAL DIP ORDER**

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this response (this "Response") to *Credit Suisse Mexico Credit Opportunities Fund's Reservation of Rights with Respect to Entry of Final DIP Order* [Docket No. 103] (the "Reservation of Rights"), and in support of this Response, respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Pursuant to a Subordination and Intercreditor Agreement between Blue Torch Finance LLC, as administrative agent for the Prepetition 1L Lenders ("Blue Torch" and, in such

---

[1]. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number or registration number in the applicable jurisdiction, are: AN Global LLC (5504); AgileThought, Inc. (2509); 4th Source Holding Corp. (9629); 4th Source Mexico, LLC (7552); 4th Source, LLC (7626); AgileThought Brasil-Consultoria Em Tecnologia LTDA (01-42); AgileThought Brasil Servicos de Consultoria Em Software (01-20); AgileThought Costa Rica S.A. (6822); AgileThought Digital Solutions, S.A.P.I. de C.V. (3KR0); AgileThought México S.A. de C.V. (7E46); AgileThought, LLC (7076); AgileThought Servicios Administrativos, S.A. de C.V. (4AG1); AgileThought Servicios México S.A. de C.V. (8MY5); AgileThought, S.A.P.I. de C.V. (No Tax ID); AGS Alpama Global Services USA, LLC (0487); AN Data Intelligence, S.A. de C.V. (8I73); AN Extend, S.A. de C.V. (1D80); AN Evolution, S. de R.L. de C.V. (7973); AN USA (5502); AN UX, S.A. de C.V. (7A42); Cuarto Origen, S. de R.L. de C.V. (0IQ9); Entrepids México, S.A. de C.V. (OCYA); Entrepids Technology Inc. (No Tax ID); Facultas Analytics, S.A.P.I. de C.V. (6G37); Faktos Inc., S.A.P.I. de C.V. (3LLA); IT Global Holding LLC (8776); QMX Investment Holdings USA, Inc. (9707); AgileThought Argentina, S.A. (No Tax ID); AGS Alpama Global Services México, S.A. de C.V. (No Tax ID); and Tarnow Investment, S.L. (No Tax ID). The Debtors' headquarters are located at 222 W. Las Colinas Boulevard, Suite 1650E, Irving, Texas 75039.

capacity, the "Prepetition 1L Agent") and GLAS USA LLC and GLAS AMERICAS LLC, as administrative agent and collateral agent for the Prepetition 2L Lenders (the "Prepetition 2L Agents"), dated as of May 27, 2022 (the "Intercreditor Agreement"), the Prepetition 2L Agents agreed, for themselves and as agent for the Prepetition 2L Lenders[2] (thereby including Credit Suisse Mexico (as defined herein)), not to object to or support any objection to any First Lien DIP Financing (as defined in the Intercreditor Agreement) proposed by the Prepetition 1L Agent or the Prepetition 1L Lenders.[3] Despite that express prohibition, the fact that the Prepetition 2L Agents have taken no action with respect to the proposed DIP Facility, and the fact that Credit Suisse Mexico Credit Opportunities Fund ("Credit Suisse Mexico"), a Prepetition 2L Lender, is not even a party to the Intercreditor Agreement, Credit Suisse Mexico *de facto* objected to the DIP Facility by filing the Reservation of Rights, which is nothing more than an objection to the DIP Facility under a different name. However, the Prepetition 2L Lenders, including Credit Suisse Mexico, contractually waived their standing to be heard in respect of the DIP Facility, and should be held to the bargain. For this reason, the Debtors respectfully request that the Reservation of Rights be disregarded and overruled on the ground that Credit Suisse Mexico has no standing.

2. If the Court chooses to address the merits of the Reservation of Rights, it should reach the same conclusion and overrule the Reservation of Rights, because it is based on an incorrect reading of the applicable documents. Quite simply, the First Lien Cap (as defined herein) does not apply to postpetition financing. Therefore, Section 4.1 of the Intercreditor Agreement,

---

2. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Exhibit A to the *Notice of Filing of Proposed Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Senior Secured Priming Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to the Prepetition 1L Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 139] (the "Proposed Final DIP Order").

3. The Debtors who are Credit Parties signed a written acknowledgment to the Intercreditor Agreement.

2

which governs the allocation of proceeds of collateral among prepetition secured creditors and upon which Credit Suisse Mexico relies, is irrelevant to the allocation of proceeds of DIP collateral to DIP lenders.

