IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AN GLOBAL LLC, *et al.*, | : | Case No. 23-11294 (JKS) |
| | : | (Jointly administered) |
| | : | |
| Debtors.[1] | : | Re: D.I. 1247 |
| | : | **Obj. Deadline: Apr. 3, 2025, at 4:00 p.m.** |
| | : | (extended for UST to May 9) |

**OBJECTION OF THE UNITED STATES TRUSTEE TO
MOTION TO MODIFY RETENTION OF GRANT & EISENHOFER P.A.**

Andrew R. Vara, United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, objects to the *Debtors' Motion to Modify the Terms of Their Retention and Employment of Grant & Eisenhofer P.A. as Special Litigation Counsel to the Debtors and Debtors in Possession Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1* [D.I. 1247] (the "Motion"), and in support of his objection respectfully states:

**PRELIMINARY STATEMENT**

1. The Court should deny the Motion because it would authorize a section 327(a) professional to represent both the Debtors and the Debtors' secured lender in connection

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number or registration number in the applicable jurisdiction, are: AN Global LLC (5504); AgileThought, Inc. (2509); 4th Source, LLC (7626); AgileThought Brasil Servicos de Consultoria Em Software (01-20); AgileThought Digital Solutions, S.A.P.I. de C.V. (3KR0); AgileThought México S.A. de C.V. (7E46); AgileThought, LLC (7076); AGS Alpama Global Services USA, LLC (0487); AN Extend, S.A. de C.V. (1D80); AN Evolution, S. de R.L. de C.V. (7973); AN UX, S.A. de C.V. (7A42); Cuarto Origen, S. de R.L. de C.V. (0IQ9); Entrepids México, S.A. de C.V. (OCYA); Facultas Analytics, S.A.P.I. de C.V. (6G37); Faktos Inc., S.A.P.I. de C.V. (3LLA); IT Global Holding LLC (8776); Tarnow Investment, S.L. (No Tax ID); and Anzen Soluciones, S.A. de C.V. (No Tax ID). The Debtors' headquarters are located at 222 W. Las Colinas Boulevard, Suite 1650E, Irving, Texas 75039.

1

with these cases. Whether the Motion aims to salvage counsel's contingency fee, or to streamline the secured lender's pursuit of its own claims against a third party, neither purpose trumps the plain meaning of section 327(a).

## JURISDICTION & STANDING

2. Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). The U.S. Trustee is specifically authorized to monitor retention applications filed under 11 U.S.C. § 327 and, whenever the U.S. Trustee deems it appropriate, to file comments about such applications with the Court. *See* 28 U.S.C. § 586(a)(3)(I).

4. The U.S. Trustee has standing to be heard on the Motion pursuant to 11 U.S.C. § 307.

## BACKGROUND

5. On and after August 28, 2023, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court.

6. The Debtors are a software company that sold substantially all of their assets post-petition and obtained Court approval to pursue a structured dismissal. *See* D.I. 590, 602, 776, 799, 849 & 1079.

7. On August 14, 2024, the Debtors filed a motion to retain Grant & Eisenhofer P.A. ("G&E") as special litigation counsel under section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") to represent the Debtors on two matters: (1) investigating claims against Debtors' former D&Os and professionals; and (2) investigating claims against the Debtors' former auditor, KPMG LLP. *See* D.I. 969.

8. On September 4, 2024, the Court entered an order approving G&E's retention. *See* D.I. 1021.

9. The Debtors retained G&E on a contingency-fee basis. *See* D.I. 969 ¶ 17.

10. On March 20, 2025, the Debtors filed the Motion. It seeks to expand G&E's retention to allow the firm to represent both the Debtors and Blue Torch—the administrative agent and collateral agent on the Debtors' prepetition first-lien debt—in connection with the claims against KPMG.

11. The Motion indicates G&E has been reporting to Blue Torch pursuant to a common-interest privilege.[2] *See* Motion ¶ 14. The Motion indicates G&E has concluded that the Debtors' claims against KPMG are subject to colorable and meritorious defenses—but also that Blue Torch "in its individual capacity" has colorable claims against KPMG. *See id.* ¶ 15. "To the extent that Blue Torch recovers money from KPMG, that will effectively reduce the amount that the Debtors owe to Blue Torch." *Id.* ¶ 16.