## **RELEVANT BACKGROUND**

**A.    The DIP Facility**

3.    As detailed in the Motion, as of the Petition Date, the Prepetition 1L Obligors were jointly and severally liable to the Prepetition 1L Secured Parties under the Prepetition 1L Documents[4] in the aggregate amount of not less than $97,182,093.79, comprising (a) $93,640,057.55 in principal amounts of term loans advanced under the Prepetition 1L Credit Agreement, plus (b) not less than $3,542,036.24 on account of fees, premiums and accrued and unpaid interest prior to the Petition Date.

4.    After the Debtors' unsuccessful search for third-party financing and extensive arm's length negotiations, the Prepetition 1L Secured Parties agreed to provide the DIP Facility to facilitate the Debtors' Chapter 11 Cases and allow the Debtors to effectuate a value maximizing sale. The DIP Facility provides for a postpetition loan commitment in an aggregate principal amount of up to $119,882,093.79, comprising (a) the New Money DIP Commitments in the aggregate principal amount of $22,700,000.00, and (b) upon entry of the Proposed Final DIP Order, and at the DIP Lenders' election, a deemed advance of up to the full amount of the outstanding Prepetition 1L Obligations, which as of the Petition Date was not less than $97,182,093.79.

---

4.  The prepetition loan documents, including but not limited to the Intercreditor Agreement (together with Amendments No. 1, 2 & 3 to the Intercreditor Agreement), the Prepetition 1L Credit Agreement, the related Pledge and Security Agreement, the Prepetition 2L Credit Agreement and the related Amended and Restated Guaranty and Collateral Agreement, are attached as exhibits to the *Supplemental Declaration of James S. Feltman in Support of the Debtors' DIP Financing Motion*, dated October 2, 2023, filed simultaneously herewith (the "Supplemental Feltman Declaration").

5.	On August 30, 2023, this Court entered the Interim Order [Docket No. 65] approving the relief sought in the Motion on an interim basis. Pursuant to the Interim DIP Order, the Debtors borrowed an additional $11,200,000 in a New Money DIP Loan, which was funded by the DIP Lenders into the Funding Account (as defined in the DIP Credit Agreement). Of the $11,200,000 funded to the Funding Account, $7,532,233.00 has been released to the Debtors for use in accordance with the Interim Order and DIP Credit Agreement. Following the filing of the Reservation of Rights, in light of the issues raised with respect to the First Lien Cap, the DIP Agent has, consistent with the DIP Credit Agreement, not allowed additional funds to be withdrawn from the Funding Account. As of the Final Hearing on the DIP Facility, the Debtors will be indebted to the DIP Lenders (as DIP Lenders) in the aggregate amount of not less than $108,382,093.79 on account of funded principal in the amount of $101,172,290.55 (comprising (x) $7,532,233.00 of New Money DIP Loans funded to the Debtors and withdrawn from the Funding Account, and (y) $93,640,057.55 in principal amounts of term loans advanced under the Prepetition 1L Credit Agreement), (ii) $3,667,767.00 on account of New Money DIP Loans being held in the Funding Account, and (iii) not less than $3,542,036.24 on account of fees, premiums and accrued and unpaid interest prior to the Petition Date. And critically, if this Court approves the Proposed Final DIP Order, the Debtors will be permitted to borrow an additional $11,500,000 of new money, which will fund continuing operations and the sale process.

**B.	The Intercreditor Agreement**

6.	Prior to the commencement of the Chapter 11 Cases, the Prepetition 1L Agent and Prepetition 2L Agents, the Borrower and certain of the Guarantors entered into the Intercreditor Agreement, which sets forth the respective rights, obligations and priorities of the liens and security interests of Prepetition 1L Agent and the Prepetition 1L Lenders on the one hand, and the Prepetition 2L Collateral Agent and Prepetition 2L Lenders, on the other hand, with

respect to the Collateral (as defined in the Intercreditor Agreement) and the obligations of Borrower and Guarantors party thereto due to the Prepetition 1L Agent and the Prepetition 1L Lenders, on the one hand, and the Prepetition 2L Collateral Agent and Prepetition 2L Lenders, on the other hand.