## ARGUMENT

12. The Court should deny the Motion because the requested modification would violate section 327(a) of the Bankruptcy Code.

---

[2] The Court should require G&E to make a record of when this common-interest arrangement was established, and whether this connection to Blue Torch was timely disclosed under Fed. R. Bankr. 2014(a).

3

13. Section 327(a) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327.

14. Section 327(a) "restricts retention of lawyers and other professionals to those who do not hold or represent an interest adverse to the estate and are disinterested." *In re Congoleum Corp.*, 426 F.3d 675, 688-89 (3d Cir. 2005). The twin requirements of disinterestedness and no adverse interest "apply at the time of retention and throughout the case." *In re Granite Partners, L.P.*, 219 B.R. 22, 32 (Bankr. S.D.N.Y. 1998).

15. The Bankruptcy Code does not define "adverse interest." *See In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994). In the context of Section 327(a), the Court may consider an interest adverse to the estate "when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'" *In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (quoting *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996)). Interests are not adverse "merely because it is possible to conceive a set of circumstances under which they might clash." *In re Leslie Fay Cos., Inc.*, 175 B.R. at 532. "[I]f it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *Id.* at 533.

16. Section 327(c) of the Bankruptcy Code provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of

> such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). Under Sections 327(a) and (c), the Court: must disqualify an attorney with an actual conflict of interest, may disqualify an attorney with a potential conflict of interest, and may not disqualify an attorney based on the appearance of a conflict alone. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).

17. The Bankruptcy Code does not define actual conflict of interest. *See In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002). The term has been given meaning through case-by-case evaluations of particular fact patterns. *See id.* "Pragmatically, a conflict is actual when the specific facts before the bankruptcy court suggest that 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest.'" *In re Boy Scouts of America*, 35 F.4th 149, 158 (3d Cir. 2022) (quoting *In re BH & P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991)); *see also In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016) ("An actual conflict of interest is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'") (quoting cases). Whether a conflict is actual or potential is within the Court's discretion. *See In re Woodworkers Warehouse, Inc.*, 303 B.R. 740, 742 (Bankr. D. Del. 2004).

18. The Court should generally disapprove retentions involving a potential conflict of interest. *See In re BH & P, Inc.*, 949 F.2d at 1316; *see also In re Woodworkers Warehouse, Inc.*, 303 B.R. at 742 ("In most instances a potential conflict should be the basis for disqualification[.]") (citing *Marvel*, 140 F.3d at 476). The Court should permit retention despite a potential conflict of interest only if every competent professional in the field is already employed in the case, or if the likelihood that the potential conflict will become actual

is remote and there are "particularly compelling" reasons to approve the retention.  *See In re BH & P, Inc.*, 949 F.2d at 1316 ("We do not find error in the bankruptcy court's articulation of the standard governing conflict of interest applicable to professionals.").

19. "The requirements of section 327 cannot be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *In re Leslie Fay Cos., Inc.*, 175 B.R. at 532 (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)).  "Having to divide one's allegiance between two clients is what Section 327 attempts to prevent." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002) (quoting *In re Roger J. Au & Son, Inc.*, 101 B.R. 502, 505 (Bankr. N.D. Ohio 1989)).

20. Where a statute's meaning is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (*citing Caminetti v. United States*, 242 U.S. 470, 485 (1917)).  "[I]n the absence of ambiguity in the statute, I must apply it as written." *In re Winstar Communications, Inc.*, 378 B.R. 756, 761 (Bankr. D. Del. 2007).  "Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." *Badaracco v. Commissioner of Internal Revenue*, 464 U.S. 386, 398 (1984) (*citing TVA v. Hill*, 437 U.S. 153, 194-95 (1978)); *see also In re Columbia Gas Systems Inc.*, 33 F.3d 294, 302 (3d Cir. 1994) ("the bankruptcy court cannot waive or modify Bankruptcy Code requirements that are plain and unambiguous because it agrees with the policy underlying the debtor's arguments."); *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) ("Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits."); *Norwest*

6

*Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (bankruptcy court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code."); *In re Combustion Engineering, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself."); *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding.").