7. The Intercreditor Agreement, among other things, caps the amount of First Lien Obligations (defined in the Intercreditor Agreement as Obligations defined in the First Lien Loan Agreement) that are entitled to distribution of collateral proceeds ahead of the Second Lien Obligations (as defined in the Intercreditor Agreement).[5] The definition of "First Lien Cap" is excerpted and attached hereto as **Exhibit A.**[6]

8. As a result of various amendments of the Intercreditor Agreement, as of the Petition Date the First Lien Cap was $102,803,769.24 on account of principal, plus additional amounts for interest, fees, expenses and other obligations as provided for in the definition. The total principal amount of term loans advanced under the Prepetition 1L Credit Agreement as of the Petition Date was $93,640,057.55.

9. The Intercreditor Agreement deals separately with the parties' rights and obligations in the context of insolvency proceedings. Section 6.2 of the Intercreditor Agreement specifically contemplates DIP financing being provided by the Prepetition 1L Lenders, without any reference to the First Lien Cap.

---

5. Defined as the "Prepetition 2L Obligations" in the Proposed Final DIP Order and the DIP Documents.

6. The definition of First Lien Cap reflects amendments made through: (a) Amendment No. 1 to Subordination and Intercreditor Agreement, dated as of April 18, 2023, § 2(a); (b) Amendment No. 2 to Subordination and Intercreditor Agreement, dated as of July 17, 2023, § 2; and (c) Amendment No. 3 to Subordination and Intercreditor Agreement, dated as of August 18, 2023, § 2.

**C.    The Reservation of Rights**

10.    In the Reservation of Rights, Credit Suisse Mexico purports to be the beneficial owner of approximately $13.1 million of loans under the Prepetition 2L Credit Agreement and as such, asserts that Credit Suisse Mexico has sufficient authority to direct the Prepetition 2L Agents under the Prepetition 2L Credit Agreement and the Intercreditor Agreement. *See* Reservation of Rights, ¶ 1.

11.    In the Reservation of Rights, Credit Suisse Mexico appears to take the position that the DIP Obligations funded by new money constitute First Lien Obligations under the Intercreditor Agreement and, as such, are subject to the First Lien Cap. Thus, Credit Suisse Mexico reserves its right to contend that at least certain of the funding being provided in the proposed DIP Facility are actually subordinate to the Second Lien Obligations regardless of what is set forth in the Interim and Final DIP Orders. *See generally* Reservation of Rights, ¶ 4.

12.    Credit Suisse Mexico provides no support for its position that the DIP Obligations are First Lien Obligations, as defined in the Intercreditor Agreement. The Intercreditor Agreement itself certainly does not support this assertion. Indeed, Section 6.2(b) of the Intercreditor Agreement provides that Liens granted to secure First Lien DIP Financing provided by the Prepetition 1L Lenders will have the same priority as the prepetition Liens securing the Debtors' prepetition obligations to the Prepetition 1L Lenders, meaning that until the Prepetition 1L Lenders have been paid the full amount of the Prepetition 1L Obligations and the full amount of the DIP Obligations, their Lien on the Collateral comes first.

**RESPONSE**

I. **CREDIT SUISSE MEXICO DOES NOT HAVE STANDING TO FILE A RESERVATION OF RIGHTS**

13. Although Credit Suisse Mexico contends that it has sufficient holdings of the debt issued pursuant to the Prepetition 2L Credit Agreement to direct the Prepetition 2L Agents to take action, it has apparently not done so, as the Prepetition 2L Agents have not filed a reservation of rights, much less an objection, with respect to the proposed DIP Facility. And critically, under the Prepetition 2L Credit Agreement, only the Prepetition 2L Agents are entitled to enforce the terms of the Prepetition 2L Credit Agreement or the Intercreditor Agreement against the Prepetition 1L Agent, the Borrower or the Guarantors. *See* Prepetition 2L Credit Agreement, § 14.12. As stated above, Credit Suisse Mexico is not even a party to the Intercreditor Agreement. Consequently, if, as Credit Suisse Mexico seems to contend, the DIP Facility constitutes a breach of the Intercreditor Agreement and a nonconsensual priming of the Prepetition 2L Lenders with respect to amounts purportedly in excess of the First Lien Cap, the only parties having standing to assert such breaches are the Prepetition 2L Agents. They have not, and for this reason alone, Credit Suisse Mexico's Reservation of Rights should be overruled and dismissed with prejudice and the Prepetition 2L Agents and the underlying Prepetition 2L Lenders bound by any Final DIP Ordered entered by this Court.