21. Here, the Motion seeks to sidestep the plain meaning of section 327(a) in favor of practical considerations. The Motion does not meet the no-adverse-interest requirement of section 327(a) because it would allow G&E to represent Blue Torch on the claims against KPMG. Blue Torch's interests are adverse to the bankruptcy estates because Blue Torch is agent for the first-lien prepetition lenders. The first-lien prepetition claims tend to diminish estate values, in particular for unsecured creditors, because satisfaction of allowed first-lien prepetition claims consumes estate value. The Motion indicates that if Blue Torch recovers on its own claims against KPMG, "that will effectively reduce the amount that the Debtors owe to Blue Torch." *Id.* ¶ 16. But the Motion fails to explain how.

22. When G&E was retained in these cases, it made a choice—and a commitment: it would represent the Debtors. *See In re Leslie Fay Cos., Inc.*, 175 B.R. at 532 (section 327 ensures that all professionals "tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.") (quotation omitted). Several months later, it appears the Debtors' claims against KPMG may not pan out. In that scenario G&E will not receive a contingency fee. G&E cannot salvage that contingency fee by jumping ship to represent Blue Torch. Nor should the Court permit Blue Torch pick up

Debtors' counsel to streamline Blue Torch's pursuit of its own claims against KPMG. Blue Torch can, and in respect of section 327(a) must, retain its own counsel to pursue its own claims against KPMG.

23. G&E's dual representation of the estates and Blue Torch cannot be engineered through conflict waivers. *See In re Congoleum Corp.*, 426 F.3d at 692 ("waivers under § 327(a) are ordinarily not effective."); *In re Granite Partners LP*, 219 B.R. at 34 ("Although the client can, under certain circumstances, waive the conflict, DR 5-105(c), the mandatory provisions of section 327(a) do not allow for waiver."); *In re B.E.S. Concrete Prods, Inc.*, 93 B.R. 228, 235 (Bankr. E.D. Cal. 1988) ("Although the parties can waive the conflict upon appropriate disclosures, the waiver is more difficult to obtain in a chapter 11 case because the debtor in possession stands in a fiduciary capacity that constrains its ability to make such a waiver."); *In re JMK Construction Group, Ltd.*, 441 B.R. 222, 237 (Bankr. S.D.N.Y. 2010) ("Courts have recognized that conflicts waivers are not effective for purposes of satisfying the 'adverse interest' requirement of section 327(a) of the Bankruptcy Code.") (collecting cases); *In re Project Orange Assocs., LLC*, 431 B.R. 363, 374 (Bankr. S.D.N.Y. 2010) (conflict waiver by creditor "cannot trump the requirements of section 327(a)."); *In re Perry*, 194 B.R. 875, 880 (E.D. Cal. 1996) ("section 327(a) has a strict requirement of disinterestedness and absence of representation of an adverse interest which trumps the rules of professional conduct.").

24. Rather, the Court "has the authority and the responsibility to only approve employment of professionals who meet the minimum requirements set forth in § 327(a), independent of objections." *In re Interwest Business Equip., Inc.*, 23 F.3d 311, 317 (10th Cir. 1994); *see also In re Boomerang Tube, Inc.*, 548 B.R. 69, 75 (Bankr. D. Del. 2016) ("It is the obligation of the Bankruptcy Court to approve the terms of employment of professionals, in

accordance with the provisions of the Bankruptcy Code, regardless of the terms articulated in the employment contract. Therefore, if the Court finds that a contract that the Debtor or the Committee negotiated is impermissible, the Court may not approve it or may modify it.").

25. The Court should deny the Motion. If the Debtors' claims against KPMG are not viable, then the Debtors can move on. G&E can advise the Debtors about estate claims against former D&Os and former professionals. Blue Torch can use its own counsel to pursue its own claims against KPMG in the appropriate forum. But G&E should not be permitted to switch from representing the Debtors to the Debtors' secured lenders on their own claims against the same target.

## **CONCLUSION**

26. The U.S. Trustee reserves any and all rights, remedies and obligations to complement, supplement, augment, alter and/or modify this objection, file an appropriate motion or conduct any and all discovery as may be deemed necessary or as may be required, and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Motion and grant such other relief as the Court deems appropriate and just.

Dated: May 9, 2025
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: */s/ Benjamin Hackman*
Benjamin A. Hackman
Trial Attorney
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
benjamin.a.hackman@usdoj.gov