II. **THE DIP OBLIGATIONS ARE NOT "FIRST LIEN OBLIGATIONS" UNDER THE INTERCREDITOR AGREEMENT**

14. Even assuming, *arguendo*, that Credit Suisse Mexico has standing to object to the DIP Facility or even to reserve rights, Credit Suisse Mexico's Reservation of Rights and any objection by the Prepetition 2L Agents to the DIP Facility are without any basis in the governing documents and should be overruled.

15.     The Intercreditor Agreement expressly defines the First Lien DIP Financing as a financing provided in connection with an Insolvency Proceeding. Specifically, section 6.2(a) of the Intercreditor Agreement provides as follows:

> If any First Lien Borrower or any other Credit Party shall be subject to any Insolvency Proceeding at any time prior to the Discharge of First Lien Obligations, and the First Lien Agent or the First Lien Lenders shall seek to provide any First Lien Borrower or any other Credit Party with, or consent to a third party providing, any financing under Section 364 of the Bankruptcy Code or consent to any order for the use of cash collateral under Section 363 of the Bankruptcy Code or any similar provision of any foreign Insolvency Proceeding or under a court order in respect of measures granted with similar effect under any Insolvency Proceeding (each, a "**First Lien DIP Financing**") constituting Collateral with such First Lien DIP Financing to be secured by all or any portion of the Collateral (including assets that, but for the application of Section 552 of the Bankruptcy Code or any similar provision of any foreign Insolvency Proceeding would be Collateral).

Intercreditor Agreement, § 6.2(a).

16.     Critically, nothing in the Intercreditor Agreement places any limits or caps on the amounts that might be funded by the Prepetition 1L Lenders under a proposed First Lien DIP Financing. Nor does anything in the Intercreditor Agreement prohibit the Bankruptcy Court from either (i) granting the Prepetition 1L Agents first priority liens on Collateral that is subject to the Intercreditor Agreement for the full amount of any First Lien DIP Financing or (ii) approving the amount of the carve-out to which the Prepetition 1L Lenders agree or the rolling up of the outstanding amount of the prepetition first lien debt that is requested as debt under a First Lien DIP Financing. Nor has Credit Suisse Mexico cited to any such provision.

17.     More importantly, perhaps, the Intercreditor Agreement defines "First Lien Obligations" as follows:

> "***First Lien Obligations**" shall mean all "Obligations", as defined in the First Lien Loan Agreement… pursuant to the terms of the First Lien Documents. First Lien Obligations shall continue to constitute First Lien Obligations, notwithstanding the fact that such First Lien Obligations or*

8

> *any claim for such First Lien Obligations is subordinated*, avoided or disallowed under the Bankruptcy Code, Debtor Relief Law or other applicable law. First Lien Obligations shall also include any Debt of the First Lien Borrowers and each other Credit Party incurred in connection with a Refinancing of the First Lien Obligations under the First Lien Documents to the extent permitted by Section 5.3.

Intercreditor Agreement, § 1.1 (emphasis added).

18. The Intercreditor Agreement thus defines First Lien Obligations solely as those Obligations defined *in the First Lien Credit Agreement.* Moreover, it goes on to state expressly that "First Lien Obligations shall continue to constitute First Lien Obligations notwithstanding the fact that such First Lien Obligations or any claim for such First Lien Obligations *is subordinated.*" Therefore, the definition of First Lien Obligations expressly contemplates that the existing First Lien Obligations may be subordinated and, therefore, be junior or second to first lien obligations granted to the Prepetition 1L Lenders providing a First Lien DIP Financing to the Debtors and secured by the Collateral.

19. Accordingly, although the proposed DIP Obligations, incurred under the DIP Credit Agreement, are secured by a first lien on the Collateral, that does not make them First Lien Obligations incurred under the First Lien Credit Agreement. Thus, regardless of the amount of the final DIP Facility, whether it is just the new money ($22.7 million) or the aggregate amount of the new money and the full roll-up of the outstanding Prepetition 1L Obligations (not less than $119,882,093.79), the DIP Obligations are all incurred under the DIP Loan Documents, not the prepetition loan documents, and therefore are not subject to the First Lien Cap in the Intercreditor Agreement, and the DIP Lenders are entitled to the priority and protections provided for in the Proposed Final DIP Order.

### III. THE INTERCREDITOR AGREEMENT PROHIBITS THE PREPETITION 2L AGENTS FROM OBJECTING TO THE DIP FACILITY

20. As discussed in Section I above, the only parties with standing to be heard with respect to a proposed First Lien DIP Financing are the Prepetition 2L Agents. Even then, critically, the Intercreditor Agreement expressly provides that if the Prepetition 1L Agent or Prepetition 1L Lenders seek to provide the Prepetition 1L Obligors or Prepetition 2L Obligors with a First Lien DIP Financing, the Prepetition 2L Agents have waived their right to object, providing that:

> then the Second Lien Agents, on their own behalf and on behalf of the Second Lien Creditors, agree that they will raise no objection and will not support any objection to such First Lien DIP Financing or use of cash collateral or to the Liens securing the same on the grounds of a failure to provide "adequate protection" for the Liens of the Second Lien Agents and Second Lien Creditors securing the Second Lien Obligations or on any other grounds (and without the consent of the First Lien Agent will not request any adequate protection solely as a result of such First Lien DIP Financing or use of cash collateral that is Collateral) except that if the First Lien Agent is granted Liens on additional collateral as adequate protection with respect to Collateral, the Second Lien Agents may request second priority Liens to those of the First Lien Agent on the same additional collateral as adequate protection of its interests in the Collateral**.**

Intercreditor Agreement, § 6.2(a).

21. Accordingly, this Court should overrule any request by the Prepetition 2L Agents or the Prepetition 2L Lenders to reserve rights to subsequently challenge in this Court or any other court any first priority liens granted to the DIP Agent for the benefit of the DIP Lenders pursuant to a final debtor-in-possession financing order.

### CONCLUSION

22. Credit Suisse Mexico's position and Reservation of Rights should be overruled. And critically, absent this Court enforcing the provisions of the Intercreditor Agreement (Sections 2.2 and 6.2(b)) that provide that the $22,700,000.00 in New Money DIP

Loans that the DIP Lenders have agreed to lend will (a) be secured by a first priority lien on unencumbered property as provided for in paragraph 10(a) of the Proposed Final DIP Order, and (b) be secured by a first priority senior consensual priming security interest in and lien on all Collateral subject to the Prepetition Second Liens securing the Prepetition 2L Obligations as provided for under paragraph 10(b) of the Proposed Final DIP Order, as well as certainty that the Prepetition 2L Agents or Prepetition 2L Lenders, including Credit Suisse Mexico, may not later claim that the DIP Facility is subject to and exceeds the First Lien Cap, the DIP Lenders are not willing to further fund the DIP Facility. Accordingly, to provide the DIP Lenders the clarity which they require to proceed with further funding the DIP Facility, the Proposed Final DIP Order overrules the Reservation of Rights and includes four critical proposed findings of fact in paragraphs 4(e), 5(f), 5(g) and 5(h) of the Proposed Final DIP Order.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons set forth in the Response, the Debtors respectfully request that the Bankruptcy Court enter an order approving the Motion in substantially the form of the Proposed Final DIP Order.

| | |
|---|---|
| Dated: October 2, 2023<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ R. Stephen McNeill*<br>Jeremy W. Ryan (No. 4057)<br>Gregory J. Flasser (No. 6154)<br>Sameen Rizvi (No. 6902)<br>**POTTER ANDERSON & CORROON LLP**<br>1313 North Market Street, 6th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 984-6000<br>Facsimile: (302) 658-1192<br>E-mail: jryan@potteranderson.com<br>  gflasser@potteranderson.com<br>  srizvi@potteranderson.com<br><br>and<br><br>Kathryn A. Coleman<br>Christopher Gartman<br>Jeffrey S. Margolin<br>Elizabeth A. Beitler<br>**HUGHES HUBBARD & REED LLP**<br>One Battery Park Plaza<br>New York, NY  10004-1482<br>Telephone: (212) 837-6000<br>Facsimile:  (212) 422-4726<br>Email:  katie.coleman@hugheshubbard.com<br>chris.gartman@hugheshubbard.com<br>jeff.margolin@hugheshubbard.com<br>elizabeth.beitler@hugheshubbard.com<br><br>*Proposed Counsel for the Debtors and Debtors-in-Possession* |